# EXHIBIT "E"

# Ensuring Equal Access for People With Disabilities:
# A Guide for Washington Courts

August 2006

**Available online at www.wsba.org/atj**

## D. Cognitive and Other Mental Disabilities

People with cognitive and other mental disabilities often encounter paternalistic attitudes and condescending responses. They may therefore be unwilling to acknowledge a need for help, and may be suspicious or skeptical about offers of help. At other times, the presence of a mental disability may go unrecognized, and behavior may be misinterpreted.

*A history of paternalistic attitudes, or condescending responses…*

Many conditions can affect learning and decision-making: cerebral palsy, autism and Down's syndrome; traumatic brain injuries; epilepsy or other seizure disorders; or mental illness, to name just a few. Individuals with these disabilities may be of normal intelligence or may have cognitive limitations.

The major barriers to access for persons with cognitive disabilities are unnecessary complexity and ineffective communication.

### 1. Recognizing the Presence of a Disability

The clues indicating cognitive limitations may be subtle, and persons with this disability are often very good at masking it because of the stigma that comes with such disabilities. Be sensitive to behavior, and don't make assumptions. Respond to indications that assistance is needed, ask before intervening, and respect a "no" response.

*The major barriers are unnecessary complexity and ineffective communication.*

### 2. Independence

Most persons with cognitive disabilities are capable of making (and are entitled to make) their own choices and decisions. Very few have guardians who act for them. A person who has a guardian will still have preferences and want to make choices, and often the authority of a guardian is limited.

Family members, friends and service providers may play a major supportive role. Court personnel can look to these individuals for help, so long as care is taken to preserve confidentiality and avoid conflicts of interest between the person with the disability and his or her helpers. Court staff should consult the person with the disability before asking others for information or decisions.

### 3. The Importance of Respectful Language

Many people with cognitive disabilities have been teased and exploited throughout their lives. Court staff should be careful about language. The term "retarded" persists in legal documents and medical practice, but it is a common taunt and is often a slur. Labels can usually be avoided. Where a descriptive term is necessary, "developmental disability," "cognitive disability," "intellectual disability," or "learning disability" are fine. Staff may ask for and use the term the person uses when referring to his or her disability. (Further discussion of communication issues follows below.)

### 4. Navigating

Courthouse interiors are confusing to anyone who is unfamiliar with the justice system, and for those with cognitive disabilities, these mysterious places may be wholly intimidating.

*Courthouse interiors are just plain confusing.*

The key is to eliminate complexity wherever possible and to communicate clearly in signs and other materials.

25

If possible, court services should be located in close proximity to public transportation, and court personnel who have contact with the public should have bus schedules available. Clear signage should identify the courthouse, and indicate entrances.

Provide simple and understandable directions. The courthouse directory should be clear, should use symbols where possible, and should use consistent language (i.e., the words in the directory should match those on the wall signs). Signs with well-known symbols are preferable to signs with words only. Signs should be clear and uncluttered, and should use simple, common language or obvious symbols. Signs for the clerk's office, for example, could include a graphic symbol of a paper file or a cash register; signs for courtrooms could show a gavel and the judge's name.

### 5. Documents and Forms

*Assistance with the completion of documents can make all the difference.*

For those with cognitive disabilities, legal language is a particular challenge. A few steps will make a big difference:

- Content: Again, eliminate unnecessary complexity. Most laypeople have trouble understanding court notices, or completing court forms — those who have disabilities are truly at a disadvantage. Get rid of unnecessary jargon and legalese.

- Simplicity: Shorten forms — ask only for information that is needed.

- Font: Small print (less than 12 point) is especially hard for slow readers to follow.

- Assistance: Assistance with the completion of documents can make all the difference to a person with limited literacy who is trying to navigate an unfamiliar system. Information is always appropriate ("this form is for people who have children."). Remember to avoid giving advice as to what the person should choose when there are options.[36] In such cases, have referrals to legal services or the local bar association available.

### 6. The Role of Court Staff

*Training is crucial.*

The single most important means of ensuring access for people with cognitive disabilities is to educate and motivate court staff so they can provide effective assistance. Local advocacy organizations can be a resource for training in effective communication. Completing a program for all staff may take time, but the first and most important step is to include such training in the court's ADA compliance plan.

**Training** should include the following:

<u>Recognizing cognitive disabilities</u>. Some people have physical characteristics associated with a well-known cognitive disability. Usually, however, you cannot tell by looking. Recognizing the presence of these disabilities is

---

[36] The Committee consulted with the Practice of Law Board in drafting this section.

26

particularly challenging because many people try to conceal difficulties with writing, reading, or other skills. Staff should learn to look for signs of decreased ability to reason and/or think independently, and how to offer help.

Communicating. Courthouses are busy places, and staff is often rushed. When assisting a person with a cognitive disability, however, it is imperative to be calm, speak slowly and clearly, and use concrete, simple language. Staff should be taught how to show respect and patience while using their time well, how to communicate effectively in non-technical and jargon-free language, how to notice signs of frustration or loss of focus that may indicate a need for a break, and how to get other assistance when it is needed.

*Tips for Communicating.*

**Some suggestions about what to do:**

- Use short sentences and basic, concrete vocabulary. Speak slowly. Break it down. Use pictures or actions to convey meaning.

- Speak directly to the person, in a neutral manner.

- Recognize "false positive" answers. Many people with cognitive disabilities have learned that it is easiest to just say yes, and so may indicate they understand or agree when really they are completely lost or confused. A question like, "Do you understand?" often will get a false "yes" response, whereas "Would you like me to show you the way?" may produce a truly grateful response.

- Open-ended questions are usually better.

- Repeat instructions or questions using different phrasing.

- Be discreet. A person who is confused and lost may try to hide the fact, or be too embarrassed to say she cannot read the form she must fill out. Usually, however, there are signs of difficulty for those who are alert. Staff should not wait to be asked, but should offer help if it appears to be needed.

**What not to do**. Some responses encountered by people with cognitive disabilities are ineffective or counter-productive.

*Well-intentioned people can sometimes make things worse…*

- Don't ignore the person with the disability and instead address a personal assistant, family member, or other accompanying person. This can be offensive and demeaning. Respond to the person involved. If a question is asked by an assistant on behalf of another, both individuals should be addressed.

- Don't use labels such as "retarded."

- Don't be indiscreet. For many people it is profoundly humiliating to admit illiteracy.

Education and guidance for court personnel may be available from groups such as The Arc of Washington State and People First. The National Arc

*Training is available!*

27

offers numerous publications, including a brochure titled "When People with Mental Retardation Go to Court."[37]

The Language and Behavior section of the Appendix contains further tips for effective communication.