UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARC FISHMAN,

                Plaintiff,

      -against-

OFFICE OF COURT ADMINISTRATION,
NEW YORK STATE COURTS, *et al.*,

                Defendants.

No. 18-CV-282 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

    Mark Fishman ("Plaintiff") brings this pro se Action under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law § 296, alleging that the Westchester County Family Court (the "Family Court") and its officers have denied him access to the courts by failing to accommodate his disability. Before the Court is Plaintiff's second Motion for a Preliminary Injunction (the "Motion"). (Dkt. No. 29.) Plaintiff seeks an Order directing the New York State Unified Court System Office of Court Administration ("OCA") — one of the Defendants in this case — to provide him with real-time transcription services during his courtroom proceedings.

    For the following reasons, the Motion is denied.

## I. Background

### A. Factual Background

    The Court detailed much of the factual background of this case at oral argument on June 11, 2018. (Dkt. No. 24.) Plaintiff alleges that he suffers from traumatic brain injury, post-concussion syndrome, occipital neuralgia, temporomandibular joint syndrome, sleep apnea, and other cognitive disorders. (Sec. Am. Compl. ("SAC") ¶ 1 (Dkt. No. 44-1).) Plaintiff alleges that

his rights were violated when the Family Court denied him reasonable accommodations, including use of real-time transcription services during proceedings. (*See generally* SAC.) On June 7, 2018, a disability rights advocacy organization, writing on behalf of Plaintiff, made a request to Judge Michelle I. Schauer of the Family Court for real-time transcription services. (*See* Motion 31–32.)[1] On June 11, 2018, Plaintiff himself made a similar request to Support Magistrate Carol Ann Jordan. (*See id.* at 33–34.) These letters were considered and denied by Nancy Berry ("Berry"), the District Executive for the Ninth Judicial District, on June 22, 2018. (*See id.* at 29 ("June 2018 Accommodation Denial").) Berry stated:

> [R]ealtime reporting . . . is used as an accommodation for those with hearing impartments. Although you mention tinnitus . . . , you have not provided any medical documentation that it has [caused hearing loss] in your case. Nor does it appear that you were unable to hear the proceedings in any of your numerous prior court appearances. If you are able to provide medical documentation that you are hearing-impaired and that your ability to participate in court proceedings is thereby impacted, please submit it. . . . Realtime reporting cannot be provided to address your asserted short-term memory impairment. Transcripts of the official record can be obtained through the usual process upon request, and will provide a complete written record of the proceedings. To the extent that you assert you must obtain an immediate transcript so that you will be able to remember an instruction given you by the court, you may also request from the judge, when given such an instruction, the opportunity to pause the proceedings while you write down what was instructed. Alternatively, you may also for the same purpose make use of your attorney, or of the ADA advocate the trial court has permitted to accompany you during the proceedings, or of a neutral, non-witness notetaker the court has granted you permission to use during proceedings. In any event, the incident you cite regarding your failure to obey the court's written order — that gifts could only be sent to your children "on birthdays and major holidays" — appears to have been caused by your misinterpretation of the language of that written order (i.e. your apparent belief that Passover, Memorial Day, and July Fourth could be construed as appropriate gift-giving holidays), not by any failure of memory.

(June 2018 Accommodation Denial, at 1–2.)

---

[1] Plaintiff's Motion does not use consistent numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top right-hand corner of the Motion.

Plaintiff appealed the decision. In support, Plaintiff submitted a note from his doctor stating:

> [Plaintiff] sustained a Head Injury and Post-Concussion Syndrome and has been receiving cognitive rehabilitation treatment at our center. In April 2017, [Plaintiff] underwent a neuropsychological evaluation and demonstrated cognitive deficits in [the] areas of verbal learning and memory trials, initial acquisition of non-verbal learning and memory, working memory, and verbal functioning (confrontation naming). Thus, he would benefit from [real-time transcription services] as an aide due to his cognitive difficulties.

(Letter from Lisa M. Evans, Esq. to Court ("Defs.' Opp'n") Ex. D, at 4 (Sept. 12, 2018) (Dkt. No. 34).)[2] On August 7, 2018, Dan Weitz ("Weitz"), the Statewide ADA Coordinator for OCA, affirmed the denial of Plaintiff's request. (*See id.* Ex. D, at 3 ("August 2018 Appeal Denial").) Weitz stated that the doctor's note "does not state that [Plaintiff's cognitive] 'difficulties' are so substantial in comparison to the general population that they constitute a disability, nor does it explain how those cognitive deficits impact [Plaintiff's] ability to participate in court proceedings or specify how the proposed accommodation would address those impacts." (*Id.*) In addition, Weitz stated that the "alternative accommodations" identified by Berry in the initial denial of Plaintiff's request "appear sufficient to address any impact [the] asserted memory impairment may have on [Plaintiff's] ability to participate in the programs, services, and activities of the court." (*Id.*)

B. Procedural Background

Plaintiff filed his initial Complaint on January 10, 2018. (Dkt. No. 2.) On April 24, 2018, Plaintiff filed his first motion for a preliminary injunction, seeking to be provided with "a qualified note taker, an aide for the court program of visitation[,] and large print court orders."

---

[2] Defendants' response in opposition to Plaintiff's Motion does not use consistent numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top right-hand corner of the document.

(Dkt. No. 17.) Defendants filed their response in opposition to the motion on May 4, 2018, (Dkt. No. 20), and Plaintiff filed a reply on May 7, 2018, (Dkt. No. 23). On June 11, 2018, the Court held oral argument, (Dkt. No. 24), after which it filed an Order denying the motion, (Dkt. No. 25), on the grounds that the *Rooker–Feldman* doctrine deprived the Court of jurisdiction and that Plaintiff failed to show that he would suffer irreparable harm.

On July 9, 2018, Plaintiff filed his First Amended Complaint. (Dkt. No. 26.) On July 25, 2018, Defendants filed a letter requesting a pre-motion conference in anticipation of a motion to dismiss. (Dkt. No. 27.) On August 15, 2018, the Court set a briefing schedule for the motion to dismiss. (Dkt. No. 28.)

On August 31, 2018, Plaintiff filed the instant Motion. (Dkt. No. 29.) On September 7, 2018, Plaintiff purported to file a second amended complaint, (Dkt. No. 32), without Defendants' written consent or the Court's leave. On September 12, 2018, Defendants filed their response in opposition to the Motion. (Dkt. No. 34.) On October 9, 2018, the Court directed Plaintiff to file a second amended complaint that complied with Federal Rule of Civil Procedure 8 and held in abeyance both the instant Motion and the briefing schedule for Defendants' motion to dismiss. (Dkt. No. 41.) Plaintiff filed the operative Second Amended Complaint on November 8, 2018. (Dkt. No. 44-1.) On December 12, 2018, Plaintiff filed a letter renewing the instant Motion. (Letter from Marc Fishman to Court ("Pl.'s Dec. 2018 Letter") (Dec. 12, 2018) (Dkt. No. 49).)

## II. Discussion

### A. Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A party seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on

the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citation and quotation marks omitted). However, a heightened standard is appropriate where: "(i) an injunction is mandatory, or (ii) the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Id.* (citation and quotation marks omitted). Here, the heightened standard applies because Plaintiff requests a mandatory injunction seeking to "alter rather than maintain the status quo." *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012); *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442, 457 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018) ("[The] [p]laintiff's requested relief would disrupt the status quo by effectively requiring [the d]efendant to reverse its previous denial."). A mandatory injunction may be granted "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (citation and quotation marks omitted).

    B. Application

        1. Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (alteration and internal quotation marks omitted). "To satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an

injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks omitted). The Second Circuit has "previously defined 'irreparable harm' as certain and imminent harm for which a monetary award does not adequately compensate. Thus, only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003) (citations omitted).

Plaintiff's request for real-time transcription services does not satisfy the requirement of irreparable harm. Plaintiff has not established that, but for the use of real-time transcription services during his ongoing Family Court proceedings, the cognitive, memory, and hearing problems caused by his disability will prevent him from participating in or having meaningful access to those proceedings. Plaintiff has had numerous Family Court appearances over the past several years at which, as Berry noted in the initial denial of Plaintiff's request, it did not "appear that [he] was unable to hear the proceedings." (June 2018 Accommodation Denial, at 1.) Plaintiff does not now assert that he was unable to hear or understand those Family Court proceedings. Nor does Plaintiff otherwise explain how the lack of real-time transcription services has impeded him from meaningfully participating in those proceedings. Plaintiff does cite to an instance in which he failed to obey a written Family Court order allowing him to send gifts to his children only on "major holidays." (Motion 20.) In Plaintiff's view, had he had access to real-time transcription services, he "would have been able to review the notes and see that the judge said there were no gift giving holidays" during the period he violated the order. (*Id.*) However, as Berry stated, Plaintiff's failure was not attributable to "failure of memory" but to "misinterpretation of the language of that written order." (June 2018 Accommodation Denial,

6

at 2.) Plaintiff does not contest, or indeed respond to, Berry's explanation.³ Moreover, it appears that the Family Court has provided Plaintiff with accommodations for Plaintiff's disability, including an ADA advocate and a non-witness note taker, each of whom accompanies Plaintiff at his court proceedings. (Defs.' Opp'n 8–9.) Plaintiff does not explain why these accommodations were insufficient to prevent him from violating the court order or are otherwise insufficient to allow him to meaningfully participate his court proceedings. Nor does Plaintiff explain why the recommendations made by Berry and Weitz — that Plaintiff use his counsel to write down court instructions or ask the judge for time to write them down himself (*see* June 2018 Accommodation Denial, at 2; August 2018 Appeal Denial) — are insufficient. Accordingly, Plaintiff fails to carry the burden of showing that "extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs.*, 60 F.3d at 34.

### 2. Likelihood of Success on the Merits

Aside from failing to establish that he will suffer irreparable harm, Plaintiff has not demonstrated a likelihood of success on the merits. "Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court

---

³ Separately, Plaintiff states that the Family Court "threatened to hold [him] in contempt of court . . . if [he] file[s] additional ADA accommodation requests." (Motion 13.) In support of this claim, Plaintiff cites to a March 30, 2018 order directing Plaintiff "not to send any further communication to this court, nor . . . forward any further demands for his attorney to this court, including any further "disability accommodation request," as there is currently no further pending court proceeding." (Dkt. No. 17-7, at 6.) That order also stated: "NOTICE: YOUR WILLFUL FAILURE TO OBEY THIS ORDER MAY RESULT IN INCARCERATION FOR CRIMINAL CONTEMPT." (*Id.* at 1 (caps in original).) In Plaintiff's view, this order constituted a "threat[]" that is "retaliatory and discriminatory and violate[s] ADA." (Motion 13.) However, the Court fails to see how boilerplate language designed to promote compliance with court orders constitutes a "threat." Moreover, Plaintiff fails to connect the alleged "threat" to Plaintiff's instant request for real-time transcription services. Finally, were the Court to grant the request for preliminary injunctive relief on this basis, it would run squarely into *Rooker–Feldman* problems, as it would require this Court to review a state-court judgment adverse to Plaintiff. *See infra* Section II.B.2.

7

judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam); *see generally Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415–16 (1923). The *Rooker–Feldman* doctrine is, however, "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 554 U.S. 280, 284 (2005). Four requirements must be met before the *Rooker–Feldman* bar applies:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced — i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (internal quotation marks and alterations omitted).

However, there is an exception to *Rooker–Feldman* in the case of "judicial review of executive action, including determinations made by a state administrative agency." *Verizon Maryland Inc. v. Publ. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002). This exception applies "even where the administrative agency acted in an adjudicative capacity . . . or where the plaintiff could have sought, but did not seek, review of the agency's determination in a state court." *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004). But this exception does not apply — and thus the *Rooker–Feldman* bar does apply — if the agency is "appropriately characterized as [an] arm[] of the state judiciary qua judiciary, either because [it] exercise[s] powers that are inherent to the judiciary, or because the state has provided mechanisms for judicial review of [its]

determinations that distinguish those determinations from other types of state administrative action." *Id.* at 166.

Here, it is unclear whether the *Rooker–Feldman* doctrine applies. Plaintiff's Second Amended Complaint challenges numerous rulings by Judge Schauer, Magistrate Jordan, and others in the underlying state court proceedings. (*See generally* SAC.) However, the two denials of Plaintiff's requested accommodation at issue in the instant Motion were not themselves state court judgments, but were made by the officers within OCA, an administrative arm of the New York State Unified Court System. (*See* June 2018 Accommodation Denial; August 2018 Appeal Denial).) Although Defendants note that this administrative review was undertaken "in accordance with the court system's protocol for handling disability accommodation requests," (Defs.' Opp'n 3), Defendants do not cite to the applicable regulations or other guidelines explaining that protocol. Nor do Defendants argue either that OCA "exercise[s] powers that are inherent to the judiciary" or that New York "has provided mechanisms for judicial review of [OCA's] determinations that distinguish [OCA's] determinations from other types of state administrative action. *Mitchell*, 377 F.3d at 166. It is thus unclear whether it may be fairly said that Plaintiff "lost in state court," *Green*, 585 F.3d at 101, and whether *Rooker–Feldman* or an exception applies.

The Court, however, need not resolve the question. Even assuming this Court has jurisdiction under an exception to *Rooker–Feldman*, Plaintiff seeks a mandatory injunction relating to ongoing state-court proceedings regarding child custody issues, and therefore the Court should abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37, 43–44 (1971).

9

*Younger* abstention provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The Court is mindful that "abstention is generally disfavored, and federal courts have a virtually unflagging obligation to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (internal quotation marks omitted). And, "unlike the *Rooker–Feldman* doctrine, *Younger* abstention is a 'prudential limitation' grounded in considerations of comity rather than a 'jurisdictional bar' derived from Article III of the Constitution." *Sullivan v. New York State Unified Court Sys.*, No. 15-CV-4023, 2016 WL 3406124, at *6 (S.D.N.Y. June 17, 2016) (quoting *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006)). The Supreme Court has thus "clarified that district courts should abstain from exercising jurisdiction only in three exceptional circumstances involving (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk County*, 805 F.3d 425, 427 (2d Cir. 2015) (citation and some internal quotation marks omitted). Finally, "*Younger* abstention is *required* when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (emphasis added).

Here, the *Younger* abstention conditions are clearly met. First, state-court proceedings regarding the appropriate child custody arrangement are ongoing in Westchester Family Court;

10

Plaintiff himself acknowledges that "there continue[] to be court proceedings in state courts in the next couple of weeks[,] including a trial." (Pl.'s Dec. 2018 Letter 2.)

Second, child custody disputes are a matter rightfully reserved for state courts. *See Puletti v. Patel*, No. 05-CV-2293, 2006 WL 2010809, at *4 (E.D.N.Y. July 14, 2006) ("The United States Supreme Court . . . has long recognized that 'the whole subject of the domestic relations of . . . parent and child [] belongs to the laws of the States and not to the laws of the United States." (quoting *In re Burrus*, 136 U.S. 586, 593–94 (1890))). Indeed, the Supreme Court has long recognized a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *see also Reno v. Flores*, 507 U.S. 292, 310 (1993) (noting that states have "special proficiency in the field of domestic relations, including child custody" (internal quotation marks omitted)); *Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts."). The underlying child custody proceeding thus undoubtedly involves an "important state interest." *Diamond "D" Const. Corp.*, 282 F.3d at 198.

Third and finally, Plaintiff would have "an adequate opportunity for judicial review of the federal constitutional claims" in state court. *Id.* After the Family Court makes its final disposition on custody and visitation, Plaintiff may appeal that decision within the state court system and raise there all federal constitutional claims. *See Donkor v. City of New York Human Resources Admin. Special Servs. for Children*, 673 F. Supp. 1221, 1226 (S.D.N.Y. 1987) ("[The Second] Circuit has often recognized the obligation and competence of state courts to decide federal constitutional questions." (citing *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (2d Cir. 1986) and *Star Distributors, Ltd. v. Marino*, 613 F.2d 4, 8 n.10 (2d Cir. 1980))). Plaintiff has

"not shown any procedural barrier to [his] assertion of constitutional issues in the state court proceeding." *Id.* (citing *Moore v. Sims*, 442 U.S. 415, 430 (1979)).[4]

Therefore, the *Younger* factors are met. There is no showing of that any exception to *Younger*, such as bias on the part of OCA, is present. *See Diamond "D" Const. Corp.*, 282 F.3d at 201 (noting exception to *Younger* "when the state administrative agency was incompetent by reason of bias to adjudicate the issues pending before it" (quotation marks and citation omitted)). Accordingly, "abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Id.* at 197.

### 3. Balance of Hardships and Public Interest

"The balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (alteration, internal quotation marks, and citation omitted). The public interest inquiry asks whether "the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger v. Colting*,

---

[4] Plaintiff states that the New York State Court of Appeals "denied [him] permission to appeal [the] denial of ADA accommodations of a note[] taker and large print court orders" . . . . This was the last grievance/appeal available in New York State and proves that only Federal Court can protect" Plaintiff's rights. (Pl.'s Dec. 2018 Letter 1.)

This statement is incorrect. The Court of Appeals did not address the merits of Plaintiff's ADA accommodations claims; rather, it denied review because the underlying child custody dispute was not completed. *See Fishman v. Solomon*, 2018 N.Y. Slip Op. 90460, 2018 WL 6494302 (N.Y. Ct. App. Dec. 12, 2018) ("Motion for leave to appeal dismissed upon the ground that the order sought to be appealed from does not finally determine the action within the meaning of the Constitution.").

Further, even if Plaintiff were correct, the claims in that appeal are not relevant to those in the instant Motion. Plaintiff there sought "a note[] taker and large print court orders," (Pl.'s Dec. 2018 Letter 1), whereas here he seeks real-time transcription services. That these requests are separate is evidenced by the fact that the Plaintiff filed an initial motion for a preliminary injunction seeking a note taker and large-print court orders, (Dkt. No. 17), which this Court considered and denied, (Dkt. Nos. 24, 25).

607 F. 3d 68, 80 (2d Cir. 2010). Here, neither factor weighs heavily in either direction. The Court acknowledges that the lack of real-time transcription services may cause Plaintiff a hardship and that Plaintiff would benefit from its use. Further, the Court notes the strong public interest in protecting individuals like Plaintiff from discrimination on the basis of disability. However, Plaintiff has not alleged sufficient facts in the instant Motion seeking a mandatory injunction to overcome the competing public interest in allowing the Family Court to independently decide the case before it without federal court intervention.

### III.  Conclusion

Accordingly, for the foregoing reasons, the Motion is denied. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 29), and to mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated:  January 8, 2019
       White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE