# Exhibit B



RECEIVED
NOV 09 2018
U.S.D.C.
WP

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------

MARC FISHMAN, INDIVIDUALLY, and on behalf of all others similarly situated

               Plaintiff,

                                 CASE NO. 7-18-cv-00282-KMK

    v.

Office of Court Administration New York State Courts, Judge Michelle I. Schauer in her administrative and official capacity, Nancy J. Barry, District Executive 9th District NY Courts in her administrative and official capacity, Dan Weisz, Professional Director In his administrative and official capacity New York Courts, Michelle D'ambrosio in her administrative and official capacity, Magistrate Carol Jordan in Her administrative and official capacity Capacity, Judge Gordon Oliver in her Administrative and Official Capacity and Judge Kathy Davidson, Chief Administrative Judge 9th circuit and former Chief Judge of the Westchester Family Court in her administrative and official capacity and the New York State Unified Court System, and Judge Hal Greenwald, in his administrative and official capacity Judge Alan Scheinkman in his administrative and official capacity as Chief Administrative Judge of the 9th Circuit courts

               Defendants

               Jury Demand

-------------------------------------------------------------------------------

## AMENDED COMPLAINT

-------------------------------------------------------------------------------

Plaintiff, MARC FISHMAN, Plaintiff *pro se* herein, and those others similarly situated, brings this Complaint against the Office of Court Administration New York Courts, Judge Michelle I. Schauer, Nancy J. Barry, Dan Weisz, Michelle D'ambrosio, Magistrate Carol Jordan, Judge Gordon Oliver, Judge Kathy Davidson, the New York State Unified Court System, Judge Hal Greenwald and Judge Alan Scheinkman and alleges the following:

## INTRODUCTION AND PARTIES

1.     Plaintiff, Marc Fishman in this matter is "Qualified Disabled " under the ADA and ADAAA with Invisible Disabilities including Severe Obstructive Sleep Apnea, Traumatic Brian Injury, Post Concussion Syndrome, Occipital Neuralgia, Tinnitus, Peripheral Neuropathy, Post Concussion Syndrome, Cubital Tunnel Syndrome, Disabilities from Hernia Surgery and TMJ caused by two car accidents in 2013 and related prescription drug interactions. Other disabled parties and participants in court with qualified ADA disabilities are also discriminated for their disabilities. I am a Qualified ADA Disabled father in State Family Court proceeding in New York State Family Court that are administered by Defendants including Chief Judge Kathy Davidson who is head

administrative judge of the 9th district and formerly chief administrative judge of the family courts, Judge Michelle I. Schauer who is an acting family court judge and Court Attorney Michelle D'Ambrosio a Yonkers court administrator, Magistrate Carol Jordan a magistrate in New Rochelle family court, District Executive Nancy Barry, head district administrative executive in the 9th circuit district courts, Dan Weisz Director Professional Court Services New York Courts, Judge Gordon Oliver who is an acting Family court judge, Office of NY Courts Administration(OCA, ) which is the administrative arm of New York Courts, The New York Unified Court System which is New York States Courts, Judge Hal Greenwald an acting Family Court Judge and Judge Scheinkman who is acting head of the appellate division and formerly chief administrative judge in charge of administrative accommodations in all his 9th district courts. The Family courts operation and ADA accessibility matters are overseen by Defendants including the Office of Court Administration, Chief Administrative Judge Kathy Davidson, Former Chief Administrative Judge Alan Scheinkman, District Executive Nancy Barry and its ADA Administrator Director of Court Professional Dan Weisz. The Office of State Court Administration is herein after called the "OCA." All Defendants are public entities. All defendants have discriminated against me and other similarly situated in

Violation of Title Two of the ADA and Section 504 of the 1973 rehabilitation Act by failing to reasonable accommodate my "Qualified ADA Disabilities" in court and court proceedings/programs. All defendants have discriminated against me and other similarly situated by retaliating against others and me with deliberate intent and indifference for my "Qualified ADA Disabilities. " All Defendants discriminated multiple times with instances of intentional disability discrimination including denial of reasonable accommodations including but not limited to denial of a note taker, denial of large print court orders, denial of access to medical records held in court, denial of use of the "CART" real time transcription services, denial of use of notes in court, denial of morning only court appearances, denial of adjourning court appearances for my disability, denial of home based visitation post surgery and other disability requests. Because my disabilities and others with similar disabilities are "invisible disabilities" in that I or other disabled individuals do not carry a cane or have a wheelchair, the New York State Court willfully discriminates compared to other disabled who are immobile/wheelchair bound and receive immediate disability accommodations from the court. All defendants have caused through more than 4 years of disability discrimination for me and others similarly situated to suffer from anxiety, and PTSD. All the defendants' have caused me and

others similarly situated to incur extensive medical, and therapy review for their repeated discriminatory behavior, disparate treatment, failure to accommodate disabilities and retaliation against others and me. All defendants acted with deliberate indifference. All Defendants discriminated against me and others similarly situated by exploiting my physical disabilities and others and falsely mislabeling my disabilities as personality disorders and other parties in court as falsely having personality disorders. Defendants acted on assumptions and stereotypes about my disabilities and others similarly situated and failed to individually analyze what services and supports would be appropriate considering those disabilities. Defendants regarded me, and others as having a personality disorder instead of accepting medical documentation of physical disability. As a result of defendants' actions including disability discrimination, failure to accommodate disabilities and retaliation, all defendants have limited my time with my four children and other parents and similarly situated with access to their children. All Defendants have interfered with my civil rights as a father. All defendants have acted against other disabled parents with interfering with their civil rights. All defendants' fail to have a grievance procedure for denial of ADA accommodations in violation of the ADA. All defendants' fail to undertake and participate in the interactive procedure required under

ADA for granting accommodations for the Qualified disabled. Defendants'
actions, inactions and omissions here violate Title Two of the American with
Disabilities Act of 1990, as amended("ADA"), 42 U.S.C. $$ 12131-12134,
and its implementing regulation, 28 C.F.R. Part 35; and Section 504 of the
Rehabilitation Act, 29 U.S.C $ 794.

    2.    The United States has an interest herein.

    3.    This matter raises an issue of general public importance.

    4.    Plaintiff(s) does not appeal a state court decision.

JURISDICTION AND VENUE

    5.    This court has jurisdiction of this action under 28 U.S.C.
$1331 and $1343 and 42 U.S.C. $$ 12133 and 12188. The court may grant
declaratory and other relief pursuant to 28 U.S.C $$ 2201 and 2202. The
court may grant attorney's fee pursuant to 42 U.S.C $ 12205.

    6.    The acts and omissions of defendants giving rise to this action
occurred in southern New York. Plaintiff(s) have been situated and
aggrieved in Southern New York during the events giving rise to this action,
including present unmitigated harm occurring in the district, making venue
proper in this judicial district pursuant to 28 U.S.C. $ 1391.

    7.    Enforcement by the United States Attorney General is invoked
pursuant to 42 U.S.C. $$ 12133 and 12188.

## FACTS

8.     Marc Fishman is a qualified individual with a disability within the meaning of 42 U.S.C. §§ 12102 and 12131(2).

9.     Others with disabilities in court are disabled under the meaning of 42 U.S.C §§ 12102 and 12131(2).

10.     Defendants have failed to Reasonably Accommodate my "Qualified ADA Disabilities" of Severe Obstructive Sleep Apnea, Traumatic Brian Injury, Occipital Neuralgia, and TMJ, Post Concussion Syndrome, Peripheral Neuropathy, Tinnitus, Disabilities from Hernia Surgery, and Cubital Tunnel Syndrome.

11.     Under ADA proof of disability is minimal, yet New York State Courts' and Defendants requirements of excessive proof of disability violate ADA and Amended ADA.

12.     (The ADAAA) Amended ADA act was a clear mandate that the definition of being disabled will be interpreted "broadly."

13.     With Severe Obstructive Sleep apnea alone and its side effects, am Qualified Disabled under the terms of the ADA.

14.     Defendants' regarded me as having qualified ada disabilities.

15.     Add the additional disabilities I have and the three implants and I "am clearly disabled under the definition of the ADA" as stated by Federal Judge Karas at his June 2018 hearing in Federal District Court.

16.     All of my disabilities affect major bodily functions.


### CAUSE OF ACTION
### Violations of Title Two of the ADA

17.     All the defendants including The "OCA" fail to have a practicing, functional and clear ADA Grievance procedure in violation of the ADA.

18.     All government entities are required to have a "prompt" resolution grievance procedure for ADA violations and complaints to comply with ADA when they have 50 or more employees.

19.      The "OCA"  and New York State Unified Court system clearly have more than 50 employees and must have a compliant ADA grievance procedure.

20.     The "OCA"  and New York Unified Court System do not have a grievance procedure THAT COMPLIES WITH THE ADA.  Other than filing    an     appeal     with     the     higher     court     when     a     Judge member/officer/administrator       of      OCA       rules/determines       ADA

Accommodations, there is no compliant grievance procedure. This violates Federal Rule 28 CFR 35.107. A Key principle of 28 CFR 35.107 is that a public entity that employs 50 or more persons shall adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by this part."

21.    The problem with all the defendants including "OCA's" appeal as a grievance procedure is that it violates the principles of ADA.

22.    The New York State Unified Court System and "OCA" appeal allows the adversarial party to participate in the denial of ada complaint procedure.

23.    A principal of the ADA is that accommodations are to be provided administratively. Nowhere in the ADA does it state that the adversarial party can participate in a request, approval or denial of accommodations by a government entity in title two of the ADA.

24.    In the decision in case 2017-07775, The OCA clearly sided with my x-wife/children's attorney who have zero desire to see my disabilities accommodated and violated ADA privacy rules by sharing confidential medical information with opposing counsel.

25.    In Addition the "so called" grievance procedure of an appeal to the busiest appellate court in the nation (the NYS Appellate Division Second

Department) is not "prompt" or "timely." This "so called" "OCA" Grievance appeal violates Federal Law and my civil rights as well as that of my disabled sons and others similarly situated by not providing a quick, prompt or timely grievance process.

26.    The New York State Appellate Division Second department takes years to decide cases.

27.    OCA and defendants' knows the appellate division is backed up and does not comply with ADA.

28.    New York State Unified Court System,  OCA and Defendants are aware that their grievance procedures violate federal law but have failed to rectify them to comply with the prompt and timely requirements of the ADA.

29.    A timely grievance procedure is 30 days or less as outlined in the ADA.gov website rules.

30.    The defendants including the New York State Unified Court System and "OCA" violate the timeliness as the State appellate division was aware of my grievances in February 2017, yet did not render a decision on the discrimination and denial of accommodations until June 2018---over a year a half after grievance originally filed.

31.     In no other state does a court ADA grievance procedure under 28 CFR 35.107 permit or allow the adversarial party in court or to a case to participate in the ada accommodations procedure for administrative accommodations.  Yet by Lisa Williams of "OCA" stating in Federal court in front of Judge Karas that the grievance procedure available to Mr. Fishman is an "appeal" to the NYS appellate division Second department.

32.     OCA and defendants' condone violations of the ADA by having a grievance that does not comply with  28 CFR 35.107.  In addition the appeals process is not private as any appeal with the NYS second department includes all  communications  including  confidential  medical information.

33.     This inclusion of confidential medical information to the other side in a court action for ADA accommodations in court violates HIPPA and title two privacy provisions of ADA, the rehabilitation Act and my civil rights. And rights of others similarly situated.

34.     The disclosure of confidential medical information also violates the Rehabilitation Act as The New York State Unified court system and Office of Court administration accept Federal funds and have 50 or more employees.

35.    By accepting federal funds, The New York State Unified Court System and Office of Court administration must comply with the anti-discrimination policies of the Federal government according to the Rehabilitation Act.

36.    New York State Unified Court System, Judge Michelle I. Schauer, Judge Gordon Oliver , Magistrate Carol Jordan, Nancy J. Barry, District Executive, Dan Weisz Director of Court Professional Services, Michelle D'ambrosio, Court Administrator, Judge Kathy Davidson, Judge Hal Greenwald, Judge Scheinkman and New York State "OCA" have discriminated against me by failing to allow me to utilize the CART system in state court that can printout same day real time transcripts.

37.    Instead OCA and defendants have denied others and me similarly situated use of the CART system (that is in place in each courtroom per 2015 NYS Law signed by governor Cuomo) in violation of the mandate for "meaningful communication" required under 28 CFR 35.160.

38.    OCA and defendants' are aware that its digital recording system in courtrooms such as New Rochelle's and the old Yonkers Family courthouses are defective and does not meet federal standards of communication.

39.     OCA and defendants operate a Family Court courtroom and courthouse in New Rochelle that does not meet the ADA requirements for access or provide for meaningful communication.

40.     Yet OCA and defendants states that ordering transcripts (utilizing defective digital recordings that have thousands of inaudible words) will give me meaningful access to communication as required under the Ada for my cognitive disabilities and others with disabilities.

41.     In fact OCA and defendants' are aware that official transcripts in family court form court approved transcribers routinely and regularly omit hundreds of words said in the courtroom during the proceedings.

42.     Defendants' are aware that the lack of a court reporter in family Court  or a Cart reporter renders ineffective, meaningful communication to the cognitively and hearing impaired like myself and others similarly situated.

43.     While defendant Judge Schauer and Magistrate Jordan and their staff repeatedly allowed my x-wife to have multiple note takers in the State courtroom, defendants' denied me note takers as clear disability discrimination in the same courtrooms in violation of the ADA and rehabilitation Act.

44. Such denial of note takers for me, while allowing for my x-wife was discriminatory and denied me "meaningful communication," required under the ADA.

45. Defendants including Judge Schauer, Judge Greenwald Magistrate Jordan, Judge Davidson and Judge Gordon-Oliver intentionally wanted my ex-wife to have an unfair advantage in the cases and participated in actively in the denial of providing meaningful communication to me as a qualified disabled person in state courtrooms they supervised, administered or operated in.

46. The denial of note takers in the courtroom for years caused me and others similarly situated denial of aides needed to assist with my cognitive impairment and other disabilities like Cubital tunnel syndrome where my writing ability is limited.

47. With multiple court paid for note takers my ex-wife had immediate access to what was said in court, while I did not as evidence of disability discrimination.

48. Such disadvantages to me and others similarly situated caused me and others not to have the aided notes to remember what was said and forget the judge's instructions spoken on the record in violation of the meaningful communication provision of title two of the ada.

49.    As it took months to obtain most court transcripts, that Judge Schauer, Magistrate Jordan, Judge Oliver, and Michelle D'ambrosio and their staff delayed from being produced intentionally by instructing the court clerk and staff not to send digital recordings or delay sending recordings to my transcriber, Defendants' again discriminated against me and others intentionally.

50.    The Defendants including the New York Unified Court System and the OCA further discriminated against me by making me pay for the auxiliary aide of transcriber costs, when defendants produces and or orders free transcripts through CART and other programs for other non-disabled litigants in the 18-b court program I am represented in. This violates title two of the ADA.

51.    The cost of auxiliary aides to access the courtroom cannot be assessed to the disabled court participant such as myself or others similarly situated.

52.    Defendants' including the OCA knew that the court audio recording systems in Westchester Family Courts including New Rochelle and Yonkers Family courts specifically were deemed "inaudible" in a 2010 report by OCA about its court facilities.

53. Yet despite this report and knowledge that the transcripts produced with inaudible technology in noisy courts like New Rochelle family produced hundreds of inaudible words/sounds, the defendants repeatedly stated that the transcript was the accommodation for my disabilities in violation of meaningful communication provision of the ADA.

54. These statements were made by OCA despite significant medical proof of hearing problems submitted to the courts including expert reports from ENT doctors, neurologists, psychologists, TMJ specialists and cognitive rehab doctors for me and others similarly situated.

55. Despite defendants having knowledge that so many words were not picked up by the court digital recordings and that transcripts produced at times had more than 20% inaudible words, the defendants continued to deny meaningful communication to me and others similarly situated in violation of the ADA.

56. Inaudible words of such great quantity render official court transcripts useless in Family Court proceedings from audio technology other than "CART" CART picks up all the spoken words with a cart transcriber.

57. Defendants' knew that inaudible transcripts in effect denied "meaningful access" to the courtroom for an person with invisible disabilities including memory problems like myself. The refusal to pay for

my transcripts or provide free transcripts from CART was intentional and willful by Defendants' including Judge Schauer, Magistrate Jordan, Michelle D'ambrosio, Judge Davidson, Judge Gordon Oliver, Magistrate Jordan, Judge Scheinkman, the OCA and the New York Unified Court System and discriminatory against me for being disabled.

58.     Defendants are continuing to retaliate against others and me against regulation 42 U.S.C. code 12201-12203 and ADA and Rehabilitation Act for being disabled by denying me the reasonable accommodations listed in this complaint.

59.     Defendants' including Judge Michelle I. Schauer further retaliated against me and others similarly situated  for my "Qualified ADA disabilities" by confining and incarcerating me for sending gifts to my kids for the major holiday of Passover 2016, Memorial Day 2016, Independence day July 2016 and my twins birthday in July 2016.

60.     Defendant Judge Schauer disregarded my cognitive memory disabilities and jailed me in alleged violation of a Temporary Order of Protection. (TOP.)  The TOP order provided gifts could be sent on major holidays and birthdays. Defendant Judge Schauer stated that "Passover, Memorial Day and July 4 are not major holidays" and that I allegedly

violated a TOP order. All three are major holidays per the Federal, State Government and Official Jewish Calendar.

61.    All three of these holidays are considered legal major holidays by other judges in family court without disabled litigants participating.

62.    Defendants knew these were major holidays and that others or I did not violate state protection orders but jailed us anyway as retaliation for our disabilities and requesting accommodations for disabilities.

63.    But defendants deliberately jailed me, by stating they told me at the hearing that there were no major holidays between April and July 2016 in violation of retaliation and coercion provision of the ADA.

64.    Defendants including Judge Schauer and Michelle D'ambrosio expected me to remember words stated at a hearing without a note taker, stenographer use of Cart system or tape/video recording in small print and handwritten New York State forms and New York State form orders.

65.    With my slight memory impairment and the disability impairment of others similarly situated, I did not remember the Judge's exact words spoken at the court conference and just tried to follow the written court order that allowed for gifts to be sent on Major holidays.

66.    But Judge Schauer after denying my note takers court access in 2016, knew I would have problems remembering all court instructions

spoken on the record without real time transcripts or a note taker ada reasonable accommodation.

67.     With knowing and acknowledging the disability, the jailing by the defendants' including OCA, The  State of New York Unified Court system and its Judges was deliberately indifferent to my disabilities and disabilities of others and extremely biased and retaliatory.

68.     Another non-disabled parent would not have been jailed for this alleged offense.

69.     Judge Schauer stated I was guilty "beyond a reasonably doubt" but discriminated against me because there is no crime in New York State for sending gifts and necessities to ones children.

70.     Judge Schauer and defendants further discriminated against me by denying rebuttal medical witnesses to testify that my disabilities including post concussion syndrome prevented me from remembering like the non-disabled do.

71.     As my ex-wife was permitted multiple note takers, and I was denied one note taker, the defendants including Judge Schauer, Michelle D'ambrosio, Judge Davidson and Judge Scheinkman  denied me meaningful communications required under 28 CFR 35.160.

72.     I was jailed and others similarly situated were jailed because I am disabled with these particular "invisible disabilities" that disturbed defendants including Judge Michelle I. Schauer who felt I was intentional mocking her or not following complicated court instructions.

73.     Other non-disabled litigants do not need a court order from a Judge for transcripts, but Judge Schauer required Lee, the court clerk in Yonkers to get court permission to send out the recordings for transcripts in my case.    This willful, disparate and intentional discrimination was deliberate to my unique disabilities and disabilities of others.

74.     The court intentionally wanted to delay transcripts for me and others similarly situated, because others and I would use the transcripts to try to understand court communications and to complain to agencies that regulate judges as well as supervisors and administrators for the court.

75.     The sooner I could get a transcript, the sooner I could study it and try to follow all the complicated confusing orders and instructions. Defendants including Judge Schauer willfully delayed the State Court transcript producing process as retaliation for my qualified ADA disabilities.

76.     Defendants including the Office of Court Administration, Administrative Judge Scheinkman, Administrative Judge Davidson, Administrative Executive Nancy Barry and chief professional ADA

administrator Dan Weisz were repeatedly made aware of Judge Schauer's, Magistrate Jordan's and Attorney Administrator Michelle Dambrosio's disability discrimination in court and court programs and requested to act administratively to grant the ADA accommodations for me and others similarly situated.

77.     Defendants including Judge Davidson Chief Administrative Judge, Nancy Barry, District Executive and Administrator Dan Weisz failed to act administratively to insure their court proceedings and court programs were free of disability discrimination to accommodate my reasonable invisible disabilities and the invisible disabilities of others.

78.     Defendants' failed to administratively make their courtrooms, courthouse and court programs accessible and accommodating to me and others like me who are disabled.

79.     Judge Schauer and Court Administrator D'ambrosio deliberately interfered with the normal granting of ADA accommodations by the court ADA liaison William Curry who told me "he would not have denied any reasonable accommodation of a tape recorder, note taker or large print court order in the courtroom."

80.    Mr. William Curry further informed me he "is instructed to grant all administrative accommodations to the Qualified ADA Disabled to avoid discrimination."

81.    William Curry told me these accommodations requests were administrative accommodations and do not interfere with the operation of the Family court.  There was no plausible, rational reason defendants could not grant a note taker, CART use or tape recorder as these administrative accommodations do not interfere with the courts process or judges wide discretion. A note taker would sit quietly and take notes. In addition there was no legitimate reason to deny large print court orders or CART. These auxiliary aids only help foster meaningful communication for disabled court users.  The court uses word processors that can print in large 12-point large print instead of the microscopic order of protection small print font size that I get occipital neuralgia headaches from after reading.  The court could have easily scheduled morning only conferences like the judge said she would. The court determines its own schedule.  But Defendants including the OCA, Judge Schauer, Michelle D'ambrosio, Judge Greenwald and Judge Gordon-Oliver purposely and willfully scheduled afternoon court sessions or heard my cases in the afternoon hours in violation of the reasonable accommodations provision of the ADA.

82.     Defendants including Judge Schauer and Michelle D'ambrosio intentionally sought to punish and retaliate against me to stop me from taking an early evening flight in the late afternoon, by making it impossible to get to the flight on time.  This denial of an ada accommodation for sleep apnea was deliberate and willful. The Judge and defendants wanted me to be overly tired in court when I had to testify and wanted me to suffer debilitating headaches by purposely scheduling me for afternoon testimony as compared to other courts that allow morning only hearings for those with sleep apnea "Qualified ADA Disabilities.".  This violated the meaningful communications provision of the ADA.  By making me stay in court, overtired, it effected meaningful communications by me with the court. Such conduct was willful by defendants Schauer and D'ambrosio.

83.     Judge Schauer, Michelle D'ambrosio and Judge Gordon Oliver and co-defendants deliberately wanted me to be uncomfortable because the OCA including Judge Schauer, Michelle D'ambrosio, Judge Gordon Oliver  and Judge Greenwald are so biased in my ex-wife's favor that they wanted me to be suffering the most physical pain in their court while testifying/appearing.

84.     The Defendants' knew my occipital neuralgia, TMJ, Tinnitus, post concussion syndrome/tbi and severe obstructive sleep apnea, cubital

tunnel syndrome symptoms get worse without rest. I normally take an afternoon nap. Without the nap and needing to testify/Appear in court, the judges and defendants were deliberately and intentionally interfering with my ADA rights and needed reasonable ada accommodations of morning only court sessions. Whereas Judge Schauer opined that if I could make a flight, I can endure and 8 hour all day hearing within court after morning court sessions the whole week without an afternoon nap, The fact is, I would have napped before my flight. But again the defendants wanted to intentionally retaliate for my qualified ADA disabilities. Judge Schauer wanted to emphasize to me that she felt that I am not disabled, was faking my symptoms and in her opinion do not need morning only court sessions. The facts are disabled people are allowed to go on vacation too on a pre-planed trip/vacation too that was scheduled for the upcoming the following Labor Day weekend. To deny morning only court the day before labor day weekend 2017, was deliberate and intentional punishment/retaliation by defendants including Judge Schauer and Michelle D'ambrosio to make it extra hard and more difficult to for me to have meaningful access to the state courts by being able to concentrate while managing multiple disabilities. All because I could fly late in the afternoon, does not mean I can tolerate sitting in court the whole day and testifying. These are two distinct acts that require

use of separate bodily functions. Instead Judge Schauer and Court Attorney D'ambrosio deliberately interfered with William Curry, ADA liaisons duties and job responsibilities to purposely and intentional oppose reasonable ADA accommodations that would have been granted administratively by Court Administrator William Curry.

85. Judge Kathy Davidson and Judge Alan Scheinkman refused to act administratively and ignored her ADA administrative responsibilities to make sure their State Family courts are accessible to the "Qualified ADA Disabled" litigants in violation of the ADA.

86. Official Court Transcripts take too long to prepare by transcribers and take months as compared to note takers whose reports are immediately available in hours or a couple of days. Similarly a video or tape recorder accommodation is immediately available to accommodate my disabilities. On average it took over 3 to 4 months to get a Court transcript produced with all the intentional court delays.

87. The New York State Family court, purposely, with deliberate indifference had me and others similarly situated expend over $25,000 for transcripts as compared to a low cost note taker or low cost tape/video recording accommodation which would not have cost even 20 percent of the cost of official court transcripts in violation of the ada.

88.     Under the ADA rules and regulation, ADA accommodations and auxiliary aides are to be provided free or no cost to litigants.

89.     ADA Qualified Disabled applicants like myself and others similarly situated cannot be charged more than the non-disabled for access to handicap accommodations under Federal ADA Law.

90.     Judge Schauer and Court Administrative attorney Michelle D'ambrosio purposely and intentionally chose the highest cost of disability accommodation as retaliation for my disability request and disability conditions and acted with deliberate indifference in violation of the ADA.

91.     Judge Schauer knew the courts did not comply with ADA as she sought her removal/relocation from the old Yonkers Family Court because the court did not provide a safe and secure operating court, per OCA standards.   Judge Schauer was relocated to White Plains by court administration after she complained of inaudible, mold, asbestos, lead peeling paint and other code/law violations at this official court facility.

92.     A note taker would not interfere with the court proceeding and it was discriminatory not to approve one as a reasonable disability accommodation request to my "Qualified ADA Disabilities"  or disabilities of others similarly situated.

93. Said retaliation was deliberate on behalf of the State Court defendants, its agents, employees and Officers as the court was well aware of my disabilities and had received numerous pages of confidential medical information by my ada advocate and myself attesting to my "Qualified Ada Disabilities."

94. Providing large print court orders would not cost more to the state. The large print orders would only require a couple more pages of printed-paper to accommodate the larger letters. The cost for extra paper and toner is in the pennies not even extra dollars for large print court orders.

95. The ada advocate accommodation request on behalf of my son would not have cost the court anything, as I offered to pay for it and my ada advocate, Donna Drumm's cost for making the ada requests was born by me, not the State court.

96. The cost to the State court of morning only court sessions would be negligible as the court is already open in the mornings. These was no additional cost to hold morning court sessions to accommodate sleep apnea as compared to all day sessions. In fact the court may even save money by having morning only sessions and the court had to frequently pay overtime for court staff for late afternoon hearings.

97.     The court already has "CART" in all its court facilities.  The court already employs cart operators.  There would be no additional cost to the court for using cart for my cognitive and hearing impairments or others similarly situated.  The Defendants just simply do not want me or others to have CART. Defendants' are discriminating and retaliating against me for suing the court and defendants in this federal case and amended federal cases.

98.     In denying my requested accommodations for my disabled son or other parents for their disabled children, and myself the defendants did not show that the accommodation would interfere with the normal court procedures or "alter the nature of the court ."

99.     Under title II of the ada, the public entity is required to utilize the preferred accommodation auxiliary aid.

100.    The only exception is when the auxiliary aid alters the proceeding.

101.    In my cases none of the requested administrative accommodations substantially altered the court proceedings or programs.

102.    Hence, by defendants' conspiring together to deny accommodations granted to others, defendants willfully and intentionally discriminated against me. And others similarly situated.

103. Magistrate Jordan and the New York State Office of Court administration also discriminated against me and others by threatening to jail me and others if we did not bring multiple note takers that she could choose from to her court appearances in Family Court in violation of the ADA.

104. Even though the anti-retaliation provisions of the ADA title two, deny coercion, threats or retaliation, Magistrate Jordan and defendant the New York Unified Court System threatened me and others in the process of me exercising my civil rights and requesting ADA Accommodations in violation of the ADA.

105. Other State courts provide note takers. In my cases note takers are provided to Office of Court Administration funded attorneys at Legal Services Hudson Valley, Inc, but not to me or others similarly situated.

106. This disparate treatment violates the ADA and rehabilitation act. Such by the state public entity magistrate threats caused me PTSD, General Anxiety, emotional harm and sleeplessness.

107. The acts of defendants/ caused me and others similarly situated to incur tens of thousand of dollars of treatment for anxiety and PTSD.

108.    Magistrate Jordan knew I was disabled and protected by the ADA, but threatened me anyway in violation of my civil rights, ADA and federal law.

109.    Magistrate Jordan repeatedly retaliated against me by failing to hear my cases to lower support for my disabilities and repeated failed to order the support collection unit to credit child support paid in 2014 and other years between September 2014 and November 2018.  Such disparate treatment to credit my child support account is discriminatory and retaliatory and violates the ADA.

110.    Magistrate Jordan retaliated against me in March and April 2018 by dismissing my cases for me failing to show up for court due to being hospitalized with an occipital neuralgia headache attack at the end of March 2018 and deliberately dismissing my petition to lower support without full hearing the following day.  Punishing me for my disability headache Occipital neuralgia disability violates the ADA.

111.    These actions are discriminatory, willful and retaliatory for my disabilities.

112.    My attorney told me Magistrate Jordan would dismiss my case if I did not get top court.  I had a doctor's letter from the emergency room doctor, not to go to court for 5 days, but the state magistrate did not care, and

dismissed my case as retaliation for my ada accommodation request not to attend court for my hospitalization and subsequent recovery period. Magistrate Jordan acted with deliberate indifference and intent in denying the petition even though she was showed the child support payment and insurance receipts not credited. This violates the ADA

113. New York State's ADA accommodation process of allowing inexperienced Judges and Court Attorneys like Judge Schauer, Judge Gordon Oliver, Magistrate Jordan and Attorney Administrator D'ambrosio in Family court hearings to usurp the Experienced Court ADA Liaisons and prevent liaisons like William Curry from granting of ADA accommodations interferes with the Federal Broad non-discrimination mandate under ADA and violates the ADA.

114. Under USDOJ implementing regulation id $ 12134; 28 C.F.RE pt 35 and 28 C.F.R $ 35.130(b)(1)(iii) the USDOJ ADA regulation prohibits a public entity from providing services to individuals with disabilities that are "not as effective in affording an equal opportunity to obtain the same result…as that provided to others." Consistent with the statute, the regulation both prohibits outright discrimination and requires a public entity to "make reasonable modifications in policies, practices, or procedures when…necessary to avoid discrimination on the basis of

disability, unless the public entity can demonstrate that making modifications would fundamentally alter the nature of the service, program, or activity." This is specified in 28 C.F.R $ 35.130(b) (7). This regulation is entitled to "controlling weight" so long as it is not "arbitrary, capricious or manifestly contrary to the statute," as specified in Chevron USA , Inc. v. Natural Res. Def. Council, Inc 467 U.S. 837, 844(1984.) Defendants' discrimination this way violates the ADA.

115. The Supreme Court of the United States has credited USDOJ's interpretation of Title II as implemented by this regulation as concluded in Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 597-98(1999.) New York State Unified Court System and Office of Court Administration allowance for inexperienced Family Court Judges to override ADA decisions of experienced ADA liaisons is contrary to the mandate of the ADA and ADAAA. This practice violates the ADA.

116. Other states have central ada administration judges that dispense in hours or days rulings of providing ada accommodations in a quick manor to insure the disabled have meaningful access. Defendants' all in New York State violate the policies and procedures for ada compared to other states in violation of the ADA.

117.    Defendants' including New York State's Unified Court System and OCA, ADA reasonable accommodation process of allowing/permitting judges in individual cases to take away the accommodation process from experienced ADA court liaisons, violates the Congressional spirit , mandate and intention of the ADA law to provide swift and immediate accommodations to the handicap.

118.    The ADA provision for reasonable accommodations extends to the visibly and invisible disabled as long as the disability is qualified and affects a major bodily function like sleep, memory, hearing, eating, using ones arm, walking, standing or other qualified handicap impairment.

119. Defendants' including  New York State Office of Court Administration and the New York State Unified Court System are guilty of violating the spirit and regular handicap administration process of the ADA because their ADA accommodations website listed court procedures interfere with Federal Mandate for immediate accommodations.

120.    There is no legitimate excuse of New York State Unified Court system and Office of Court administration that Reasonable ADA accommodations of a note taker be allowed in court from a 2015 accommodation request should still not be provided  later in December 2017 or January 2018 for me or others similarly situated.

33

121.    There is no excuse that CART real time transcription from the Spring 2018 are still not provided in September 2018 in New York Family Courts. New York State Unified Court system and New York State Court administration's ada accommodations procedures fails to allow swift appeals/review of denial of ADA accommodations by State Judges in State court in violation of 28 CFR 35.107.

122.    Indeed trying to appeal an ADA accommodation in the busiest appeals court in the country in the second department covering long Island, Westchester, Brooklyn, Queens, Rockland, Putnam, Dutchess and Orange County is  an impossible endeavor.  Even the Appellate court chief clerk Aprillanne  Agostino  stated  that  the  ADA  accommodations  is  an "administrative function that the appellate division could not help me out with."

123.    The appellate division second department recommended I contact Office of Court administration and the Commission on judicial conduct agency for ada access administration issues in the court room/for court services.

124.    The Office of Court Administration and office of judicial conduct told me I needed to file an appeal with the appellate division second department.  The second department appellate division stated I could not

appeal denial of ada accommodations without a final order in family court article 6 or 8 cases like mine.

125.   So here I am in a vicious cycle of court administration politics, with others similarly situated,  with technicalities and interference with my right for swift granting of ada accommodations for my unique handicaps and others with handicaps

SECOND CAUSE Of ACTION

Violation of section 504 of the Rehabilitation Act of 1973-1974

126. .Plaintiffs   reiterate   that   defendants   have   violated   the rehabilitation act in items 17 to 125 listed above in this complaint.

127.   These items also violates section 504 of the 1973 rehabilitation act because the State of New York, OCA Defendants' and the family court accept   federal   funds   and   therefore   must   observe   and   follow   anti-discrimination laws of the ada and federal government.

128.   By New York state failing to grant morning only court sessions for my sleep apnea, note taker for my tbi/post concussion syndrome, large print court orders for Occipital Neuralgia and an ADA advocate for my disabled son Jonah Fishman with Langerhan Cell Hystiocytosis x, the State court is in violation of federal anti discrimination laws including section 504 of the 1973 Rehabilitation Act.

129.   Defendants violated the Rehabilitation Act by retaliating by jailing me by violating their own State Court TOP order that permitted gift giving to my wonderful four kids.  Gifts that were in large part necessities: clothes, education computers etc for kids who need and want the gifts.

130.   Defendants do not jail non-disabled fathers in similar court proceedings for sending gifts to their kids, when court orders allow gifts on major holidays in violation of the Rehabilitation Act.

131.   This retaliatory punishment was unique/deliberate against me and others similarly situated as disabled litigant(s( in New York State Family court in violation of Rehabilitation Act.

132.   Judge Schauer and her co-defendants intentionally jailed me as "punishment/retaliation" for requesting that Schauer recuse herself and complaints about Judges discrimination to multiple supervisory parties including Westchester County Office of Human Rights, US DOJ Disability Rights Section and NY State Commission on Judicial Conduct in violation of the Rehabilitation Act.

133.   Other non-disabled fathers and mothers are not jailed by The State for sending gifts to their kids.

134.   This State retaliation was direct, deliberate and personal as Judge Schauer/Co-defendants felt they needed to "jolt me" (see June 27,

2017 transcript for Judge's quote.) in retaliation for sending gifts to my kids for major holidays in Violation of the Rehabilitation Act.

135.   Schauer and Co-defendants feel that physical punishment of me being confined to a hospital Jail room cell without my special handicap pillows and without my handicap equipment was appropriate punishment in violation of anti-retaliation provisions of the Rehabilitation Act.

136.   Given that I have electric stimulation from neurostimulator implants sending electric pulsation up my rights and left neck in my body, the intention of the State Corporal punishment was deliberate and real.  By sending me to County Jail without pillows in the hospital wing, I suffered several electric jolts up both sides of my necks and a severe neck sprain. Judge Schauer and Co-Defendants were deliberate and intentional as they could have chosen probation or lesser form of punishment like other non-disabled litigants who receive.

137.   But Defendants including Judge Schauer's and Michelle Dambrosio's personal cold direct disdain and feelings that they was personally spited, insulted and belittled by my post concussion syndrome/tbi/sleep apnea memory lapse/Occipital Neuralgia Headaches  of not remembering the court's statement "that there are no major holidays between April and May 2016" necessitated their jailing retaliation of me for

my qualified disabled tbi memory impairment in violation of Rehabilitation Act.

138.    Indeed in former attorney general Loretta Lynch's US Department of Justice 2010 bulletin on interpretation of the 2009 ADAAA act, the interpretation lists "traumatic brain injury/TBI " a Qualified ADA Disability under the amended ADA ACT that former President George Bush signed into Law. Judge Schauer and Co-defendants deliberately knew I was disabled and acted deliberately indifferent with personal intent to "confine" /jail me was punishment/retaliation for "Qualified ADA Disability" side effects in violation of rehabilitation act.

139.    State Court Defendants knew that I could not get bail during confinement for an alleged Family Court offense and that I would have to serve real jail time for trying to abide by complicated court orders in small print and sometimes-illegible handwritten notes in side margins of family court state order forms.

140.    Defendants further retaliated against me by denying and delaying my appeal rights because they have failed to issue a final order— now until June 2018-- for December 2016 accommodation requests and June 2017 ADA Denial of accommodations that I can appeal in New York Courts in violation of the rehabilitation act.

141.   New York Family Court and Office of Court administration discriminates against the qualified disabled because non-final New York State family court proceedings under article 6 and 8 of the family court act ARE NOT APPELLABLE WITHOUT PERMISSION OF THE APPELALATE DIVISION in violation of the Rehabilitation act.

142.   APPEALLATE Division denied permission to appeal denial of ADA accommodations twice stating these were not "final orders."

143.   Defendants' was deliberately discriminatory against me and my invisible ada qualified disabilities as other lesser judicial offenses are given permission to appeal, but my ADA needs and reasonable accommodation requests were denied permission to appeal deliberately by the Appellate division of New York State under archaic laws that interfere with the federal ADA mandate to provide swift accommodations and "reasonable accommodations" be provided promptly "without undue effort of the disabled.".

144.   This provision of Federal ADA Law and rehabilitation act are reinforced in the Federal Supreme court case of Tennessee versus Lane and Prakal versus Marion County Courts State of Indiana. In both cases, the state was held liable for violations of ADA and Section 504 of the Rehabilitation Act of 1973 for title two ada and federal anti-discrimination laws.  In both

cases the plaintiff was due these reasonable accommodations and the plaintiff was allowed to pierce State immunity to pursue compensatory damages for intentional, deliberate and direct violation of Federal Anti-discrimination laws and the ADA.

145. This extended the length of the disability discrimination, as the administrative part of defendants had a responsibility to stop the Family Court disability discrimination, but failed to do so in violation of the Rehabilitation Act.

146. Others disabled litigants in other courts not in New York family Court article 6 and or 8 proceedings are permitted to appeal as of right, where I am discriminated against for my disabilities against appealing in New York State in violation of the rehabilitation act.

147. Other litigants when and if they are jailed or denied ADA Accommodations receive final orders in New York State. Defendants including Judge Schauer willfully, deliberately and purposely delay my appeal rights as retaliation for my disabilities and disability side effects by denying issuing a final order after a December 2016 disability accommodation request, January 25, 2017 non-final order and June 21, 2017 hearing in violation of the Rehabilitation act.

148.   Defendants discriminated intentionally against me and (others similarly situated by making me(and others) as  disabled litigants pay for transcripts of court proceedings for the court to issue orders in violation of the rehabilitation act.

149.   Other non-disabled litigants in front of other judges do not have to pay for transcripts on their own for the benefit of the court.

150.   The defendants deliberately ordered me to provide the transcripts at my sole cost and expense instead of the court generating its own orders, as retaliation for my qualified ada disabilities in violation of the Rehabilitation act.

151.   Had the court allowed Note takers that were free or little cost to me, it would have been less costly by thousands of dollars compared to the cost of ordering transcripts.

152.   Tried my hardest to remember court orders and what is said in court for 49 months plus of endless 20 plus court appearances. With severe Obstructive sleep apnea, TBI and Post Concussion Syndrome  and Occipital Neuralgia it is harder to remember for me and others similarly situated.

153.   Defendants including Judge Schauer exploited that disabilities by jailing me for memory disability side effects of post concussion syndrome/TBI and refusing to allow my neuropsychologist treating

physicians to testify about my disabilities as mitigating factors at sentencing hearings before jailing me in violation of the Rehabilitation act.

154.   Other non-disabled fathers that commit family offenses are allowed doctors to testify about their medical condition as mitigating circumstances.  Defendants including Judge Schauer, Judge Greenwald and Judge Gordon Oliver denied me the ability to have doctors/social workers testify  like other non-disabled fathers do in violation of the rehabilitation act.

155.   Defendants including Judge Schauer also  retaliated against me by failing to allow me to file or prosecute family offense petitions against my x-wife, Jennifer Solomon when she missed or was late to over 30 court ordered visits. Other non-disabled fathers are allowed to file and have fair hearings heard for their former spouses violating court orders, but Defendants denied me the same rights and privileges as the non-disabled parents in other similar proceedings in violation of the rehabilitation act.

156.   Several Defendants retaliated against me for my disabilities by failing to give me a final order I could appeal as of right from a  June 2014 Family Court case until June 13, 2018.  This final order was only given after Federal Judge Karas held a hearing in my disability discrimination case

demanding the state give a date they will issue an appealable order. This retaliation violated the Rehabilitation act.

157.   Under regulation 28 CFR $35.130(b)(7), discrimination is prohibited and a public entity such as the Family court is required to "make reasonable modifications in policies, practices or procedures when…necessary to avoid discrimination on the basis of disability." Discrimination by public entity prohibited under the Rehabilitation Act.

158.   By denying me the administrative ADA accommodations that would have been granted by the Yonkers ADA Family Court liaison William Curry and the Office of Court Administration under Dan Weitz ,the judge is the sole person in the court responsible for administering required ada accommodations.

159.   Defendants' including Judge Schauer have discriminated against me and others similarly situated against the terms of Section 504 of the rehabilitation act of 1973-4 in a never ending Family Court action that is 55 months old with no end.

160.   Defendant Judge Schauer ignored the court ordered report of Licensed Social Worker Lorna Hakim Baker  that stated I am a great dad and loving father.   Lorna stated that my x –wife "is a very dangerous women. Lorna Hakim Baker further commented on the  page 6 of her Social

worker report that she told Jennifer Solomon, " until you love your children more than you hates your ex-husband, the children's emotional well being will be at stake." Ignoring court ordered reports for me a disabled person, violates the Rehabilitation Act.

161. Defendants including Judge Schauer continued their disability discrimination of me by refusing to allow Lorna Hakim Baker testify at the fair hearing or allow her report into evidence in violation of the rehabilitation act.

162. Non-disabled fathers are allowed to submit court ordered reports into evidence in other Family court proceedings. This is further example of Defendant Judge Schauer's deliberate disability bias and willful deliberate discrimination against me.

163. Judge Gordon Oliver discriminated against me by failing to allow me to use my notes in her courtroom 8/15/18 and prohibiting medical social workers testifying in court about our case on that date in violation of the rehabilitation act.

164. Judge Gordon-Oliver was well aware that I made disability accommodations requests of the Family Court but retaliated against me deliberately by failing to allow me use of my notes and failing to allow the

social worker access to the courtroom to testify to my kids desires and wishes and my superior parenting skills in violation of the rehabilitation act.

165. Judge Gordon-Oliver was supposed to see my social worker and I at 10:30 am to accommodate the sleep apnea morning only accommodation, but retaliated and saw us last close to 1pm in violation of the rehabilitation act.

166. This delay was willful and intentional in violation of the rehabilitation act..

167. The judge knew I was paying for the social worker and knew she was at the courthouse.

168. By selecting my case last and other cases after me before me, Judge Gordon-Oliver made sure my witness would not have time to testify in discriminatory behavior in violation of the Rehabilitation act.

169. Judge Gordon-Oliver retaliated against me by not allowing my show cause relief or allow the social worker to testify.

170. Non-disabled individuals are allowed to have court appointed experts be heard.

171. Judge Oliver in comrade support for Judge Schauer just retaliated and discriminated against my disabled sons and me by deliberately

treating us differently and failing to accommodate in violation of title two of the ADA and Rehabilitation act.

172. My multiple and serious disabilities are set forth in the formal request for accommodations under the ADA submitted on my behalf by Ms. Donna Drumm whom I retained as my ADA Advocate, on December 15, 2016.

173. In brief summary, my diagnosed physical disabilities include severe obstructive sleep apnea syndrome, occipital neuralgia, tinnitus, peripheral neuropathy, and traumatic brain injury, TMJ/TMD, cubital tunnel syndrome, and disabilities from hernia surgery and post concussion syndrome.

174. Medical documentation establishes that these disabilities have a serious, deleterious impact on major life activities.

175. My obstructive sleep apnea disrupts breathing and sleeping.

176. My occipital neuralgia causes intense pain, ringing in the ear and increased sensitivity to light.

177. Post Concussion Syndrome, Severe Obstructive Sleep Apnea and Traumatic Brain Injury have resulted in short term memory loss and need for cognitive therapy averaging over 15 hours per week this year.

178.   My TMJ/TMD affects hearing, eating and sleeping and causes severe chronic pain.

179.   My tinnitus causes regular beeping, hearing loss and ringing in my ears.

180.   My peripheral neuropathy affects my ability to move due to frequent pain and numbness in my extremities and limbs.

181.   My cubital tunnel syndrome effects my ability to use my arm. My hernia disability effects movement and pain.

182.   In addition, due to surgery I underwent in December 2016 to insert a second neurostimulator implant – part of a medical approach to allow my body to breath at night---with the debilitating sleep apnea condition associated with TMJ/TMD, occipital neuralgia, neck protrusion and herniated disks that resulted from two separate automobile accidents – I continue to experience a heightened degree of disability post hernia surgery in May 2016 and post Inspire Neurostimulator Implant in December 2016 with multiple skin infections, allergic reactions and chronic pain.

183.   In addition, the Family Trial court, on grounds of standing, refused even to consider that portion of my ADA Requests that seeks to address the disabilities of my minor son Jonah. This willful failure of defendants to allow me to request accommodations for my disabled son were

retaliation for my disabilities in violation of ada and rehabilitation act.  Other non-disabled fathers can request ada accommodations and have them granted in other courts without biased and discriminating Judge Schauer and intimidating/discriminating Michelle D'ambrosio court attorney administrator and co-defendants.

184.   Finally, the Family trial court, OCA, and defendants simply ignored two crucial requests for reasonable accommodations under ADA. First, the trial court ignored my request for the production of the medical records of the court-appointed social worker, Mary Crowe, from 2014, 2015 and 2016 to his treating psychologist, Dr. Michelle Maidenberg. As indicated in my the ADA Request, this information was critical in that it would assist in my therapy with Dr. Maidenberg. The ADA Orders do not even mention this request in denial of the ADA and rehabilitation act.

185.   The defendants also violated my rights and my disabled sons rights under the Federal IDEA act by prohibiting me access to school events for the disabled as retaliation for making ADA accommodation requests in violation of the ada and rehabilitation act.

186.   Despite numerous requests for Judge Schauer and co-defendants to lift the TOP (temporary order of Protection) order because it violates and restricts my access to the school, Schauer has retaliated and

deliberately excluded me from school IDEA participation in violation of the ADA and rehabilitation act.

187. Am zero threat to the school and have no history of violence.

188. NY Child protection services even determined the allegations of physical abuse were completely "unfounded" in August 2014.

189. Yet Judge Schauer has restricted me access to the school since December 2015 in retaliation for me attending book fairs and other events other parents are invited to in violation of the ada and rehabilitation act.

190. Judge Schauer says and reported in one order that I abused my kids as false retaliation, as all New York State investigators found there were zero allegations of any physical abuse or violence from me with my kids.

191. Under the Federal Idea Act parents have a right for disability education by the school in school programs to learn to assist their qualified disabled children in school. As my sons Jonah and Skye Fishman are disabled with IEPs protected under the IDEA act Schauer and defendants denied me participation by denying me access to the school.

192. *Defendants discriminated against me and Ignored My Standing To Seek Relief for my Minor Child as retaliation in violation of the ada and rehabilitation act.*

193. Defendants rejected my request for ADA accommodations for my son as retaliation against me in violation of the ada and rehabilitation act.

194. A parent whose parental rights have not been terminated has standing to seek relief on behalf of one of his minor children. "Parents generally have standing to assert the claims of their minor children." *Altman v. Bedford Cent. School Dist.*, 245 F.3d 49, 70 (2nd Cir., 2001), *cert. denied Dibari v. Bedford Cent. School Dist.*, 534 U.S. 827, 122 S. Ct. 68, 151 L. Ed. 2d 34, *citing Engel v. Vitale*, 370 U.S. 421, 423, 82 S. Ct. 1261, 8 L. Ed. 2d 601 (1962) *and Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 841 n. 44, 97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977); *accord, Rivers v. McLeod*, 252 F.2d 99, 102 (2nd Cir., 2001).

195. Defendants discriminated against me and others similarly situated because Under New York law, that a parent currently does not have custody of the child in question does not diminish his standing to assert any legal claim on the child's behalf, so long as his parental rights have not been terminated. *See Sykia Monique G. v. Little Flower Children's Services*, 208 A.D.2d 534, 535, 616 N.Y.S.2d 806, 807 (2nd Dept., 1994).

196. Indeed, this point has been specifically upheld in a case involving the ADA. In *M.K. ex rel. Mrs. K. v. Sergi*, 554 F. Supp. 2d 175 (D. Conn., 2008), a federal district court upheld a mother's right to pursue a

claim under the ADA on behalf of her minor child. *See* 554 F. Supp.2d at 194-95. The trial court did not cite any case law indicating a contrary result; indeed, it cited no authority whatsoever. It follows that, as a matter of law, I have standing to seek accommodations under the ADA for my minor child.

197. Defendants discriminated and retaliated against me by denying requests from my ADA Advocate for ada accommodations for my son in violation of the ada and rehabilitation act.

198. Defendants discriminated and retaliated because An entity or individual may seek relief under the ADA on behalf of another, because the language of the ADA, "[b]y its plain meaning," indicates that the claimant "need not be an individual with a disability, but may be anyone injured by a covered entity's discrimination against an individual on the basis of that individual's disability." *Innovative Health Systems, Inc. v. City of White Plains*, 931 F. Supp. 222, 236 (S.D.N.Y., 1996), *aff'd in part*, 117 F.3d 37 (2nd Cir., 1997).

199. A state court is clearly a "covered entity" under the ADA. Accordingly, the defendants retaliated against me by denying my ADA Request, as it relates to my minor child, as a matter of law.

200. *Defendants discriminated and retaliated against me because The ADA Order does not describe even the slightest effort, on the part of the*

defendants, to negotiate an alternative or compromise solution to the accommodations it denied in violation of the ADA and rehabilitation act.

201. *Defendants discriminated, failed to accommodate and retaliated against me and others by failing to have the extensive individual interactive process in negotiating ada accommodations required by a public entity in violation of the ada and rehabilitation act.*

202. Defendants further retaliated against me by preventing my ADA Advocate her from filing new ADA Accommodation requests, and violating state court ADA office procedure in violation of the ada and rehabilitation act.

203. In this respect, too, the Family court violated applicable law and retaliated against me and others similarly situated.

204. The ADA requires attempts to "negotiate" requests for accommodations before simply disposing of them. *See Phillips v. City of New York*, 66 A.D.3d 170, 884 N.Y.S.2d 369 (N.Y. App. Div., 2009).

205. The ADA, which require the public entity to which the request is directed to engage in an "interactive process" with the party requesting accommodations. *Wright v. New York State Dept. of Corrections*, 831 F.3d 64, 79-80 (2nd Cir., 2016). This the Family court clearly failed to do in violation of the ada and rehabilitation act. It is shown over and over again

that defendants failed to negotiate or compromise on ADA accommodations requests.

206.   What is more, Defendants by insisting that my request for accommodations in my visits with my children must be addressed within the adversarial process of the underlying litigation, the trial court violated a principle of the ADA that requires ADA accommodations to be treated as rights to be administratively granted rather than claims to be litigated between adversaries. *King v. Indiana Supreme Court*, 2015 U.S. Dist. LEXIS 58388 (S.D. Ind. May 5, 2015).

207.   *Defendants retaliated against me by making by* Another legal error committed by the  court and its insistence that I, rather than the court, bore the burden of establishing a reasonable accommodation request in violation of the ADA and rehabilitation act

208.   The law is different. "If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant, who must articulate a legitimate nondiscriminatory reason for its challenged actions." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 n. 3 (2nd Cir., 2004).

209.   The Family court itself does not deny that I established a *prima facie* case for the accommodations I am seeking; yet the Family court judge

did not meet its burden of showing a "legitimate nondiscriminatory reason" for its denial of my ada accommodations in violation of the ada and rehabilitation act.

210. *The family Court Violated My Substantive Rights under the ADA and rehabilitation act and retaliated against me by denying scheduling changes to court appearances.*

211. Precisely the sort of scheduling changes I requested as a result of my disability – and which the defendants denied – are in fact comprehended under the ADA. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3rd 2010) ("we hold that the ADA contemplates that employers may need to make reasonable shift changes in order to accommodate a disabled employee's disability-related difficulties"); *McMillan v. City of New York*, 711 F.3d 120, 127-28 (2nd Cir., 2013).

212. The same principle applies to the reasonableness of the scheduling changes I requested, as a temporary ADA accommodation for my disabilities, in my visitation with my children and in requesting morning only court sessions with the court(due to sleep apnea disability.) Thus, the trial court's denial of these requests violated my civil rights, ADA and rehabilitation act.

213. What is more, as noted above, my request in this case implicates my civil rights – specifically, my right to see my children frequently like other non-disabled fathers due and send gifts, make calls, and text my children…all like other non-disabled fathers due.

214. Under the ADA, I may not be denied that rights of non-disabled fathers as a result of my disability. Yet that is precisely the result of the Family court's and defendants denial of my requests. Where, as here, legally mandated civil rights are at stake, the law indicates that the ADA Qualified Disabled father will prevail in Federal Court unless the infringement of rights is minimal and justified. *See People v. Adams*, 53 N.Y.2d 241, 249, 440 N.Y.S.2d 902, 905, 423 N.E.2d 379, 382 (1981).

215. Since accommodations such as allowing me a note-taker, CART or large print court orders in court could easily have been granted without undermining the Family court process, the interference with my rights under the ADA   are significant civil rights and violate the rehabilitation act.

216. In sum, the January 2[5th] 2017 ADA Order, ADA Hearing June 21 and court hearing June 27, July 31 and August 18, 2017, August 2[9th], August 3[0th], September 1 and September 12 and June 13, 2018 order violated both procedural and substantive requirements of the Federal ADA, and

wrongly denied my standing to seek accommodations for my minor son, Jonah Fishman in violation of the ADA and rehabilitation act.

217. All of these rulings are erroneous as a matter of Federal ADA law, and I continue to be exposed to possible irreparable harm as Family Court proceeding continue and am still denied all of the reasonable accommodations requested for my ADA Qualified Disabilities.

218. Have tried for stay in State Supreme court and appellate court reversal without success, and the Federal court is the overseer of the ADA and must act to insure the ADA and rehabilitation act are followed at all times.

219. The defective grievance procedures in New York state courts prohibit the OCA and New York state Unified court system from complying with ADA and ADAAA and the Rehabilitation act.

220. Marc Fishman is an individual with Traumatic Brain Injury, Occipital Neuralgia, TMJ, Severe Obstructive Sleep Apnea, Cubital Tunnel Syndrome, Peripheral Neuropathy, Tinnitus, and is regarded by Defendants' as an individual having these disabilities. Marc required appropriate individualized treatment and accommodations necessary to ensure full and equal access to court proceedings and court programs. These court

proceedings and court programs concern his parental rights and custody of minor children. Accordingly, Marc is a qualified individual with a disability as defined by 42 U.S.C $$12102 and 12131(2).

221. Severe Obstructive Sleep Apnea is listed as a disability by Loretta Lynch Attorney General in her interpreting memorandum of the ADA amended act. Plaintiff (s) disabilities must be assessed individually.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Marc Fishman and others similarly situated prays that this court grant the following relief:

A. Declare New York State has discriminated against me and others similarly situated for our qualified ADA disabilities by failing to grant the accommodations requested and denying access to auxiliary aides provided to others including a note taker, court

provided transcripts or a stenographer in the courtroom and use of CART system for meaningful communication in court.

B. Pray for an order directing the Office of Court Administration to schedule morning only appearances due to my tiredness from sleep apnea. Pray for an order for Large 12 point print or large court orders only from state court due to my Occipital Neuralgia. Pray for an order that I may bring a note taker of my choice into court for my TBI/Post concussion memory impairment. Pray for an Order for the state court to provide all my medical records of social worker reports held in court to me per Hippa and ADA. Pray for an Order that all Ada requests are to be administered by the court ada liaison, not the sitting judge as is customary practice . These requests do not override the state in the Rooker Feldman act. Per case law specified in the Supreme Court decision of Tennessee v. Lane Supreme Court 2004, the states are required to provide "meaningful access" to the court and court services to the qualified disabled. Rooker Feldman does not prohibit a Federal Judge from ruling that the process of OCA/NY State administering ada accommodations is illegal and non-compliant with the ada. Rooker Feldman does not prohibit a Federal Judge from stating that the lack of a proper , fair and prompt ADA grievance procedure by OCA violates Federal ADA and ADAAA law.

C. Grant plaintiff's request for declaratory relief, finding that Defendants actions violated Title Two of the American With Disabilities Act("ADA"), 42 U.S.C $ 12101 et seq; Section 504 of the Rehabilitation Act 29 U.S.C. $794 et seq., and The New York Human Rights Act.

D. Order Reimbursement of expenses incurred, including medical, therapy, transcripts, copies and ada advocacy expenses.

E. Award Compensatory Damages from Defendants for violations of title two of the ADA,  Rehabilitation Act and specifically retaliation and failure to accommodate reasonable accommodation requests F. Award Legal Fees

F. Enter a judgment for Plaintiff requiring the New York State Family Court and Office of Court Administration to provide all accommodations requests in the December 2016 and June 21, 2017 and 2018 ADA requests and or declare the trial in the state violated federal law by punishing/retaliating against me for my disabilities.

G. Enjoin defendants from retaliating against Marc Fishman .

H.  Order a stay of all State Family Court proceedings until Defendants  comply with the ADA and rehabilitation act

I.  Grant such other relief as it deems just and equitable.

JURY DEMAND

Plaintiff)s) hereby demand a trial by jury of all issues triable.

Dated: Submitted:  New York, New York
November _9_ , 2018

_____

MARC FISHMAN
Plaintiff *pro se*
3200 Netherland Ave Apt G
Bronx, NY 10463
914-837-3209