UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARC FISHMAN, INDIVIDUALLY, and on behalf of all
others similarly situated

Plaintiff,

v.

Office of Court Administration New York State Courts,
Judge Michelle I. Schauer in her administrative and official
capacity, Nancy J. Barry, District Executive 9th District NY
Courts in her administrative and official capacity, Dan Weisz,
Professional Director In his administrative and official capacity
New York Courts, Michelle D'ambrosio in her administrative
and official capacity, Magistrate Carol Jordan in Her
administrative and official capacity Capacity, Judge Gordon
Oliver in her Administrative and Official Capacity and Judge
Kathy Davidson, Chief Administrative Judge 9th circuit and
former Chief Judge of the Westchester Family Court in her
administrative and official capacity and the New York State
Unified Court System, and Judge Hal Greenwald, in his
administrative and official capacity Judge Alan Scheinkman
in his  administrative and official capacity as Chief
Administrative Judge of the 9th Circuit courts,

Defendants

18–CV-00282 (KMK)

---

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
BY DEFENDANTS NEW YORK STATE OFFICE OF COURT
ADMINISTRATION, NANCY BARRY AND DAN WEITZ

JOHN W. McCONNELL
Attorney for Defendants Barry, Weitz and
OCA
Office of Court Administration
25 Beaver Street
New York, New York 10004
(212) 428-2150

Lisa M. Evans
Lee Alan Adlerstein
Of Counsel

TABLE OF CONTENTS

Page

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Plaintiff's Requests for Disability Accommodations . . . . . . . . . . . . . . . . . . . . . 2

    B.   CART Reporting as an Administrative Accommodation . . . . . . . . . . . . . . . . . . 6

    C.   The ADA Accommodation Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D.   Allegations Against the OCA Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

POINT I

    DEFENDANTS BARRY AND WEITZ ARE IMMUNE FROM
    SUIT FOR MONEY DAMAGES, AND THE CLAIMS AGAINST
    THEM ARE REDUNDANT OF THOSE AGAINST DEFENDANT OCA . . . . . . . . 11

POINT II

    THE SAC FAILS TO STATE A CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.   Claims Against Barry and Weitz . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

          1. CART as an Accommodation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2. Non-interference with Judicial Accommodation Rulings . . . . . . . . . . . . . . 18

    B.   Claims Against OCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          1. CART as an Accommodation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          2. OCA's ADA Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TABLE OF AUTHORITIES

Page

CASES

Ashcroft v. Iqbal, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Balogh v. H.R.B. Caterers, Inc., 88 A.D.2d 136 (2nd Dept. 1982) . . . . . . . . . . . . . . . . . 12

Candelaria v. Cunningham, 2000 WL 798636 (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . 13

Carrasquillo v. City of New York, 324 F.Supp.2d 428 (S.D.N.Y. 2004). . . . . . . . . . . . . . . 11

Chambers v. Time Warner, Inc., 282 F.3d147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 2

Chambers v. Wright, 2007 WL 4462181 (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cole v. Goord, 2009 WL 2601369 (S.D.N.Y.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Davis v. Collado, 2018 WL 4757966 (S.D.N.Y) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Davis v. Shah, 821 F.3d 231 (2d Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

DiPizio v. Empire State Dev. Corp., 745 Fed. Appx. 385 (2d Cir. 2018) . . . . . . . . . . . . . . 15

Disabled in Action v. Bd. of Elections of New York, 752 F.3d 189 (2d Cir. 2014) . . . . . . . . 14

Felix v. New York City Transit Auth., 324 F.3d 102 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . 22

Fox v. State University of New York, 497 F.Supp.2d 446 (E.D.N.Y. 2007) . . . . . . . . . . 11, 13

Freeman v. Kirisits, 2017 WL 475679 (W.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fulton v. Goord, 591 F.3d 37 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Garcia v. State University of New York, 280 F.3d 98 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . 11

Hallett v. N.Y. State Dep't of Corr. Servs., 109 F.Supp.2d 190 (S.D.N.Y. 2000). . . . . . . . . . 13

Hayden v. Paterson, 594 F.3d 150 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Henrietta D. v. Bloomberg, 331 F.2d 261 (2d Cir. 2003),
    cert. denied, 541 U.S. 936 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ii

In the Matter of Solomon v. Fishman, 2017- 07775, __ AD3d __ (2nd Dept. 2018) . . . . . . . . . 21

Keitt v. N.Y. State Dep't of Corr.& Cmty. Supervision,
    2015 WL 2383687 (W.D.N.Y) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kramer v. Time Warner, Inc., 937 F.2d 767 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Marcus as Tr. of Grace Preferred Litig. Trust v. Smith,
    755 Fed. Appx. 47 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Marks v. Tennessee, 562 Fed.Appx. 341 (6th Cir.),
    cert. denied, 135 S.Ct. 197 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Maus v. Wappingers Cent. Sch. Dist., 688 F.Supp.2d 282 (S.D.N.Y. 2010) . . . . . . . . . . . . . 11

Monroe v. Gerbing, 2017 WL 6614625 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Myers v. N.Y. State Dep't of Motor Vehicles, 2013 WL 3990770 (E.D.N.Y) . . . . . . . . . . . . 11

Porrazzo v. Bumble Bee Foods, LLC, 822 F.Supp.2d 406 (S.D.N.Y. 2011) . . . . . . . . . . . . . . 2

Pungitore v. Barbera, 506 Fed. Appx. 40 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Scalerio-Isenberg v. Port Auth. of New York, 2018 WL 1633767 (S.D.N.Y.) . . . . . . . . . . . . 13

Wilf v. Bd. of Regents of the Univ. System of Georgia,
    2009 WL 10657260 (N.D. Ga.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Zappin v.Cooper, 2018 WL 708369, aff'd, _ Fed.Appx. _ (2d Cir. 2019)
    (Summary Order, Case 18-1545, dated May 15, 2019) . . . . . . . . . . . . . . . . . . . . . . . . 15

STATUTES, REGULATIONS AND RULES

Americans with Disabilities Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Rehabilitation Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. § 12132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

28 CFR § 35.107(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 15

New York CPLR article 78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Preliminary Statement</u>

This memorandum of law is submitted on behalf of defendants Office of Court Administration, Nancy Barry and Dan Weitz in support of their motion to dismiss the Second Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.

Plaintiff Marc Fishman alleges that he has various disabilities for which he was denied reasonable accommodation during the course of proceedings against him in the Family Court of Westchester County. Plaintiff alleges that these denials and the procedures pursuant to which his requests were reviewed violated the Americans with Disabilities Act and the Rehabilitation Act. He seeks injunctive relief granting him the accommodations he has requested and compensatory damages.

The Second Amended Complaint should be dismissed as against defendants Office of Court Administration, Nancy Barry, and Dan Weitz. Defendants Barry and Weitz, sued in their official capacities, are immune from a suit for money damages, and the claims against them are redundant of those against defendant Office of Court Administration. The Second Amended Complaint fails to make plausible allegations that Plaintiff was denied access to the Family Court by reason of disability or that the procedures for obtaining disability accommodations violated the law.

<u>FACTS</u>

Plaintiff *pro se* Marc Fishman claims to suffer from traumatic brain injury, post-concussion syndrome, occipital neuralgia, temporomandibular joint syndrome, sleep apnea, and various cognitive disorders. Second Amended Complaint ("SAC") ¶ 1 *(Dkt. 44-1)*. Plaintiff asserts two disability discrimination causes of action, pursuant to Title II of the Americans with

Disabilities Act ("ADA") (*Dkt. 44-1 at 8 - 35*), and the Rehabilitation Act ("RA") (*Dkt. 44-1 at 35 - 57*).

Plaintiff alleges that various judicial and non-judicial officials discriminated against him on the basis of his disabilities during a proceeding brought against him in the Family Court of Westchester County. The Court has already dismissed all of Plaintiff's claims against the judicial defendants. *Dkt. 46.* Remaining are claims against the Office of Court Administration ("OCA"); Nancy Barry, the District Executive for the Ninth Judicial District; Dan Weitz, the court system's Statewide ADA Coordinator (collectively, "the OCA Defendants").[1]

A.    Plaintiff's Requests for Disability Accommodations

Over the course of his Family Court proceedings, Plaintiff made numerous attempts to obtain myriad accommodations for his alleged disabilities. Set forth below is a chronological summary of requests directed to court administrators and the judges presiding over his matter.[2]

---

[1] There is also a claim against Michelle D'Ambrosio, a court attorney in the Westchester Family Court, is separately represented by the Attorney General's Office. To the extent that the SAC raises allegations against the New York State Unified Court System ("UCS") they are indistinguishable from and entirely duplicative of the allegations against OCA. The Court is respectfully requested to treat this motion as made on behalf of UCS as well.

[2] Generally in considering a Rule 12(b)(6) motion the Court must limit itself to facts stated in the complaint or documents attached thereto as exhibits or incorporated into the complaint by reference. Kramer v. Time Warner, Inc., 937 F.2d 767, 737 (2d Cir. 1991). However, in a pro se action, the Court may also take judicial notice of factual material outside the complaint including documents that have been submitted by plaintiff or that plaintiff possessed or knew about and relied upon in bringing the suit. Davis v. Collado, 2018 WL 4757966 (S.D.N.Y.). Where a plaintiff has relied heavily on a document's terms and effect and thus rendered the document integral to the complaint, the Court can take judicial notice of the document without the necessity of converting the motion to one for summary judgment. Chambers v. Time Warner, Inc., 282 F.3d147, 153 (2d Cir. 2002). In addition, the Court may on a 12(b)(6) motion take judicial notice of publicly available documents or matters of public record available on a public entity's public website. Porrazzo v. Bumble Bee Foods, LLC, 822 F.Supp.2d 406, 411-12 (S.D.N.Y. 2011).

Plaintiff was directly informed about the appropriate process and procedure for requesting an ADA accommodation, and the role that court administrators play. In a September 26, 2016 letter to Plaintiff, Nancy Mangold ( Nancy Barry's predecessor as Ninth Judicial District Executive) explained that "OCA practice and policy, which is available on the UCS website www.nycourts.gov  states that 'if you have a pending case before a judge or judicial officer and your request for ADA accommodation(s) will require a modification of or otherwise affect the court's practices or procedures, the request should be made to the judge or judicial officer.'" *Dkt. 17-9.*  Mangold also notified Plaintiff that neither the Administrative Judge's Office nor OCA were authorized to overturn a judicial decision, and therefore she could neither entertain his accommodation request nor overturn a judicially denied request.  *Dkt 17-9.*[3]

---

Accordingly, OCA Defendants request that the Court take judicial notice of various documents referenced below in this motion's statement of facts, including documents previously submitted to the Court by plaintiff in support of his requests for preliminary injunctive relief and by defendants in opposition to such relief. Those documents are all known to or are relied upon by him in bringing this action. All such previously filed documents are referred to herein by reference to their docket numbers (as in, e.g., *Dkt. 17-9*), with specific pages identified where warranted.

In addition, the Court is also requested to take judicial notice of supplemental information integral to plaintiff's claims supplied by material available on the UCS public website, that describes the disability accommodation process Plaintiff is challenging. Plaintiff's previous submission of excerpts from this website and references to it demonstrate that he has relied upon the public website in framing his complaint. Finally, OCA Defendants also request that the Court take judicial notice of documents annexed as exhibits to the accompanying Declaration of Lee Alan Adlerstein, dated May 24, 2019. These consist of e-mails from June 2018 to and from Plaintiff regarding his request that court administrators provide him with CART as an ADA accommodation. These documents are or were known to Plaintiff, implicitly relied upon by him in the complaint, and are integral to it.

[3] In her September 26, 2016 letter to Plaintiff, Mangold also advised that it was unclear what, if any, medical documentation he had presented to Judge Schauer, and that he should provide the Court with as much relevant documentation as possible to support the request. She also advised that if medical documentation had been provided, Plaintiff's attorney could inquire with the Court as to whether a decision would be forthcoming or if the Court required further

3

Plaintiff persisted in addressing his requests to the District Executive rather than to the Judge presiding over his case. A letter dated October 31, 2016 from the Administrative Judge's Counsel again advised Plaintiff that the District Executive could not consider requests for accommodation previously made to and determined by Judge Schauer, because such determinations were judicial and therefore not subject to administrative review. *Dkt. 17-8.*[4]

By decision and order dated January 25, 2017 Judge Schauer specifically addressed Plaintiff's ADA accommodation requests. *Dkt. 17-13*. The Order noted that the Court had granted Plaintiff's request that a dispositional hearing be adjourned due to hernia surgery and his claimed need for six or seven weeks to recover, and had previously informally granted an accommodation request made by Donna Drumm, Plaintiff's"ADA Advocate," for a 90-day adjournment, and allowed the Advocate to be present during court appearances. *Dkt. 17-13 at 3*. In addition, Judge Schauer permitted Plaintiff to wear sunglasses in court. Judge Schauer denied requests that Plaintiff be allowed to hire a note taker and use a tape recorder in court; for accommodations on behalf of one of Plaintiff's children; and for various child visitation-related accommodations. *Dkt. 17-13 at 4-5.*[5]

---

demonstration of disability and the reasonableness of the proposed accommodation. *Dkt. 17-9.*

[4] In June, 2017, Plaintiff also sought to direct ADA accommodation requests not to a judge presiding over his matter but to the Court's Chief Clerk. In response, he was again informed by the Court's ADA Liaison that "UCS policy [is] that if a case is pending before a judge/judicial officer then the ADA accommodation request should be made to that Judge or Law Clerk." *Dkt. 17-2 at 2*.

[5] Judge Schauer's ADA accommodation rulings were later upheld by the Appellate Division, Second Department. *See Dkt. 32 at 65-66* (Decision and Order dated June 27, 2018). In particular, the Appellate Division affirmed that Judge Schauer's decision to impose an order of protection on Plaintiff should not be vacated based on Plaintiff's allegation that the Family Court failed to provide reasonable accommodations for his alleged disabilities. The Appellate Division

On March 30, 2018, Judge Schauer issued an Interim Decision and Order denying, as an ADA accommodation, Plaintiff's request that he be given an aide to assist him in visiting his children; the Judge granted him permission to hire an aide if he chose to, provided that the attorney for the mother and the attorney for the children be given the name of the aide in advance and approve of his or her presence during visits. *Dkt. 17-17 at 4-5.* In a related Family Court support proceeding, Support Magistrate Carol Jordan denied Plaintiff's request to provide a scribe, but permitted him to use one of his choosing, provided the person was a neutral party and not a potential witness. *Dkt. 17-3 at 2-3.*

---

found that Plaintiff

> failed to submit sufficient evidence in support of his claim that he was disabled ... [and] did not demonstrate, as required by the ADA, that, by virtue of his allege disabilities, he was substantially limited in a major life activity [citations omitted]. Moreover, the court, despite the absence of an adequate showing by [Plaintiff] of any disability, nonetheless acceded to all of [Plaintiff's] reasonable requests for accommodations.

*Id. at 65.* The Appellate Division further held that the Family Court

> providently exercised its discretion in denying [Plaintiff's] request for the use by him of a personal note-taker or tape recorder at court proceedings, as the father had the ability to order official transcripts of the proceedings. Likewise the court providently denied the [Plaintiff's] ex parte requests under the guise of an ADA accommodation for alterations to the terms of his supervised parental access with the parties' children, since no such alterations could be made in the absence of a determination of the best interests of the subject children [citations omitted]. The court also providently denied the [Plaintiff's] ADA-based requests for the production to th [Plaintiff] by the court of confidential records prepared for the court by a social worker, and for certain ADA accommodations for one of his sons, who he claimed was also disabled.

5

B.    CART Reporting as an Administrative Accommodation

In June, 2018, Plaintiff and an advocacy group writing on his behalf sought the use of realtime reporting (i.e., CART) as an ADA accommodation. *Dkt. 29 at 31-34.* That request was addressed by Defendant Nancy Barry, District Executive for the Ninth Judicial District. Barry notified Plaintiff that she needed further information and requested that he provide documentation sufficient to explain any disabilities that would prevent him from participating in his case, and how the requested accommodation would aid him in doing so. Exhibit A to Declaration of Lee Alan Adlerstein, dated May 24, 2019 ("Adlerstein Decla."). In response, Plaintiff asserted that he needed the immediate transcripts produced through realtime reporting because it was difficult for him to remember the spoken word as a result of post-concussion syndrome, ringing in his ear from tinnitus, and occipatal neuralgia/tmj headaches. Adlerstein Decla. Exhibit B. He asserted that his cognitive disabilities prevented him from remembering hours worth of court testimony and instructions like a non-cognitively disabled person could, and that realtime reporting was therefore necessary to allow him access to the court proceeding. Although he referenced an earlier letter he produced from a doctor in support of his requests for a note taker, he did not provide any further documentation. Adlerstein Decla. Exhibit B.

On June 22, 2018, Barry denied in writing Plaintiff's accommodation request, "based on the information provided." *Dkt. 29 at 27 -30; Dkt. 32 at 79-82.* She stated:

> You have asked for realtime reporting as an ADA accommodation for what you describe as your cognitive disabilities, so that you can be reminded of oral instructions given by the court.
> Please be advised that realtime reporting, the simultaneous textual transcription of spoken words on a screen, is used as an accommodation for those with hearing impairments. Although you mention tinnitus, a condition which may

6

in some people cause hearing loss, you have not provided any medical documentation that it has done so in your case. Nor does it appear that you were unable to hear the proceedings in any of your numerous prior court appearances. If you are able to provide medical documentation that you are hearing-impaired and that your ability to participate in court proceedings is thereby impacted, please submit it. We will then consider whether any assistive technologies might provide an accommodation for your hearing impairment, including assistive listening devices or realtime reporting, or whether any alterations in courtroom practice or procedure that your physician might recommend could provide a suitable accommodation.

      Realtime reporting cannot be provided to address your asserted short-term memory impairment. Transcripts of the official record can be obtained through the ususal process upon request, and will provide a complete written record of the proceedings. To the extent that you assert you must obtain an immediate transcript so that you will be able to remember an instruction given you by the court, you may also request from the judge, when given such an instruction, the opportunity to pause the proceedings while you write down what was instructed. Alternatively, you may also for the same purpose make use of your attorney, or of the ADA advocate the trial court has permitted to accompany you during the proceedings, or of a neutral, non-witness notetaker the court has granted you permission to use during proceedings. In any event, the incident you cite regarding your failure to obey the court's written order – that gifts could only be sent to your children "on birthdays and major holidays" – appears to have been caused by your misinterpretation of the language of that written order (i.e. your apparent belief that Passover, Memorial Day and July Fourth could be construed as appropriate gift-giving holidays), not by any failure of memory.

Barry also advised Plaintiff that the procedure for reviewing her denial was attached. *Dkt. 32 at 80, 82.*

      Plaintiff appealed Barry's decision to Defendant Dan Weitz, OCA's Statewide ADA Coordinator, submitting a one paragraph doctor's note in support. *Dkt. 34-4 at 4.* The note did not describe any hearing impairments, simply stating that a neuropsychological evaluation demonstrated cognitive deficits in several areas relating to memory, and that Plaintiff would benefit from using CART as an aid. *Dkt. 34-4 at 4.*

      By letter dated August 7, 2018, Weitz denied Plaintiff's appeal. *Dkt. 34-4 at 2-3.* Weitz

reiterated that CART reporting is used as an accommodation for the hearing impaired, and that Plaintiff had failed to submit any medical evidence that he was unable to hear what was being said in court, or that tinnitus had caused him any hearing loss. *Dkt. 34-4 at 2.* Weitz also found the doctor's note insufficient to establish that an accommodation was merited. The note did "not state that [Plaintiff's cognitive difficulties] are so substantial in comparison to the general population that they constitute a disability, nor does it explain how those cognitive deficits impact [Plaintiff's] ability to participate in court proceedings or specify how the proposed accommodation would address those impacts." *Dkt. 34-4 at 3.*

Weitz's decision also stated that the "alternative accommodations" set forth in the initial denial of Plaintiff's request by Barry "appears sufficient to address any impact [the] asserted memory impairment may have on [Plaintiff's] ability to participate in the programs, services, and activities of the court." *Dkt. 34-4 at 3.*

C.    The ADA Accommodation Process

The process and procedures for court users to obtain ADA accommodations are set forth on the New York State Unified Court System's public website at https://www.nycourts.gov/accessibility/index.shtml. While many ADA accommodation requests are addressable by court administrators, some requests can only be determined by the judge before whom the requesting person is appearing.

The public website's "ADA Guide for Judges and Court Personnel" page (*Dkt. 17-6 at 2-3*) describes the differences between accommodations that must be ordered by a judge and those that may be made administratively:

While many accommodations may be arranged by the court's ADA liaison (see

below), or other court employees, certain accommodations can only be ordered by the judge or judicial officer presiding in a case.

Judicial accommodations:  Only the judge or judicial officer presiding in a pending case may order an accommodation that would implicate the rights of parties to the proceeding or the judge's inherent power to manage the courtroom and proceeding. Such "judicial accommodations"may include, for example, extensions of time for the filing of papers, taking frequent breaks during court proceedings, and remote appearances. While only a judge may order such an accommodation, non-judicial court personnel may be called upon to facilitate the accommodation.

Administrative accommodations:  In contrast, accommodations that do not affect the rights of parties to the proceeding or the judge's inherent authority over the courtroom and proceedings may be arranged by non-judicial court personnel. Such "administrative accommodations" include, for example, providing assistive listening devices or scribes, arranging for a court service to be provided in an accessible location, and permitting the entry of a service animal into a courthouse.[6]

The procedure for reviewing a denied accommodation request varies depending on whether the denial was judicial or administrative in nature. As explained on the public website's "How Court Users Can Obtain ADA Accommodations" page:

> If the requested accommodation is denied and an alternative cannot be agreed upon, you should receive a written explanation for the denial. A final decision to deny an accommodation can only be made by an appropriate executive-level manager (in NYC, the Chief Clerk of the Court, or in Judicial Districts 3-10, the respective District Executive to the District Administrative Judge), or, if the request has been directed to a presiding judge or judicial officer, by that judge or judicial officer.
>
> If a judge or judicial officer has denied the accommodation request, you may ask that he or she do so on the record or in a written order, so that it might be judicially reviewed if you wish to appeal it. For all other denials, you will be provided with a written <u>Denial of Accommodation Form</u>, which can be administratively reviewed.
>
> . . .
>
> A person who has been denied an accommodation may seek review of that decision. If the decision to deny an accommodation was made by a judge or judicial officer in a pending proceeding, review of that decision must be sought

---

[6] The same information is provided on the public website's "How Court Users Can Obtain ADA Accommodations" page.

9

> through the regular process of judicial review. If the decision to deny an accommodation was made administratively by a Chief Clerk or District Executive in consultation with the ADA Statewide Coordinator, that decision may be reviewed through the Request for Reconsideration process discussed below.
>
> . . .
>
> The Statewide Coordinator will review the reconsideration request promptly, and will review any information or documents submitted ... [T]he Statewide Coordinator may request, obtain and consider additional information deemed necessary.
> To the extent possible, the Statewide Coordinator will issue a decision ... within 30 days ... . The Statewide Coordinator may affirm, modify or reverse the initial denial of the accommodation request.

As stated on the public website, "(t)here is no administrative review of the denial of a judicial accommodation. Review of the denial must be sought through the regular process of judicial review." *Dkt. 17-6 at 3.*

D.    Allegations Against the OCA Defendants

Plaintiff complains about responses by court administrators to his ADA accommodation requests. Plaintiff alleges that Defendants Barry and Weitz discriminated against him by denying his request for CART reporting, and that they declined to grant him accommodations that Judge Schauer, Court Attorney Michele D'Ambrosio, and Magistrate Jordan had allegedly previously denied him. SAC ¶¶ 36, 76-77.

As against Defendant OCA, Plaintiff asserts claims of allegedly discriminatory acts that fall into two categories: one, allegations that OCA denied Plaintiff a requested accommodation (CART) that allegedly would have enabled access to his judicial proceedings. SAC ¶¶ 36, 50, 53, 56-57, 76-77; two, allegations that the process and procedures the state court system uses to address ADA accommodation requests violate the ADA or Rehabilitation Act. SAC ¶¶ 17-32, 113, 115, 117, 119-121, 141-142, 219.

10

POINT I

DEFENDANTS BARRY AND WEITZ ARE IMMUNE FROM
SUIT FOR MONEY DAMAGES, AND THE CLAIMS AGAINST
THEM ARE REDUNDANT OF THOSE AGAINST DEFENDANT OCA

As previously recognized by this Court, many District courts in this Circuit have held that

there is no liability for money damages for individual defendants sued in their official capacities

under the ADA and the RA. See Keitt v. N.Y. State Dep't of Corr.& Cmty. Supervision, 2015

WL 2383687 at *21 (W.D.N.Y) (ADA or RA suits); Myers v. N.Y. State Dep't of Motor

Vehicles, 2013 WL 3990770 at * 9 (E.D.N.Y) (ADA suits); Maus v. Wappingers Cent. Sch.

Dist., 688 F.Supp.2d 282, 302 n.10 (S.D.N.Y. 2010) (ADA or RA suits); Fox v. State University

of New York, 497 F.Supp.2d 446, 451 (E.D.N.Y. 2007) (ADA suits); Carrasquillo v. City of

New York, 324 F.Supp.2d 428, 441 (S.D.N.Y. 2004) (ADA suits).[7] The claims for money

damages against defendants Barry and Weitz, sued herein in their official capacities, should

therefore be dismissed.

Yet even where this proposition has not been definitively addressed by the Second

Circuit, the Circuit has held that official capacity money damages claims under the ADA are

barred by the Eleventh Amendment unless a plaintiff makes plausible allegations of

discriminatory animus or ill will on the part of the individuals. See Garcia v. State University of

New York, 280 F.3d 98 (2d Cir. 2001). Plaintiff's SAC lacks any allegations that Barry or Weitz

acted with discriminatory animus or ill will because of plaintiff's alleged disabilities. Where

mentioned by name in the SAC, Barry and Weitz are baldly alleged to have discriminated against

---

[7] But see, e.g., Cole v. Goord, 2009 WL 2601369 at *5 (S.D.N.Y.), reaching a contrary conclusion.

him by not allowing him to use CART technology to generate same-day transcripts (SAC, ¶ 36), and to have not ensured that his court proceedings were accessible where they failed to administratively overrule ADA accommodation requests denied by judges and court attorneys (SAC ¶¶ 76, 77).

Entirely absent from the SAC are any factual allegations against Barry or Weitz showing the existence of discriminatory animus or ill will on their parts arising from Plaintiff's alleged disabilities. Indeed, both defendants entertained his requests for CART technology as a disability accommodation, invited him to provide further information that might support his request, explained that such technology was not appropriately employed for impairments such as his, and offered a host of alternative methods that could be used if necessary to address his asserted memory impairment. *Dkt. 29 at 27 -30; Dkt. 32 at 79-82; Dkt. 34-4 at 2-3.*

In addition, Plaintiff was advised at least several times that court administrators are simply not authorized to overrule judicial determinations regarding ADA accommodation requests. *Dkt 17-9; Dkt. 17-8.* The distinction between judicial accommodations and administrative accommodations stems from OCA's appreciation of the appropriate boundaries between judges and court administrators. OCA and its officials do not have authority to supersede, overrule or control a trial judge in carrying out her or his adjudicative responsibilities. See Balogh v. H.R.B. Caterers, Inc., 88 A.D.2d 136 (2nd Dept. 1982). UCS practice with respect to disability accommodation requests reflects the court system's understanding that both judicial and non-judicial personnel have an obligation and a role to play in meeting the ADA's mandate that qualified individuals with disabilities must not be excluded from participating in or denied the benefits of the services, programs and activities of the court system; that practice cannot

12

reasonably be described as motivated by discriminatory animus or ill will toward Plaintiff or any individual with a disability.

In acting consistently with court system policies and procedures by declining to exercise discretion that they did not possess, defendants Barry and Weitz could not plausibly have demonstrated discriminatory animus or ill will toward Plaintiff, even if the SAC had raised such a conclusory allegation, which even on that level it fails to do. Accordingly, in the absence of plausible factual allegations of discriminatory animus or ill will on the part of Barry and Weitz, the ADA and RA monetary damages claim against them should be dismissed. See Monroe v. Gerbing, 2017 WL 6614625 at *15 (S.D.N.Y.); Chambers v. Wright, 2007 WL 4462181 at *4 (S.D.N.Y.).

The claims against Barry and Weitz in their official capacities should be dismissed for an additional reason: those claims essentially allege a failure to reasonably accommodate Plaintiff, and are therefore duplicative of, and indistinguishable from, the same claims raised against defendant OCA. The ADA prohibits disability discrimination by a "public entity," 42 U.S.C. § 12132, and Plaintiff has also named OCA – a public -entity under both the ADA and RA– as a defendant. In such circumstances, "there is no need for official capacity litigation when an individual can sue a government entity directly." Candelaria v. Cunningham, 2000 WL 798636 at *4 (S.D.N.Y.); see also Scalerio-Isenberg v. Port Auth. of New York, 2018 WL 1633767 at *6 (S.D.N.Y.); Freeman v. Kirisits, 2017 WL 475679 at *6 (W.D.N.Y.); Fox, supra, 497 F.Supp. 2d at 451; Hallett v. N.Y. State Dep't of Corr. Servs., 109 F.Supp.2d 190, 199-200 (S.D.N.Y. 2000). Here, Plaintiff has sued OCA, so there is no justification for allowing Plaintiff to assert the same claims against the individual defendants in their official capacities.

13

POINT II

THE SAC FAILS TO STATE A CLAIM

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C § 12132. The RA similarly bars disability discrimination as the basis for exclusion from participation in, or denial of the benefits of, government programs and activities, and is subject to the same analysis as the ADA. See Davis v. Shah, 821 F.3d 231, 259 (2d Cir. 2016) ("Because the standards imposed by [ADA] Title II on public entities are generally equivalent to those of [RA] § 504, we 'treat claims under the two statutes identically' in most cases'") (internal citations omitted).

To establish a violation of the ADA, a plaintiff must demonstrate that: he is a qualified individual with a disability; the defendant is subject to the ADA; and, he was denied an opportunity to participate in or benefit from the defendant's services, programs, or activities or was otherwise discriminated against because of his disabilities. Henrietta D. v. Bloomberg, 331 F.2d 261, 272 (2d Cir. 2003), cert. denied, 541 U.S. 936 (2004). An ADA discrimination claim can be based on any of several theories: intentional discrimination (disparate treatment); disparate impact; or, failure to make a reasonable accommodation. Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). A public entity discriminates against a qualified individual with a disability when it fails to provide meaningful access to its benefits, programs, or services. Disabled in Action v. Bd. of Elections of New York, 752 F.3d 189, 197 (2d Cir. 2014).

14

For purposes of this motion, it will be assumed that Plaintiff may be a qualified individual with a disability; OCA defendants acknowledge that the state court system is subject to the ADA.[8] Plaintiff, however, cannot as a matter of law demonstrate that he was denied an opportunity to participate in or benefit from the programs, services, or activities of defendant OCA or was otherwise discriminated against on the basis of disability. Accordingly, the claims against the OCA defendants should be dismissed.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must provide sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." DiPizio v. Empire State Dev. Corp., 745 Fed. Appx. 385, 390 (2d Cir. 2018) (internal citations and quotation marks omitted). "A complaint does not state a 'plausible' claim if it merely asserts 'a sheer possibility that a defendant has acted unlawfully.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. Iqbal, 556 U.S. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Moreover, the Court is not required to accept the truth of legal conclusions asserted in a complaint. Marcus as Tr. of Grace Preferred Litig. Trust v. Smith, 755 Fed. Appx. 47, 50-51 (2d Cir. 2018) (citing Iqbal, 556 U.S. at 678). In deciding a Rule 12(b)(6) motion, a court may consider "facts stated on the face of the complaint, in documents appended to the complaint or incorporated ... by

---

[8] Alternatively, the Court may determine to give non-mutual defensive collateral estoppel effect to the finding by the Appellate Division, Second Department in its Decision and Order dated June 27, 2018 that Plaintiff did not, in his Family Court proceeding, establish that he was disabled or that his alleged disabilities substantially limited a major life activity, see Dkt. 32 at 65. See e.g., Zappin v.Cooper, 2018 WL 708369 at *15-19, aff'd, _ Fed.Appx. _ (2d Cir. 2019) (Summary Order, Case 18-1545, dated May 15, 2019).

reference, and ... matters of which judicial notice may be taken[.]" <u>Pungitore v. Barbera</u>, 506

Fed. Appx. 40, 42 (2d Cir. 2012).

A.    <u>Claims Against Barry and Weitz</u>

As noted above, the SAC raises ADA claims against defendants Barry and Weitz alleging

a failure to make a reasonable accommodation for Plaintiff's disability by denying him the use of

CART technology to generate same-day transcripts (SAC, ¶ 36), and by not administratively

overruling ADA accommodation requests previously denied him by judges and court attorneys in

the context of his pending Family Court proceedings (SAC ¶¶ 76, 77).  Neither of these

allegations state a plausible claim for relief.

1. <u>CART as an Accommodation</u>

Plaintiff does not make a sufficient factual showing that the denial of CART excluded

him from participating in his underlying Family Court proceedings.  His CART request to

defendant Barry was premised on his assertion that various disabilities caused a cognitive

impairment rendering him unable to fully remember the spoken word. *Dkt. 32 at 81.*  He sought

CART as a means of providing a reminder of oral instructions issued by the court. *Dkt. 32 at 81.*

On its face, this request did not speak to a litigant's ability to participate in a court proceeding,

but rather to obtain a memorialization – for later, out of court use – of what was said in court.

Such records are of course already routinely produced (in Family Court by means of officially

transcribed tape recordings) for all litigants' use.  As Barry pointed out, "[t]ranscripts of the

official record can be obtained through the usual process upon request, and will provide

[Plaintiff] with a complete written record of the proceedings." *Dkt. 32 at 82.*  Moreover, Barry's

denial of his request was accompanied by an explanation of alternative accommodations that

could be made to address Plaintiff's memory issues: when given an instruction that he was unsure he would remember, he could ask the judge for an opportunity to pause the proceedings and write down the instruction; alternatively, he could ask his attorney, or the "ADA advocate" the court had already allowed to be present with him, or a neutral note-taker that the court had granted him permission to use, to memorialize any important instructions from the judge.[9] Thus, Plaintiff does not plausibly allege that the denial of CART unreasonably denied him the ability to participate in his Family Court proceeding.

As Barry advised Plaintiff, CART is used for accommodating the hearing impaired. *Dkt. 32 at 81.* Although Plaintiff had also mentioned having a hearing related condition – tinnitus – he had not provided any medical documentation that it caused a hearing loss, and Barry invited him to submit documentation if this was the case and it affected his ability to hear in court. *Dkt. 32 at 81.* Plaintiff failed to submit any further documentation describing the nature of his hearing impairment and its impact on his ability to participate in court proceedings. *Dkt. 34-4 at 3.* Here, too, Plaintiff cannot – and does not – make a plausible claim that he was denied a reasonable accommodation for an asserted hearing impairment, where he failed to respond to

---

[9] In support of the need for this accommodation, Plaintiff cited an incident where his alleged inability to remember the court's instructions led to the court finding he had violated the terms of a written Temporary Order of Protection ("TOP"). See SAC ¶¶ 59 - 65. (Interestingly, Plaintiff now characterizes that alleged memory impairment as "slight." SAC ¶ 65.) As Barry's letter points out, however, that violation stemmed not from a failure of memory but rather from Plaintiff's misinterpretation of what the written order prohibited, i.e, sending gifts to his children on anything other than "birthdays and major holidays." *Dkt. 32 at 81.* Plaintiff does not allege that there had been any courtroom discussion specifically regarding the appropriateness of sending gifts on Passover, Memorial Day, and the Fourth of July prior to the times he violated the TOP.

Barry's request to provide additional medical documentation in support of his alleged need for such an accommodation.

Similarly, the SAC fails to adequately allege that Weitz's affirmance of Barry's determination caused Plaintiff to be excluded from or unable to participate in his Family Court proceedings for want of CART. On his appeal of Barry's determination, Plaintiff again failed to submit any medical evidence that he was unable to hear what was being said in court, or that tinnitus had caused him any hearing loss. *Dkt. 34-4 at 2.* Plaintiff did submit a very brief (one paragraph) doctor's note asserting that Plaintiff was receiving unspecified "cognitive rehabilitation treatment" apparently due to a 2013 head injury and post-concussion syndrome, and stating that a neuropsychological evaluation that Plaintiff had undergone a year previously had demonstrated cognitive deficits in several memory-related areas. *Dkt. 34-4 at 4.* The note opined in conclusory fashion that "due to his cognitive difficulties," Plaintiff "would benefit from" CART "as an aid." *Dkt. 34-4 at 4.* Weitz reasonably found such information insufficient to establish that an accommodation was required. As Wietz's affirmance points out, there was no statement that Plaintiff's cognitive difficulties actually constituted a disability, no explanation of how they impacted his ability to participate in court proceedings, nor any discussion of how CART would be able to address Plaintiff's limitations. *Dkt. 34-4 at 3.* The SAC thus does not offer a plausible factual allegation that Weitz's action denied Plaintiff meaningful access to participation in the Family Court proceedings.

2. Non-interference with Judicial Accommodation Rulings

Plaintiff's allegation that Barry and Weitz violated the ADA by not overruling judicial denials of various ADA accommodation requests (see SAC ¶¶ 76-77) also fails to state a claim

18

for relief. Plaintiff asserts that although aware of Judge Schauer's and Magistrate Jordan's denials of some of Plaintiff's requested accommodations (*see Dkt. 17-13; Dkt. 17-17; and Dkt. 17-3*), Barry and Weitz did not "act administratively" to grant those accommodation requests.

Barry and Weitz were not obligated by the ADA to overrule the judicial decisions made on Plaintiff's accommodation requests. Those requests were considered by the appropriate persons – the judges presiding over Plaintiff's pending Family Court matters – in accordance with established policy that pays proper deference to the respective roles of judges and court administrators. See e.g., Marks v. Tennessee, 562 Fed.Appx. 341, 344-346 (6th Cir. 2014), cert. denied, 135 S.Ct. 197 (2014) (state court system's policy established judge as appropriate decision maker on ADA accommodation requests seeking case adjournments, and claim that administrative ADA coordinator's refusal to entertain such requests independently of judge violated the ADA was properly dismissed as a matter of law for failing to state a plausible cause of action).

Plaintiff was repeatedly advised that UCS policy required him to address accommodation requests implicating the rights of parties to the proceeding or the Judge's inherent power to manage the courtroom and its proceedings to the judges before whom his Family Court proceeding was pending (see, e.g., *Dkt.17-8; Dkt. 17-9; Dkt. 17-2*). He was also repeatedly advised that decisions by judges could not be reviewed or overturned by court administrators, but rather were subject to review through the regular judicial process (see *Dkt 17-9; Dkt. 17-8*).[10] Those requests did not go unaddressed, but rather were in fact entertained by the judges before

---

[10] This policy and procedure was also set forth on UCS's public web site, with which Plaintiff was familiar, as evidenced by, inter alia, his submission to this Court of the "ADA Guide for Judges and Court Personnel" web page (*Dkt. 17-6 at 2-3*).

19

whom Plaintiff appeared (*see e.g. Dkt. 17-13; Dkt. 17-17; Dkt. 17-3*), and at least on one

occasion were reviewed on appeal by the Appellate Division (*see Dkt. 32 at 65-66*). That Barry

and Weitz declined to contravene established policy and grant accommodation requests over

which they had no jurisdiction and which had been (or would be) properly addressed instead by

judges in Plaintiff's pending proceedings cannot, as a matter of law, be said to have excluded

Plaintiff from participating in the programs, services and activities of the court. Accordingly, this

claim against Barry and Weitz – which does not rise to the level of asserting a deprivation of

meaningful access to the court – should be dismissed for failure to allege a plausible claim for

relief.

B.    Claims Against OCA

Plaintiff's claims of disability discrimination by defendant OCA are of two general types:

those relating to CART, and those relating to OCA's process and procedures for addressing ADA

accommodation requests.

1. CART as an Accommodation

To the extent that Plaintiff's CART-related claims against OCA are identical to and

repetitive of those against defendants Barry and Weitz, those claims should be dismissed for

failure to allege a plausible claim for the reasons set forth above.

Some aspect of Plaintiff's CART-related claim naming OCA appears to focus on CART

technology not as a means for actually participating in a courtroom proceeding in real time, as it

would allow a hearing impaired person to do, but solely because it also has the subsidiary ability

to produce a transcript (see, e.g., SAC ¶¶ 50, 53, 56-57). That is, Plaintiff is asserting not so

much that it was OCA's deprivation of CART that discriminated against him, but rather OCA's deprivation of a CART-produced transcript.

In this regard, Plaintiff fundamentally misconstrues the purpose behind the ADA's requirement that reasonable accommodations be provided to people with disabilities, i.e., so that those persons are able to participate in a court proceeding on an equal basis with a non-disabled person. As set forth above, Plaintiff cannot demonstrate that he needs CART to participate in his Family Court proceedings: he has been able to fully participate without that technology, because he is not so hearing impaired as to require it, or at least he has failed to demonstrate that he is. See In the Matter of Solomon v. Fishman, 2017- 07775, __ AD3d __ (2nd Dept. 2018), Decision and Order dated June 27, 2018, Dkt. 32 at 65-66. The SAC fails to plausibly allege that Plaintiff has a hearing disability requiring a speech-to-text service like CART in order to gain communication access to his Family Court proceeding.

Alternatively, Plaintiff appears to take the view that his concededly "slight memory impairment" ( SAC ¶ 65) requires that he be given transcripts at no cost.[11] But this is misguided in several respects. First, as noted above, transcripts only memorialize what has previously occurred, i.e., after Plaintiff has already participated in a court session, and thus would do

---

[11] Plaintiff asserts that OCA should have either given him a free copy of the transcripts generated from tape recordings that constitute the official record of the proceeding (notwithstanding his view that the official transcripts are inadequate representations of the proceedings, see SAC, passim) or a copy of the transcript that can be generated via CART reporting (SAC ¶¶ 56-57). It is unclear from the SAC whether Plaintiff understands that, because CART is used to accommodate the hearing impaired, speech uttered by the hearing impaired person is not itself transcribed into text – only the speech uttered by the other participants is turned into text for the hearing impaired person to view visually. Thus, a CART-derived transcript would not contain a complete record and could not be used for appellate purposes; indeed, only a certified transcription of the tape recording of the proceeding can be used for that purpose.

nothing to meet the fundamental purpose of an ADA accommodation, that of allowing him to actively participate in a court proceeding. Second, no average court participant – either memory impaired (as Plaintiff allegedly is, to some unspecified degree) or not memory impaired – is capable of later remembering word-for-word what occurred during a courtroom hearing or other proceeding in its complete entirety. "The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled," but does not require they be treated preferentially. Felix v. New York City Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003). Providing Plaintiff with free transcripts would put him in a better position than non-disabled persons, not an equal position, and would exceed the requirements of the ADA. Accordingly, Plaintiff has not raised a cognizable claim that the deprivation of free CART transcripts denied him a reasonable accommodation or was discriminatory.

2. OCA's ADA Procedures

Although Plaintiff baldly asserts that OCA lacks an ADA-compliant grievance  procedure for reviewing denials of requests for accommodations (SAC ¶¶ 17-32, 219), that is clearly not the case where Plaintiff has in fact appealed a denial of his CART request by defendant Barry to defendant Weitz and received a timely response. *Dkt. 32 at 79-82; Dkt. 34-4 at 2-3.* OCA's Denial of Accommodation Form (*Dkt. 32 at 79-80*) specifically sets forth the procedure for administrative review of the denial, by way of a Request for Reconsideration Form or a written statement containing certain information. As stated on the Denial form, the Request for Reconsideration or alternative written statement must be submitted, along with the Denial form and any additional relevant documentation the requestor wishes to include, within ten days of the

22

Denial, to the Statewide ADA Coordinator for administrative review (*Dkt. 32 at 79-80*).[12]  As noted above, the administrative grievance procedure is set forth in detail on the UCS public website.  Plaintiff cannot plausibly allege that OCA has failed to adopt "grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by [28 CFR Part 35 - Nondiscrimination on the Basis of Disability in State and Local Government Services]."  28 CFR § 35.107(b).[13]

Plaintiff also fails to state a cognizable claim where he challenges, as violative of the ADA, the fact that judges are "allowed" to address ADA accommodation requests in lieu of court administrators (see SAC ¶¶ 113, 115, 117).  For the reasons discussed above, UCS has adopted a disability accommodation request process that appropriately takes into account the respective roles of judicial officers and court administrators when it comes to requests implicating the judge's inherent power over the proceeding or affecting the rights of the parties appearing before the judge.  Plaintiff fails to point to any provision of the ADA that would prevent judges from entertaining disability accommodation requests.

Plaintiff also asserts that allowing judges to entertain accommodation requests is impermissible because judicial determinations are not reviewable in a sufficiently timely manner (see SAC ¶¶ 119 - 121).  Plaintiff, however, ignores the fact that the judicial process affords sufficient flexibility to allow a higher court, on an emergency relief basis, to review and intercede in a lower court's acts, and may permit collateral challenges to judicial decisions made

---

[12]  Notably, the Denial form also states that "Administrative review is not available if your accommodation request was denied by a judge or judicial officer."  *Dkt. 32 at 80.*

[13]  In any event, Plaintiff does not have a right of action pursuant to 28 CFR § 35.107(b), see Wilf v. Bd. of Regents of the Univ. System of Georgia, 2009 WL 10657260 at *6 (N.D. Ga.).

arbitrarily, capriciously or in violation of law.[14]  In any event, no cognizable claim has been

stated against defendant OCA with respect to the timeliness of judicial review of denials of

accommodation requests properly and necessarily within the purview of judicial officers.

## CONCLUSION

AS AGAINST DEFENDANTS BARRY, WEITZ AND OCA, THE SECOND
AMENDED COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW

Dated: New York, New York
       May 24, 2019

JOHN W. McCONNELL
Attorney for OCA Defendants
Office of Court Administration
25 Beaver Street, 11th floor
New York, New York 10004
(212) 428-2150

By:_____

Lee Alan Adlerstein
Deputy Counsel

Lisa M. Evans
Of Counsel

---

[14]    See, e.g., New York CPLR article 78.  That Plaintiff did not have an appeal as of
right from several nondispositional orders of the Family Court pursuant to Family Court Act
articles 6 and 8 (see Dkt. 17-14 at 2-3; attachments to letter dated April 30, 2018 from Plaintiff to
Hon. Kenneth M. Karas) does not demonstrate the lack of an opportunity for the higher court to
intervene in an accommodation request denial made by the lower court.  Plaintiff does not allege
that he made such a request in his motion for a stay of the Family Court orders pending
determination of his appeal to the Appellate Division, taken as of right.  Moreover, he does not
allege that he sought leave to appeal where, as the court noted, no appeal lay as of right.

24