180611fishmanC                    Conference

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MARC H. FISHMAN,

 4                  Plaintiff,

 5          v.                              18 Civ. 282 KMK

 6   OFFICE OF COURT
     ADMINISTRATION,
 7   NY STATE COURTS,

 8                  Defendant.

 9   ------------------------------x
                                    United States Courthouse
10                                  White Plains, N.Y.
                                    June 11, 2018
11                                  4:30 p.m.

12   Before:

13                THE HONORABLE KENNETH M. KARAS,

14                                          District Judge

15                        APPEARANCES

16   MARC H. FISHMAN, Pro Se Plaintiff

17   NY STATE OFC. COURT ADMINISTRATION
          Attorney for Defendant Office of Court Administration
18   LISA EVANS

19   ALSO PRESENT:  Isabel Bolivar, Note taker

20

21

22

23

24

25

180611fishmanC                Conference

1              (In open court)

2              THE DEPUTY CLERK:  In the matter of Marc Fishman v.

3    the Office of Court Administration.

4              Will the parties please state your appearances for the

5    record.

6              MR. FISHMAN:  Marc H. Fishman.

7              THE COURT:  Good afternoon, Mr. Fishman.

8              MR. FISHMAN:  Good afternoon, your Honor.

9              THE COURT:  Do you want to state your appearance for

10   the record?

11             MS. BOLIVAR:  Isabel Bolivar, note taker.

12             THE COURT:  Good afternoon, Ms. Bolivar.

13             MS. EVANS:  Lisa Evans, Office of Court Administration

14   Counsel's Office.

15             THE COURT:  Good afternoon, Ms. Evans.

16             MS. EVANS:  Good afternoon.

17             THE COURT:  Please be seated, everybody.

18             So, we're here on Mr. Fishman's application for a

19   preliminary injunction.  I have read the papers.  First of all,

20   I don't know if there are any updates that either side can

21   provide in terms of what the factual landscape is in the state

22   court.

23             MR. FISHMAN:  Yes, your Honor.  I'd be happy to give

24   you an update.

25             THE COURT:  Okay.  If you could, Mr. Fishman, direct

180611fishmanC            Conference

1   the microphone towards you.

2            MR. FISHMAN:  I'm sorry.  Towards me?

3            THE COURT:  Yes.

4            MR. FISHMAN:  Should I turn this towards me?

5            THE COURT:  Yes.

6            MR. FISHMAN:  Is that better, your Honor?

7            THE COURT:  Thank you.

8            MR. FISHMAN:  Your Honor, if I may, basically for over

9   four years now, I've been subject to disability discrimination

10  by the Family Court, State of New York, and unable to file any

11  grievance or file an appeal on a discrimination, because, under

12  Article 6 and 8 of the Family Court Act, you can only file an

13  appeal if there is permission granted.  The presiding judges

14  have denied permission, and I've tried to appeal now five times

15  to the Appellate Division, and they have denied what they call

16  interim appeal.

17           We're at the point where it's four years.  It's

18  excessive, all because I have a neuro-stimulator in my right

19  chest, and a neuro-stimulator in my left for sleep apnea, and

20  occipital neuralgia, and traumatic brain injury, and a metal

21  hip doesn't mean a state court can keep me in Family Court

22  forever, so that's the retaliation of this judge.

23           But just an update in terms of where we were since

24  counsel filed their reply May 4, we have the Family Court that

25  has a hearing tomorrow where it says if I don't bring a note

180611fishmanC                Conference

1   taker that the magistrate will accept, that she will lead me

2   across to Judge Katz for an incarceration hearing to have me

3   jailed.

4           THE COURT:  Wait.  Say again.  So, you need to --

5           MR. FISHMAN:  If I don't bring a note taker.

6           We requested that the Court provide us with a note

7   taker or provide us with the auxiliary aides of the courtrooms,

8   which is the text-to-voice-to-transcript technology, which is

9   in the Yonkers and White Plains court, not in the New Rochelle

10  one, where I'm in tomorrow.  It's all one courthouse.  They

11  have not replied to us regarding our request to move to that

12  high-tech courtroom.

13          THE COURT:  So, if you don't bring a note taker,

14  what's going to happen?

15          MR. FISHMAN:  She's going to take me across the way to

16  the judge, because the magistrate can't order someone jailed,

17  and hold a hearing to have me jailed.  I have that in the

18  transcript from May 3rd.

19          Since that time, we asked the judge --

20          THE COURT:  Hang on.  Have you jailed for what reason?

21          MR. FISHMAN:  For not following Court orders to bring

22  an auxiliary aide of a note taker to pay for myself.  I have a

23  transcript right here, if your Honor wants to see it.

24          THE COURT:  Sure.  Can you hand that up?

25          MR. FISHMAN:  Sure.

180611fishmanC                Conference

1          THE COURT:  Okay.

2          MR. FISHMAN:  It's on page 22 and 23, your Honor.

3          THE COURT:  Just hand it up here.

4          MR. FISHMAN:  Bring it up to this young lady?

5          THE COURT:  Sure.  Come on up.

6          MR. FISHMAN:  Okay.  Thank you, your Honor.

7          THE COURT:  And -- this is pages --

8          MR. FISHMAN:  It's 22 and 23 where she says you'll be

9   jailed.

10         THE COURT:  So, this is a transcript of a proceeding

11   on May 3rd before --

12         MR. FISHMAN:  Magistrate Carol Jordan, your Honor, in

13   the New Rochelle court.

14         THE COURT:  Magistrate --

15         MR. FISHMAN:  Carol Jordan, your Honor.

16         THE COURT:  Jordan.  Okay.

17         You told the state court judge that the federal court

18   signed an order requiring the state to provide a note taker?

19         MR. FISHMAN:  I don't believe that's what I told them.

20         THE COURT:  I'm just reading from the same transcript

21   you were reading from.

22         Page 2, so the Court says, "Do you have a note taker

23   that's coming today?"

24         You said, "No.  As far as I know, the federal court

25   signed an order requiring the state to provide a note taker

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

180611fishmanC              Conference

1  with an injunctive request that it would start next week, and

2  my accommodations were granted."

3          MR. FISHMAN:  The only thing I informed the Court,

4  your Honor, was that your Honor, per your assistant, allowed me

5  to bring in a note taker here, but there are vast problems with

6  the transcripts.

7          THE COURT:  That's different than -- no, no.  You

8  represented to the state court judge that I signed an order

9  requiring the state to provide a note taker.

10          MR. FISHMAN:  I don't believe that's what I said, your

11  Honor, but I can tell you, there's lots of inaudibles in the

12  transcript and there's problems with the technology there, so

13  when I do get a transcript and try to record the words, it's

14  not always exactly what is said.  There are over 87 words out

15  of a 22-minute hearing here that are inaudible.

16          What I had told the Court was that your Honor said I

17  can bring a note taker to federal court.  She had denied

18  bringing a note taker to her court.  That's what I had told the

19  state court.

20          THE COURT:  That gets clarified at page 4.  Okay.

21          Have you seen this?

22          MS. EVANS:  No, your Honor, I have not.

23          THE COURT:  Do you want to take a look at it?

24          It looks like, having read it, every page of it, up to

25  where Mr. Fishman wanted me to look, it sounds as if the judge

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

180611fishmanC            Conference

1    is concerned with the particular note taker, I think it was

2    Ms. Bolivar, that she was a potential witness in the case.  So,

3    the judge was saying you can't have somebody who is supposed to

4    be a neutral note taker and be in the court and, at the same

5    time, be a potential witness, which I know that there was some

6    dispute from Mr. Fishman in that regard, but it's not as if the

7    state court judge was saying you can't bring a note taker or

8    I'm going to throw you in jail, or basically the judge was

9    saying you've got to tell me who it's going to be so we can

10   make sure it's somebody who is not a potential witness in the

11   case or somebody who has a stake in the outcome of the case,

12   and that's what the judge was saying.  But you're welcome to

13   take a look at that.

14        MR. FISHMAN:  Your Honor, if I may add.  My opposing

15   counsel in this particular state proceeding had two note takers

16   in the courtroom.  They don't get asked who they are, they

17   don't provide résumés, they're not even on the transcript as a

18   record.  One of them used to work for me.  And then I raised it

19   to the judge who said that's, you know, no issue.

20        So, my problem is, I have three aides.  They say it's

21   a potential witness.  And the ADA, your Honor, correct me if

22   I'm wrong, when the ADA liaison for the court, William Curry,

23   said I could bring Ms. Bolivar and the judge says no, you

24   can't, and you have a conflict between the liaison and the

25   Court, no one is subjecting my ex-wife's note takers to the

180611fishmanC              Conference

1    same ritual.  And this is in one part of the Family Court.  The

2    other Family Court judge just denied note takers entirely in

3    front of my face with Judge Schauer.

4            THE COURT:  All I'm doing is, I'm addressing what you

5    represented to be the circumstance for tomorrow, and it's not

6    quite accurate to say that the judge said, you know, either

7    show up with a note taker or I'm going to send you off to

8    another judge who will send you off to jail.  That's not quite

9    accurate.  It was much more nuanced than that.

10           Yes?

11           MS. EVANS:  In addition, your Honor, I think the

12   threat of a contempt proceeding had to do with the fact that

13   there have been continuous adjournments and the judge's

14   interest in moving the matter along, but if there's a request

15   for an adjournment two or three times, then the matter cannot

16   be resolved.  So, I think that was the --

17           THE COURT:  Also true.  Yes.  Exactly right.

18   Ms. Evans is right.  All right.

19           Anyways, that's where things stand.  You're due to be

20   back in court tomorrow, the same court in New Rochelle; is that

21   right?

22           MR. FISHMAN:  Right.  That's where things stand with

23   that matter.  There are five appeals pending before the

24   Appellate Division, including an ADA appeal of the ADA order,

25   the subject of this proceeding that was calendared on May 17,

180611fishmanC              Conference

1    your Honor.  We were told there would be a decision by the end

2    of the month.  There's not.

3              THE COURT:  There's an appeal pending.  I think I saw

4    that in the papers.

5              MR. FISHMAN:  There's five appeals pending, yes, your

6    Honor.

7              THE COURT:  Right, but there's one particular appeal

8    as it relates to the accommodation issues.

9              MR. FISHMAN:  Yes, your Honor, one particular appeal.

10   And we don't have an answer in terms of when that grievance

11   will be determined.

12             Under the ADA, you're supposed to, when you file a

13   grievance, get an answer within 30 days, when there's a state

14   entity with 50 or more people.  New York state does not observe

15   that.  In the answering papers here, they don't have any

16   grievance.  They say file an appeal.

17             You know, typically in their procedures on their court

18   website, it says that they have a state coordinator.  His name

19   is Dan Weitz.  You can file an administrative appeal.  Again,

20   we're not talking about an additional decision.  We're talking

21   about meaningful access to the courts.  And then that Officer

22   of the Court will determine an answer and then get you an

23   administrative appeal within 15 to 30 days.  Opposing counsel

24   in the state are not exercising that procedure.  They're

25   basically just saying every judge can determine accommodations

180611fishmanC              Conference

1   differently and nothing is the same, and you can go with a

2   judicial appeal.  And you can't even appeal under Article 6 or

3   8.

4          And the other thing that's holding up this particular

5   case is, under my custody cases, there's supposed to be an

6   allocation of expenses.  And because this judge is not giving a

7   final order, it's holding up this other case, not just the

8   accommodations.  We've had four years.

9          THE COURT:  One of the appeals that's pending is your

10  claim that you were not provided reasonable accommodations.

11         MR. FISHMAN:  Yes, your Honor.  That's the 07752; yes,

12  your Honor.

13         THE COURT:  Right.  And I understand that you say that

14  they're out of time, but you can understand that there is, just

15  right out of the box, there's a difficulty with a federal court

16  weighing in on an issue that is actively being considered by

17  the state court, because one thing you said to the judge is,

18  well, the federal court is a higher court, and that's not true.

19  Federal court is a different court.  So, the state trial courts

20  don't answer to a federal trial court.  The state trial courts

21  answer to the state appellate courts, just as I answer to the

22  federal appellate courts, and ultimately the Supreme Court.

23         So, you can understand why the law is very sceptical

24  of the federal courts weighing in, even on a very important

25  issue such as ADA compliance, on an issue that's being

180611fishmanC              Conference

1  considered by the state courts, because I don't get to tell the

2  state courts, in the normal course, how to do their job, right?

3  It's just a different jurisdiction.  One isn't superior or

4  inferior to the other.  They're just different.

5          Do you understand that?

6          MR. FISHMAN:  Your Honor, I do understand, but I also

7  want to -- with all due respect to the Court, the appeal that's

8  being considered has nothing to do with the action in front of

9  this magistrate.  This has not been appealed.  We can't appeal

10  because she hasn't issued a final order after her four years of

11  adjournments.  What's being appealed is the denial of the note

12  taker, period --

13          THE COURT:  Right.

14          MR. FISHMAN:  -- in the other proceeding.  So, if that

15  proceeding comes in the affirmative, I'm not even sure it

16  bounds this magistrate, who is in a different article of New

17  York state law, I think it's Article 4, I don't believe it

18  binds her at all.

19          THE COURT:  That may or may not be right, but that

20  doesn't argue for the federal court weighing in now.  That kind

21  of cuts the other way.  And to the extent that there's no

22  appealable order, I guess I'm not really sure what it is you

23  would have me do.

24          What's the relief you're seeking right now?

25          MR. FISHMAN:  The relief we're seeking right now is

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

180611fishmanC            Conference

1   that during the pendency of this action --

2           THE COURT:  You say "this action" --

3           MR. FISHMAN:  The federal action and the state appeal,

4   that there's no incarceration for asking for an accommodation

5   under 28 C.F.R.

6           THE COURT:  That's not really at issue here.  I think

7   that the statement that the state court judge made about

8   incarceration had to do with delaying the proceedings by

9   insisting on having a note taker that -- either not providing

10  the name of the note taker or insisting on having a note taker

11  who might be a potential witness in the case, and, therefore,

12  delaying the proceedings.

13          MR. FISHMAN:  Right, but your Honor, they pay for my

14  ex-wife's note takers.

15          THE COURT:  But see -- you should take that up with

16  the state court judge.  Again, I don't serve as a referee over

17  the state court referee, right, and it's the state appellate

18  courts that do.  And if there's no appealable order yet, then I

19  don't know how it is I would have jurisdiction, or should even

20  exercise jurisdiction, to weigh in on something that is not

21  even appealable in the state court.

22          MR. FISHMAN:  Your Honor, the only issue we're here

23  over is the Supreme Court ruling in *Tennessee v. Lane*,

24  meaningful access to the courts.  When that case was appealed,

25  your Honor, it was during the pendency of that action.  It

180611fishmanC              Conference

1   wasn't at the end of that --

2           THE COURT:  Right, but it was appealed to the Supreme

3   Court, which has far broader -- the Supreme Court does have the

4   authority to review the actions of state courts to the extent

5   they touch on either federal, statutory or Constitutional law,

6   right?

7           So, if, for example, you were to appeal, let's say,

8   all the way to the New York Court of Appeals, right, the

9   highest court in New York state, and you don't like their

10  ruling, then you could go -- you couldn't come here and you

11  wouldn't go to the Second Circuit Court of Appeals; you would

12  go straight to the U.S. Supreme Court.  They have that

13  jurisdiction.  So, that case doesn't really prove your point.

14  That case just proves that, at the end of the day here, the

15  ultimate court that would decide this could be the U.S. Supreme

16  Court, but it doesn't mean you get there by way of a detour

17  from the state courts through the federal courts.  You would go

18  straight to the U.S. Supreme Court from the New York Court of

19  Appeals.

20          Do you understand?

21          MR. FISHMAN:  Your Honor, I do.

22          And I guess if you're asking me what I'm looking for,

23  the bottom line here, is something that opposing counsel has

24  not addressed, which is the grievance procedure.  You know, the

25  people in the state, the administrators, the ADA liaison said I

180611fishmanC          Conference

1    could bring three note takers.  I gave them a name.  He -- I

2    gave his accommodations.  A judge stopped him.  In another

3    case, the judge disallowed it.

4          So, in the New York state procedures, they define

5    administrative accommodation in court versus judicial.  All of

6    mine have been administrative.  A judge can order what a judge

7    orders.  So, our issue here -- and it's basically for anyone

8    who is disabled, not just me, okay -- is the state basically

9    not having a grievance procedure.  So, if I could file a

10   grievance with an ADA-experienced person, this would have been

11   resolved a long time ago.  What they're saying is, file an

12   appeal, and then basically it's the appellate court in the

13   country, the Second Department, which actually is even busier

14   than the federal court -- and again, yesterday, we don't get

15   guaranteed an order and yet you have an action pending --

16         THE COURT:  I know, but the fact that you might be

17   dissatisfied with the speed with which the appeal is being

18   resolved, or even the merits of how the Appellate Court might

19   handle the appeal, that doesn't mean that you still don't have

20   to pursue that route.

21         At the end of the day, the Office of Court

22   Administration doesn't tell judges how to rule in particular

23   cases.  It doesn't tell judges how to actually run their

24   courtroom.  As the name applies, they have an administrative

25   support role in support of the courts.  We have one, too, in

180611fishmanC            Conference

1   the federal court.  They're the reason that we don't get enough

2   air conditioning or too much air conditioning, but they

3   certainly don't tell me how to rule.  They don't tell me - or

4   you - what appeals you might have or don't have.  They leave

5   that up to the Court; they leave that up to the Appellate

6   Court.

7           So, I understand your point.  And you're sort of --

8   you have this mixed world where you have what the ADA requires,

9   right, entities to provide by way of reasonable accommodation

10  and a grievance mechanism, so on and so forth, but then you

11  have the actual operation of a court.  And to the extent that a

12  Court makes a legal error, to the extent the Court -- whether

13  it's an error on the rule of law, it's an error in terms of how

14  the rules of evidence are applied, if it's an error in terms of

15  any sort of procedural mechanism that somebody says was denied

16  to that person, in this case, it would be a reasonable

17  accommodation, then the remedy when a lower court does

18  something that is arguably in error, is to go to the Appellate

19  Court, right?  And if the Appellate Court screws that up, then

20  you go to New York Court of Appeals, and then to the Supreme

21  Court, but you don't get to come here, is the point.

22          I don't get to tell a state magistrate, Here's how you

23  should apply the ADA, all right?  That's for the Appellate

24  Court to do.

25          Do you understand?

180611fishmanC                Conference

1          I'm sympathetic to your frustration, but these are

2   very clear rules on this, and they kind of make sense, because

3   just think.  Imagine if you're a state court judge and you're

4   thinking, wait, I have to answer now to the state Appellate

5   Court, I have to answer to some federal district judge in White

6   Plains, you know, then the system kind of breaks down.

7          Do you understand?

8          MR. FISHMAN:  Your Honor, I understand, again, the

9   bureaucracy and the laws, and your Honor understands it a lot

10  better than I do.  But what I would say, with all due respect,

11  what your Honor does have jurisdiction on, is just plain New

12  York state with a grievance.  For example, note takers are

13  provided − in Colorado, in California, in Florida, okay, in

14  Maryland when you have a cognitive disability, an impairment −

15  provided as an auxiliary aide in the court.

16          And if there's a grievance, it's very specific

17  procedures, okay.  Typically, you notify someone 15 days, the

18  state ADA coordinator, they provide it.  In New York state's

19  own Department of State website, there is a young lady in

20  Albany that says we have to provide note takers.  So, this is

21  the Department of State, proceeding on my real estate license

22  or a driver's license or a notary license, they would have this

23  procedure, they'd give a note taker.  You have the state here

24  operating as its own entity where you can't even get someone to

25  challenge them.  Their Appellate Division says, Look, you

180611fishmanC              Conference

1    should be going to the head of administration, Ninth Circuit,

2    Judge Davidson, Judge Scheinkman.  And they say you should be

3    going to the commissioner.  I went to both those places and

4    went to the Appellate Division.  The Appellate Division said,

5    Look, we hear appeals, this is an administrative ADA matter;

6    this is not something we appeal, unless you actually have an

7    ADA order.  Initially, we were certain that we did get an ADA

8    order.  And when we asked them to appeal it, your Honor, this

9    was the January 25th, 2007 order, and we asked them to appeal

10   it, originally in March, they said no.  They only agreed to

11   appeal it after the judge jailed me for not understanding her

12   court orders for giving me such tiny print.  It's a third the

13   size of your Honor's print.  You can barely read it when you

14   have the nerve damage that I have over here.

15          So, you know, if there was a grievance procedure --

16   and, again, New York state's acknowledged this.  If you look in

17   their website, they said -- they outline the September 26, '17,

18   they formed a committee with Judge Richter of the Appellate

19   Division, who I've met with, and she is very sympathetic.  She

20   said I wish you were in the First Department, you know, because

21   this is totally unfair, you know?  And they have four judges on

22   there and they're doing recommendations, but they can't

23   interfere in an active case.  And all they're saying is, when

24   you request ADA accommodations, Well, it's up to a judge.  But

25   on their website, it says ADA accommodation, administrative

180611fishmanC            Conference

1    liaison granted.  The liaison granted my note takers.  The

2    judge denied it.  Going to one judge, they denied it.  In civil

3    court from landlord/tenant --

4            THE COURT:  Let's be clear when you say deny note

5    takers.  So, to the extent that you're asking for the Court to

6    provide note takers, that's correct, they denied that; they

7    said you can bring your own.  But they're saying the note taker

8    can't be someone who is a potential witness.

9            Just so you know, we just finished a very long civil

10   trial, and if there was somebody in the back of the courtroom

11   who was a potential witness, they're actually excused from the

12   courtroom, because, for the obvious reason, you don't want

13   their testimony to be tainted by what they've heard in the

14   courtroom.  You want their testimony to be pure in the sense

15   that they're going to answer the questions, answer the

16   questions that they're asked and not have their answers in any

17   way, even subconsciously, affected by what they've seen in the

18   courtroom.

19           So, if you have a situation where the note taker is

20   somebody who can be a potential witness, it's not a surprise

21   that the judge would say, Look, just find some other note

22   taker, just find somebody who is not a potential witness.

23           Now, to the extent that you're saying, well, there's

24   no such scrutiny in terms of the opposing side, I understand

25   that.  Look, I don't know.  The record on that is really far

180611fishmanC                Conference

1    from clear in terms of the papers that have been submitted

2    here, but the notion that a Court can't say you can't have

3    potential witnesses as note takers and that violates the ADA, I

4    think that's going to be -- that's a different argument than

5    the relief you sought here.  That's different than at least the

6    papers that I got.  And that's why I want to be clear, because

7    I know that Judge Schauer - I think I'm pronouncing that

8    correctly - denied a number of your requests, but also granted

9    some requests.

10         MR. FISHMAN:  She denied the note taker; you're

11   correct.

12         THE COURT:  Right.  You were not denied a note taker.

13   You just were denied the public paying for the note taker.

14         MR. FISHMAN:  No.  I have the order here.  We were

15   denied a note taker in front of Judge Schauer from the

16   Appellate Division.  The magistrate said he could have a note

17   taker --

18         THE COURT:  No, you were not.  The wording on that is

19   crystal clear.

20         MR. FISHMAN:  Your Honor, I have it here with all due

21   respect.  It says so.

22         THE COURT:  You don't need to say "with all due

23   respect."

24         MR. FISHMAN:  Page 4, the note taker is denied.

25   That's what we appealed.

180611fishmanC          Conference

1          THE COURT:  The note taker provided by the Court was
2    denied.

3          MR. FISHMAN:  No.  Any note taker provided by Judge
4    Schauer, your Honor.

5          THE COURT:  No, that's not true.  That's not true.

6          MR. FISHMAN:  I'd be happy to give you a copy of the
7    order.

8          THE COURT:  I have the record.  I have the order.
9    It's just not true, okay?

10          MR. FISHMAN:  "[Inaudible] order that [inaudible] ADA
11    accommodation requested by Marc Fishman be permitted to have a
12    note taker present and to personally record the proceedings is
13    denied."  Stamped, shield, Judge Schauer.

14          THE COURT:  Be careful, okay, because you're not
15    actually being accurate in that regard.

16          You had a note taker.  You had a note taker before the
17    magistrate judge.  It's just that the judge said not that
18    particular note taker.

19          MR. FISHMAN:  With all due respect, the magistrate's
20    is now Judge Schauer's case ended last September.  The appeal
21    pending is on Judge Schauer's case.  Judge Schauer denied a
22    note taker period for me, but allowed three for my ex-wife.
23    That's essentially the case.  I have a copy of the appeal here.
24    She denied the note taker, period, for me.

25          And the other thing is, her courtroom had

180611fishmanC            Conference

1    transcript-to-text-to-voice-printing capability and she denied

2    me access to that technology.  That technology was in her

3    courtroom.  That's come up since we filed these papers.  That

4    eliminates the need for me to have a note taker -- to print out

5    a transcript.  But her order here, subject to appeal, the

6    biggest issue is the note taker.  Judge Schauer completely

7    denied a note taker.

8         THE COURT:  I thought it was that the person couldn't

9    record it.

10        MR. FISHMAN:  No.  Completely denied a note taker,

11   your Honor.  It's right here if you want to see it.

12        THE COURT:  I got it.  I see what you're saying.

13        MR. FISHMAN:  It was completely denied.  And the issue

14   was similar, is that, again, she allowed three or four for my

15   ex-wife, and we only found recently that they're paid for by

16   the Court Administration.  And why they have note takers,

17   again, is to get a transcript in state court.  This one was

18   very quick in front of Judge Schauer.  It's taken five or six

19   months, and so many inaudibles.  I've been ordered to pay for

20   them instead of having a note taker.  That's cost me well over

21   $30,000.  That's not right.  That's discriminatory.  Other

22   people with cognitive disabilities aren't ordered to buy a

23   transcript when there's transcript-printing technology in the

24   courtroom.  I also have a doctor's note, your Honor, about the

25   need of a note taker for my cognitive rehab if your Honor needs

180611fishmanC            Conference

1    to see a copy of that.

2          THE COURT:  Okay.  I guess this is -- this gets back

3    to what I was asking for.  I'm still not clear on what you're

4    seeking today, because, obviously, Judge Schauer's order goes

5    back to early 2017.

6          MR. FISHMAN:  Right.  And her proceeding ended in

7    September; although, she hasn't issued a final order.

8          THE COURT:  Right.  So, we're not here to have a

9    conversation about how that should have been done.  That's

10   done.  That's over.

11         MR. FISHMAN:  Right, but there's a proceeding

12   scheduled on the 21st in her court, and she still denied any

13   note taker, so we are here to try to get a note taker approved

14   for that element of Family Court.  We are calendared for June

15   21st at 2:00 p.m.  She has denied a note taker, period.

16         MS. EVANS:  Your Honor, may I be heard.

17         THE COURT:  Yes.  Of course.

18         MS. EVANS:  I believe that there is nothing on before

19   Judge Schauer on the 21st.  And I can represent to the Court

20   that her decision is imminent, so I'm not sure what he's

21   speaking about.  I know he does have a proceeding tomorrow

22   before judge -- Magistrate Jordan, but there's nothing pending

23   before Judge Schauer except for a decision on the issues that

24   are before her, and that is imminent.

25         MR. FISHMAN:  With all due respect, I looked at

180611fishmanC              Conference

1    WebCourts this morning, and I'm listed June 21st in front of

2    Judge Schauer.  I don't know if she's going to give the order

3    there or what, but we are scheduled.  I was told to be there at

4    2:00 p.m.  I confirmed that with counsel this morning.

5                THE COURT:  Well, maybe she's going to issue her

6    decision.  I don't know.  Does she issue oral rulings?

7                MR. FISHMAN:  Sometimes she does, but she has denied a

8    note taker.  We were in court there June 1, Judge, and she

9    denied a note taker.  So on her end, she's completely denied a

10   note taker.  She says, Good luck with the Appellate Division.

11   She used to work there eight years, which is probably why so

12   many of my permissions to appeal were denied in the first

13   place.  Again, this was decided May 17.  We don't even have an

14   order.  So, orders come out every Wednesday.  They might have

15   already issued an order saying you're required to have a note

16   taker, but the whole mechanism of who approves the note taker,

17   what type, you know, there was a grievance procedure with

18   New York that complied with federal ADA.  This would be done by

19   the ADA liaison; it wouldn't involve the same judge.

20               I'm not opposed to bring a note taker.  I gave her

21   five names.  She opposed them all because she said my ex-wife

22   can call them all as witnesses.  And I said, Well, you're

23   providing the service; you're paying for her note takers.  No,

24   I can't do it.

25               So, it's not a matter of -- and then she has me with

180611fishmanC          Conference

1   the ADA accommodation, bringing it to opposing counsel --

2         THE COURT:  It's unclear.  You're representing that

3   the taxpayers of New York state paid for the other side's note

4   takers?

5         MR. FISHMAN:  They do.  My ex-wife's is funded by

6   Legal Services of Hudson Valley.  They said they're 60-percent

7   paid for by the Office of Court Administration.

8         THE COURT:  Right, that's because she's obviously

9   filed out some kind of an affidavit.

10        Is that how it works?

11        MS. EVANS:  I would imagine, Judge.

12        THE COURT:  There has to be some record that says that

13  the person is in financial need.

14        Have you filled out any such paperwork?

15        MR. FISHMAN:  I have, your Honor.  And in my ex-wife's

16  case, they waived it.  My one of my attorney's is Mr. Donnelin,

17  who's handled some insurance matter with me, he's the

18  president [inaudible] and he said they waived it for her

19  because she makes $170,000 a year.  She doesn't qualify.  So,

20  they give her free note takers.  And we didn't know there were

21  all these note takers until we inquired, saw all those people

22  writing in the courtroom, and we'd object and say why does she

23  have nine people, I have one attorney?  Can I bring in my

24  assistant?  No, you can't.  Can they help me lift books?  No,

25  you can't.  They said no, you can't.

180611fishmanC              Conference

1              I mean, if we didn't have a specific ADA order, which
2    I'm glad we have from Judge Schauer, January 25th, there
3    wouldn't be a need for appeal because there's no interim
4    appeals left.  So, if this was New Jersey or California, you
5    would have had a 30-day grievance.  You would have had an
6    answer.
7              THE COURT:  You have to get past that, okay?  We're
8    not in California and we're not in New Jersey, okay, so, it
9    doesn't matter.  They're different laws, different states.  Of
10   course, there's federal law on ADA, but there's also federal
11   law and the extent to which federal courts can get involved.
12             Ms. Evans, is there anything else you want to add to
13   this conversation?
14             MS. EVANS:  A couple of things, your Honor.
15             THE COURT:  Yes.
16             MS. EVANS:  Just so that the Court is clear, the
17   matter before Magistrate Jordan has to do with the failure to
18   pay.  It's an order for payment.  There's been no payment of
19   the child support, so that's the matter that is before her.  He
20   filed subsequent orders, I think, seeking modification, so
21   those matters are currently before her, and I imagine that is
22   what is on tomorrow.
23             THE COURT:  Which is obviously related, but different
24   than what he's waiting for from Judge Schauer.
25             MS. EVANS:  Absolutely.

180611fishmanC          Conference

1          And so that the record is clear, there is -- we've

2     tried to explain to plaintiff that there's a difference between

3     accommodations that we can make from the administrative side

4     and accommodations that are made in the context of a judicial

5     proceeding.

6          If someone were to request a special courtroom because

7     they're wheelchair-bound, then that's something that we can do

8     on the administrative end; or you have the court proceeding

9     near a bathroom that accommodates the handicapped.  That's

10    something that we can provide on the administrative side that

11    doesn't involve a judge.

12         However, the things that -- the requests, the

13    accommodations that the plaintiff is requesting are all in the

14    context of the judge's judicial proceedings and that, we cannot

15    interfere with.

16         THE COURT:  Sure.  I understand that.

17         From Mr. Fishman's standpoint, what he's saying is,

18    okay, fine, so there's no way to administratively grieve the

19    failure to accommodate, but at the same time, he can't appeal

20    because the Appellate Court is saying, Well, it's not a final

21    order, so we're not going to consider it on the merits.

22         MS. EVANS:  Well, right.  Well, he will have -- but it

23    does not prevent him from appealing once there's an appealable

24    piece of paper.  So, that's what Judge Schauer is at this point

25    writing on, the final order, and he can then appeal everything.

180611fishmanC              Conference

1        Now, the plaintiff has -- if he wants to bring a note

2   taker at his own expense, I think the Court is willing to allow

3   him to do that.

4        THE COURT:  I mean, it seems -- I interpreted Judge

5   Schauer's order as nobody can tape record.

6        MS. EVANS:  Right.

7        THE COURT:  It sounds like another way to read it is

8   tape record or take notes.

9        MR. FISHMAN:  Correct, your Honor.

10       MS. EVANS:  That is not my interpretation of it,

11  Judge.  My interpretation is that he can provide a note taker

12  at his own expense, provided it's someone who is neutral.  And

13  even if it is determined from the appeals process that the

14  Court was wrong in requiring him to pay, there's a remedy.

15  There's an adequate remedy at law.

16       THE COURT:  That, I understand.  Right.

17       So, even if Judge Schauer said, No, you can't bring in

18  a note taker, your remedy is to order the transcript, and to

19  the extent Mr. Fishman says that's expensive, your argument is

20  that may be, but that's not irreparable harm.

21       MS. EVANS:  No.  In point of fact, the fact that he

22  has a note taker, that doesn't obviate the need for the

23  transcript.  The notes that are taken by the note taker does

24  not become the official record.  The official record is still

25  the transcript, which plaintiff or defendant would have to

180611fishmanC          Conference

1    order, in any event, if they want to take an appeal.  So, the

2    note taker, I'm assuming, maybe I shouldn't, so that he could

3    review, I guess, what went on in the court during the day.  But

4    to speak to that, he is represented by counsel, and he had an

5    ADA advocate available.

6         The note taker is for his, whatever reason, but it

7    doesn't speak to that being -- obviating the official record,

8    which is the transcript, so he would have to order that anyway.

9         THE COURT:  I understand.  I guess, getting back to

10   something we talked about earlier, we're waiting for some

11   decision from the Appellate Division, is that right --

12        MR. FISHMAN:  Five, your Honor.

13        THE COURT:  -- on this issue?

14        MR. FISHMAN:  Five appeals, three of which --

15        THE COURT:  But one of them specifically deals with

16   the accommodation.

17        MR. FISHMAN:  One specifically deals, your Honor, with

18   that January 25th order, specifically with that.

19        THE COURT:  The January 25th, 2017 order?

20        MR. FISHMAN:  Yes, your Honor.  That's one specific

21   appeal.

22        THE COURT:  Okay.

23        MR. FISHMAN:  There's another appeal for her jailing

24   me because I didn't understand or couldn't read her handwritten

25   orders or her two-centimeter print, okay, tiny print orders,

180611fishmanC            Conference

1    which she jailed me for that.  So, there is a risk of

2    irrevocable harm because they have jailed me, but I want to

3    clarify --

4              THE COURT:  Hang on.  Ms. Evans wanted to address

5    that.

6              MS. EVANS:  Yes, your Honor.  He was not jailed for

7    not being able to read the orders.  He was jailed for violating

8    an order of protection.  He was aware of the order of

9    protection; that is, he could only give gifts on some very

10   limited basis to his children.  He violated it by deciding that

11   Memorial Day and Passover, I believe, were major holidays.  And

12   so when he violated the order, the Court brought him in because

13   he had violated previous orders, and he was aware of them.  He

14   was represented by counsel at the time, an ADA advocate.  There

15   was a transcript.  The judge reads everything into the record.

16   So, he's misrepresenting that he was jailed because he couldn't

17   read the print; he was jailed for violating an order of

18   protection.

19             MR. FISHMAN:  I disagree with that entire, your Honor.

20   We can bring in the transcripts and we'd love to have a trial

21   here on the matter.  Counsel wasn't there, okay?

22             The order that I was jailed for for three weeks said

23   you can send gifts on major holidays.  The judge didn't specify

24   what major holidays were.

25             THE COURT:  So, you figured Memorial Day was a major

180611fishmanC          Conference

1   holiday?

2          MR. FISHMAN:  I had two attorneys interpret the

3   order --

4          THE COURT:  Really?

5          MR. FISHMAN:  -- because -- then they're confusing.

6          THE COURT:  If we took a poll, how many people do you

7   think would consider Memorial Day a major holiday?

8          MR. FISHMAN:  It depends.  It's Passover and Easter.

9          THE COURT:  Hang on.  Hang on.  Let's talk about

10  Memorial Day.

11         MR. FISHMAN:  Sure.

12         THE COURT:  What kind of gifts does one give to

13  children on Memorial Day?  I'm curious.

14         MR. FISHMAN:  Well, we have a veteran in the family.

15         THE COURT:  We all have veterans in the family.

16         MR. FISHMAN:  Right.

17         THE COURT:  I've never heard of somebody making a big

18  deal out of Memorial Day as a gift-giving event for children.

19         MR. FISHMAN:  Well, if the judge wanted to prohibit,

20  she could have said don't give any gifts.  What she did say in

21  the transcript, that I didn't remember, was she said there are

22  no gift-giving holidays between March and July, your Honor,

23  there are no birthdays.  And two of my kids' birthdays are

24  between, okay?  And she jailed me for three weeks.  And the

25  order was handwritten.  It was handwritten in this tiny print

180611fishmanC          Conference

1    here.

2          THE COURT:  So, one of the things, I forget which

3    judge, it might have been Judge Schauer -- why can't you take a

4    magnifying glass and read these orders or have somebody read

5    them to you?

6          MR. FISHMAN:  Oh, I have occipital neuralgia.

7          THE COURT:  So why can't you have somebody read them

8    to you?

9          MR. FISHMAN:  I did have them read it to me, and I had

10   interpretation.

11         THE COURT:  So, the problem wasn't that you didn't

12   know what the order said.  The problem was you had a difference

13   of opinion as to how to interpret it.

14         MR. FISHMAN:  No, your Honor.

15         THE COURT:  Yes.  You just admitted you had somebody,

16   a lawyer tell what the order said, --

17         MR. FISHMAN:  Right.

18         THE COURT:  -- and then, you decided that that didn't

19   bar you from giving gifts for Memorial Day.

20         MR. FISHMAN:  No, your Honor.  I think, your Honor --

21   it took six months to get the transcript.  So, we got the

22   transcript back.  It said Mr. Fishman, I want to let you know,

23   it was an April -- it March 16th -- there are no holidays

24   between, so I expect that you won't make gifts.  Then she said,

25   will you remember it?  The other side had a note taker.  So

180611fishmanC              Conference

1   then when they put me on trial, do you remember she told you

2   that?  No.  We went by the order.  What did the order say?  You

3   can send gifts on major holidays.

4          By the way, the gifts are necessities.  She didn't

5   [inaudible] gifts from my mother, aunt.  She said they were all

6   from me.  She didn't care about receipts.  She didn't care.

7   She just jailed me.  It's not something you get jailed for,

8   okay?  And I think five previous orders --

9          THE COURT:  You know what?  That has nothing to with

10  the accommodation.  You can get somebody to read you the order.

11  It's not a lengthy order.  You relied on it.  You say there

12  were interpretations of that order given by your attorneys,

13  that's on them if that's really what their interpretation was,

14  but that's really not an ADA issue.

15          MR. FISHMAN:  It's retaliation, your Honor.  This

16  whole thing is retaliation.

17          THE COURT:  Retaliation?  Whose retaliation?

18          MR. FISHMAN:  Not issuing a final order?

19          THE COURT:  Your lawyer said you can give the gifts.

20          MR. FISHMAN:  Correct.

21          THE COURT:  Okay.  So, the issue wasn't that you

22  didn't know what the order said.  The issue was, your lawyers

23  told you to interpret it a certain way.  The judge had a

24  difference of opinion, that happens, and you paid the price.

25  So, you should talk to your lawyers about their interpretation,

180611fishmanC            Conference

1    but I don't understand this notion that you didn't know what

2    the order said.

3              MR. FISHMAN:  Well, your Honor, the order said you can

4    send gifts on major holidays and birthdays.

5              THE COURT:  Right.  And they said -- they interpreted

6    that to mean, shockingly I might add, that that includes

7    Memorial Day.

8              MR. FISHMAN:  And Passover and Easter; right.

9              THE COURT:  Okay, all right, but Memorial Day?  That

10   was on them.  That was their interpretation.  It's not a

11   question of you didn't know what the order said because the

12   print was too small; it was a question of you and your lawyers

13   decided that you can give gifts for Memorial Day.

14             MR. FISHMAN:  Okay.

15             THE COURT:  The judge said no, that's not what I

16   meant.

17             MR. FISHMAN:  So for this mistake, your Honor, I

18   haven't been able to send a gift to my kids now for two

19   and-a-half years though I don't have a final order?

20             THE COURT:  That's not something that we deal with --

21             MR. FISHMAN:  It's retaliation.

22             THE COURT:  It has nothing to do with the application.

23   That's something, if you were upset about that, you could have

24   appealed that to the Appellate Division.

25             MR. FISHMAN:  We did.  And that's one of the things

180611fishmanC            Conference

1   that was decided.  So, the Appellate Division rules in my favor

2   and says we didn't violate it, then we can seek damages in this

3   court.

4            THE COURT:  Not in this court.  In that court.

5            MR. FISHMAN:  Well, they don't handle damages.

6            THE COURT:  No, no, no.

7            You need to understand this, and I'm going to be more

8   detailed about this in a minute, this is not a place you go

9   because you're dissatisfied with state court rulings.  It's not

10  the default.  There are exceptions, of course, but you've got

11  to satisfy those criteria.

12           But if somebody loses in state court, they don't get

13  to run to federal court and say, Undo the unsatisfactory state

14  court ruling.  That's not the default rule.  That's the

15  exception, okay?

16           MR. FISHMAN:  Your Honor, I understand that, but I'm

17  saying if they rule in the affirmative that the order was

18  illegal, that she did discriminate, if we have a lawsuit here

19  for compensatory damages --

20           THE COURT:  Hang on.  Did the Appellate Division say

21  she discriminated or did they say that the order was --

22           MR. FISHMAN:  They haven't issued a final order yet.

23  We're told it was decided the 17th.  We're waiting for it to

24  be typed up.

25           THE COURT:  That's my point.  To the extent that you

180611fishmanC              Conference

1  think the state Appellate Division could find that she

2  retaliated against you or discriminated against you, then

3  that's where your relief lies, not in federal court.

4          MR. FISHMAN:  I have to sue there for money?

5          THE COURT:  Yes.

6          MR. FISHMAN:  I thought compensatory damages is if

7  there's some determination made that she discriminated by a

8  court, you sue here or there.

9          THE COURT:  Hopefully, you learned that from a

10 different lawyer than somebody who thinks Memorial Day is a

11 major holiday where you give gifts to kids.

12         Anything else that either one of you wants to add to

13 what's in the papers?

14         MR. FISHMAN:  Yes.  The large print, these

15 half-centimeter orders, even your Honor's website it says you

16 need 12-point print, these handwritten things.  Judge Schauer

17 refused.  She said she'll give hand-written orders.  She denied

18 that.  That's part of the appeal.

19         THE COURT:  Why can't you get somebody to read to you

20 what the order says?  You have lawyers in these cases.  Why

21 can't they just read to you what the order says?

22         MR. FISHMAN:  Well, in some of the cases, they can't

23 read, your Honor.  Some of them have been in small margins or

24 handwritten on the bottom.

25         THE COURT:  Come on.  Judges do handwritten memo

180611fishmanC            Conference

1   endorsements all the time, all the time.  And sometimes their

2   handwriting is pretty and sometimes it's dreadful, but at the

3   end of the day, if you need help reading it, you can get

4   somebody to read it.

5          The reason they're handwritten is precisely because

6   they're not long, right?  So, nobody's handwriting-out a

7   20-page opinion or order.  Those are typed out.  But I get

8   about 6 to 12 inches' worth of mail every couple of days, and

9   at the bottom, I will note "application granted," "application

10  denied," "I'm going to ask the other side to respond."  And

11  it's not me, I'm not smart enough to be creative, that's what

12  every judge does, because that's the only way to move the

13  docket.

14         You got somebody -- you have any number of people, you

15  have lawyers representing you who read these things all the

16  time.  They can tell you if it says "granted" or "denied" or

17  what it is that's being required typically of the lawyers, by

18  the way, right?

19         So, why can't that be a solution?

20         MR. FISHMAN:  Well, the lawyers, again, appointed in

21  this particular case, they said they aren't appointed, an ADA

22  advocate --

23         THE COURT:  It's not a question of that.  If you want

24  to know what order says, the lawyer should tell you what the

25  order says.

180611fishmanC              Conference

1           MR. FISHMAN:  They say order a transcript.

2           THE COURT:  No, come on.  It's not a transcript.

3    There's no transcript of an order.

4           If a judge memo-endorses a letter, that becomes a part

5    of the docket.  There's no transcript of the memo endorsement.

6           MR. FISHMAN:  With all due respect, your Honor, the

7    reason the appeal was held up, the last one from Judge Schauer,

8    she so ordered the transcript, and I had to pay for it.

9           The one issue I want to address, again, is the

10   grievance procedure.  We wouldn't even be here if there was a

11   grievance procedure with some experienced ADA liaison, which is

12   required at the federal level, which the court in New York

13   seems to be exempt, where they handle the procedure, you file a

14   complaint, you've got to respond in 30 days.

15          THE COURT:  I've heard you on that point.

16          MR. FISHMAN:  That's my biggest issue.  I wouldn't be

17   here if I had that, because the point is, the powers that be

18   would have already resolved it.

19          THE COURT:  Do you want to address that point,

20   Ms. Evans?

21          MS. EVANS:  There is a process in place if it's on the

22   administrative end, your Honor, as I represented earlier.

23          THE COURT:  Okay.  All right.

24          So, as I said, Mr. Fishman is here on a motion for a

25   preliminary injunction, and he is seeking an order, I think,

180611fishmanC            Conference

1   that would require the Office of Court Administration, because

2   that's really the only entity that is sued here, for the New

3   York State Courts, to provide him with reasonable

4   accommodations for his disabilities, which are undeniably true,

5   including a qualified note taker, an aide for the court program

6   of visitation, and large-print court orders.  Mr. Fishman also

7   seeks a preliminary injunction that would order the Office of

8   Court Administration not to jail him again for making

9   disability accommodation requests and/or communicating to the

10  state entity about disability accommodations.

11         As I said, Mr. Fishman does suffer from a number of

12  very serious syndromes and conditions, including traumatic

13  brain injury, post-concussion syndrome, sleep apnea, and a few

14  others, one is called -- the acronym is TMJ.  And there are a

15  number of different instances in which Mr. Fishman says that

16  his ADA rights have been violated by the state Family Court;

17  for example, to bring a note taker, permission to tape or video

18  record proceedings, to refuse to issue large-print orders or

19  orders that are not handwritten in small print, as well as

20  permission to present testimony of experts regarding his

21  disability, and then child visitation at his house while he was

22  recuperating from surgery.

23         Back in January of 2017, as we've talked about,

24  Judge Schauer had granted plaintiff's request for an

25  adjournment and for permission to wear sunglasses, as well as

180611fishmanC          Conference

his request to bring in an ADA advocate to court appearances;
however, the judge denied the request for the accommodation on
behalf of one of Mr. Fishman's children on the ground that he
lacked standing.  She denied a request for visitation during
recuperation from surgery, which, in the Court's view, sought
judicial determination of legal rights in the guise of an
accommodation request, and also denied the permission to have
somebody bring a recording device during court proceedings, and
also to bring a note taker on the theory that Mr. Fishman could
order court transcripts.

        It should be noted that Judge Schauer noted that
plaintiff had appeared approximately 14 times between January
of 2015 and September 2016, which postdates the cause of much
of Mr. Fishman's disabilities, without any difficulties, and
also noted that Mr. Fishman had, in fact, been ordering court
transcripts.

        Now, on June 21st of 2017, Judge Schauer denied
plaintiff's request that all Family Court orders be typed in
12-point font, specifically noting that sometimes she did
handwritten orders, which were necessary to provide immediate
relief to the parties.

        On March 30th of this year, the Family Court rejected
plaintiff's request that the Family Court provide a, quote,
"ADA aide" to assist during child visitations, but did allow
Mr. Fishman to provide one at his own expense pending approval

180611fishmanC              Conference

1   from the mother's and children's respective attorneys.

2        Also, on April 11th of this year, Magistrate Jordan

3   denied plaintiff's request that the Family Court provide a note

4   taker, but allowed a neutral note taker to be brought at his

5   own expense.  And this was something that we talked about in

6   terms of avoiding the note taker being a potential witness.

7        Now, I think the other salient facts that are worth

8   noting here is the point here that's been made by Ms. Evans,

9   that the OCA piece on this deals with the administrative side.

10  So, for example, back in September of 2016, Nancy Mangold, who

11  is the Director of the OCA Division of Court Services and

12  District Executive in the Ninth Judicial District, explained to

13  Mr. Fishman in a letter that she had reviewed the paperwork,

14  she reviewed OCA's practice and policy, and, specifically, that

15  policy provides that if somebody has a pending case before a

16  judicial officer and the party makes an ADA accommodation

17  request, the request is to be made to the judicial officer and

18  not to the Office of Court Accommodation.

19       And to the extent that a judicial officer denies an

20  accommodation request, it is a judicial determination and not

21  an administrative one that is subject to judicial rather than

22  administrative review.  So, whatever the rule is in California

23  or New Jersey or Nebraska, that's how OCA has explained things

24  work in New York state.  So, what that means is that the OCA is

25  really not in a position to review judicial rulings of judges

180611fishmanC            Conference

1   in terms of how it is that they decide on everything from

2   accommodations that are made in connection with visitation

3   requests, to accommodations as to how a judge runs his or her

4   courtroom.  And this was echoed in another letter from

5   James Garfein, who is counsel to the administrative judge who

6   wrote to Mr. Fishman that OCA was unable to consider his

7   application for certain accommodations because they had been

8   ruled on by Judge Schauer in the context of an ongoing Family

9   Court proceeding, and her determinations were subject to

10  judicial review, not administrative review.

11          And you all will correct me if I'm wrong about this,

12  but after the January 2017 order, there was an appeal to the

13  Appellate Division which issued a decision and order dismissing

14  Mr. Fishman's appeal because, quote, "No appeal lies as of

15  right from a nondispositional order in a proceeding pursuant to

16  Family Court Act Article 8, and leave to appeal has not been

17  granted."

18          But I gather that there's a separate appeal that's

19  still pending, so everybody is waiting for a decision.  Right,

20  Mr. Fishman, you said it relates back to the January 2017

21  order?  That's what you had said earlier, so I just want to

22  make sure that's correct.

23          MR. FISHMAN:  We're hoping, your Honor.

24          THE COURT:  Okay.

25          MR. FISHMAN:  There have been five denials of

180611fishmanC            Conference

1   interim --

2         THE COURT:  Right, but you're waiting for another

3   decision --

4         MR. FISHMAN:  We're hoping.

5         THE COURT:  -- as to the January 25, 2017 order by

6   Judge Schauer?

7         MR. FISHMAN:  Correct.  We're hoping.

8         THE COURT:  In the meantime, Judge Schauer apparently

9   has reserved decision on the ultimate merits of the proceedings

10  before her, and her decision is also pending, but we don't know

11  when that decision is going to be issued.

12        MR. FISHMAN:  Correct.  We were told by OCA in writing

13  actually the 9th, there was an exec that we'd have it by the

14  end of May.  And as recently as Thursday, we were told by Nancy

15  Barry that it's in Judge Davidson's hand, that Judge Schauer

16  has been telling everyone she would issue orders, issue orders,

17  and we have not received one for months now.

18        THE COURT:  All right.

19        And then there's other correspondence in the record

20  about the distinction here between administrative and the sort

21  of legal determinations of certain accommodation requests.

22        I think Ms. Evans has very helpfully given some

23  examples of where the OCA might get involved on some matters,

24  but other matters that are dealt with by judges stay within the

25  judicial system.

180611fishmanC          Conference

1        For example, on March 13th of this year,

2   Ms. Aprilanne Agostino, Clerk of the Court for the Appellate

3   Division, the Second Judicial Department, responded to a

4   memorandum from Mr. Fishman and noted that he had been asking

5   for some determinations made in Family Court regarding certain

6   accommodations.  And she specifically noted that pending before

7   the Second Department was an appeal taken on his behalf of a

8   Family Court order dated back in June 27 of 2017.  And of

9   course, one of the issues that had been raised in connection

10  with that appeal was the request for accommodation.

11       So, it sounds like that's the one you're talking

12  about, Mr. Fishman.

13       MR. FISHMAN:  That was dismissed, your Honor.

14       THE COURT:  That was dismissed after you submitted

15  your papers?

16       MR. FISHMAN:  Correct, Judge.

17       THE COURT:  Okay.

18       MR. FISHMAN:  They refused permission to appeal that

19  issue.  We're hoping, and, again, there's no guarantee -- as

20  you said, judges have enormous discretion -- we're hoping with

21  the appeal of the incarceration, that they will issue a

22  decision on the ADA, but they could defer it, you know?  So,

23  they have denied five times permission to file the grievance

24  and cited that the law and Article 6 and 8 doesn't allow

25  interim appeals.  So, as long as Judge Schauer keeps this case

180611fishmanC          Conference

1   open, which it has now been open four years – her average case

2   is nine months – over four years, as retaliation for me, okay,

3   there is no method of having a grievance; whereas, if I was in

4   [inaudible] court or --

5           THE COURT:  You've made that point, and I don't think

6   we need to echo it.  I understand the point.

7           So then what happened in the meantime, Judge Schauer

8   issued an interim decision order on March 30th of this year,

9   which noted that there was an order of custody and visitation

10  going back to May of 2014, which the mother had petitioned to

11  modify.

12          Judge Schauer had held hearings back in August and

13  September of 2017.  There were written submissions filed in

14  December of 2017.  And that's the decision everybody is waiting

15  to get back from Judge Schauer.

16          And Judge Schauer has noted about Mr. Fishman's

17  repeated demands in what Judge Schauer describes as under the

18  guise of ADA accommodations for a variety of assorted relief,

19  including unsupervised access to the children, which the Court

20  had denied.  And the Court also noted that to the extent that

21  Mr. Fishman has asserted that he does not need supervision by a

22  professional supervisor and the Court should give him an aide

23  to assist with the visits because of his disabilities, the

24  Court rejected that, because that, in the Court's view, was not

25  the type of ADA accommodation; rather, it went to the merits of

180611fishmanC          Conference

1   the requested relief.

2          Also, Judge Schauer noted that if Mr. Fishman chooses

3   to secure an aide to be present during the visits to assist him

4   with the care of the children prior to the visit taking place,

5   he has to provide the name and the CV or résumé and contact

6   information of that aide to his attorney, Ian Spier, who then

7   has to provide the information to the mother's attorney and the

8   attorney for the children.

9          And then we get to the April 11th proceeding, which

10  I think is the transcript you had shown me, Mr. Fishman, that

11  the Court there rejected the idea of having a note taker who

12  was a potential witness in the proceedings; and that, to the

13  extent that delays were being sought because of the issue with

14  the note taker, that's when the Court threatened to refer the

15  case over to another judge, who could, I guess, back up a

16  contempt determination with jail.

17         Now, in terms of the standard of review, a preliminary

18  injunction is an extraordinary remedy that's never awarded as

19  of right, said the U.S. Supreme Court in *Winter v. Natural*

20  *Resources Defense Council, Inc.*, 555 U.S. 7, 24.  Thus, the

21  party seeking preliminary injunction must ordinarily establish,

22  first, irreparable harm; and second, either (a) a likelihood of

23  success on the merits or (b) sufficiently serious questions

24  going to the merits of the claims to make them fair ground for

25  litigation; plus a balance of the hardships tipping decidedly

180611fishmanC            Conference

1    in favor of the moving party; and that a preliminary injunction

2    is in the public interest.  That's all from *New York ex rel. v.*

3    *Schneideman v. Actavis PLC,* 787 F.3d 638, 650.

4         However, a heightened standard is appropriate where

5    the injunction is mandatory or the injunction will provide the

6    movant with substantially all the relief that he seeks, and the

7    relief can't be undone, even if the defendant prevails at the

8    trial on the merits.  And the Court finds that the heightened

9    standard applies here because Mr. Fishman is requesting a

10   mandatory injunction seeking to alter, rather than maintain,

11   the status quo.  That's a key component of that analysis as

12   noted in *New York Civil Liberties Union v. New York City*

13   *Transit Authority*, 684 F.3d 286, 294.

14        So, a mandatory injunction is to be granted only upon

15   a, quote, "Clear showing that the moving party is entitled to

16   the relief requested or where extreme or very serious damage

17   will result from a denial of preliminary relief."  That's from

18   *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d

19   27, 34 (2d Cir. 1995).  Although, the Court notes that I think

20   even if the lesser rigorous standard applied, the result here

21   would be the same.

22        Now applying the test, first is the likelihood of

23   success on the merits, and there are very serious questions

24   here because of something called the *Rooker-Feldman* doctrine.

25   And under this doctrine, federal district courts lack

180611fishmanC          Conference

jurisdiction over cases that essentially amount to appeals of

state court judgments.  That's a quote from *Vossbrinck v.*

*Accredited Home Lenders, Inc.*, 773 F.3d 423, 426.  And this is

because Congress' grant of federal jurisdiction to review final

state court judgments pursuant to 28 U.S.C. Section 1257 "vests

authority to review a state court's judgment solely" in the

hands of the United States Supreme Court.  And that's noted in

*Exxon Mobil Corp. v. Saudi Basic Industry Corp.*, 544 U.S. 280,

292.

Now in *Exxon Mobil*, the Supreme Court did emphasize

that the *Rooker-Feldman* doctrine is narrow and only applies to

federal lawsuits brought by, quote, "State-court losers

complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and

inviting district court review and rejection of those

judgments."  That's at page 284.

So, after *Exxon Mobil*, the Second Circuit reexamined

*Rooker-Feldman* and laid out four requirements that must be met

before the doctrine would apply:  First, the federal court

plaintiff must have lost in state court; second, the plaintiff

must complain of injuries caused by a state-court judgment;

third, the plaintiff must invite district court review and

rejection of that judgment; and fourth, the state-court

judgment must have been rendered before the district court

proceedings commenced.  And that's all noted from *Green*, a

180611fishmanC                    Conference

1   Second Circuit case decision, *Green v. Mattingly*, 585 F.3d 97,

2   101, quoting from the original decision that set out these four

3   factors, which is *Hoblock v. Albany County Board of Elections*,

4   422 F.3d 77, 85.  The first and fourth requirements have been

5   deemed or termed procedural, while the second and third are

6   called substantive.

7           *Rooker-Feldman* does not bar independent claims, even

8   if those claims deny a legal conclusion that a state court has

9   reached in a case to which the plaintiff was a party, and

10  that's from *Exxon* at 293.

11          So, the applicability of *Rooker-Feldman* turns not on a

12  similarity between the party's state-court and federal-court

13  claims, but, rather, on the causal relationship between the

14  state-court judgment and the injury of which the party

15  complains in federal court.  That distinction was made clear in

16  the Second Circuit's decision in *McKithen v. Brown*, 481 F.3d

17  89, 97-98.  But on the other hand, raising, in federal court, a

18  legal theory that was not raised in state court does not

19  insulate a federal plaintiff's suit from the *Rooker-Feldman*

20  doctrine as noted in *Hoblock* at page 86.  Rather,

21  *Rooker-Feldman* bars a federal claim, whether or not raised in

22  state court, that asserts injury based on a state-court

23  judgment and seeks review and reversal of that judgment, and

24  that's because such a claim is inextricably intertwined with a

25  state judgment.  And that's also from *Hoblock* at 86, 87.

180611fishmanC                Conference

1      So, to the extent the injunction seeks to, in effect,

2  overturn the January 25, March 30, and April 11 Family Court

3  orders, and also the June 21, 2017 oral decision regarding the

4  accommodation requests, then that's essentially, in this

5  Court's view, an appeal of the state court's decision, and that

6  runs headlong into *Rooker-Feldman*.

7      So, to begin, in terms of applying the four factors,

8  Mr. Fishman obviously lost those requests in state court, those

9  applications were rejected, which makes him the loser in the

10  state court.  And I'm not going to repeat what I said earlier

11  about what the state courts had ruled and rejected on

12  January 25, 2017, June 21 of 2017, March 30 of 2018, and

13  April 11, 2018.

14      Secondly, Mr. Fishman clearly is complaining of

15  injuries caused by the judgments themselves.  The gravamen of

16  his complaint, really the heart of his complaint, is that the

17  Family Court's denial of his request of ADA accommodations

18  violated his rights under the ADA because they didn't account

19  or accommodate his disabilities and denied him meaningful

20  access to the courts, which were directly caused, Mr. Fishman

21  says, by the Family Court decisions.

22      Third, I think there's no question that Mr. Fishman is

23  inviting this Court to review and reject those state court

24  judgments.  And in particular, he has requested that this Court

25  order the Family Court to provide the requested accommodations

180611fishmanC                Conference

1   that were denied by the Family Court on the

2   previously-mentioned dates, and that's exactly what he's

3   seeking.

4           And the fourth factor, the state-court judgment at

5   issue here had been rendered before the district court

6   proceeding commenced; that's clear because, to the extent the

7   complaint was filed in this case on January 1st, the request

8   for a preliminary injunction wasn't filed until April 24th,

9   which postdates all four of the relevant dates of the relevant

10  and challenged state-court orders.  Therefore, the Court finds

11  that Mr. Fishman's request is undercut by *Rooker-Feldman*, which

12  is another way of saying that he does not establish a

13  likelihood of success on the merits.

14          And since we're all, I guess, citing out-of-state

15  authority, I'll note one case called *Makeen v. Colorado*, which

16  is reported at 2016 WL 8470186, at *8, which is a District of

17  Colorado decision, which dealt with a very similar request for

18  accommodations in state court, and the federal court there

19  rejected it on *Rooker-Feldman* grounds.

20          Now, to the extent that Mr. Fishman seeks an

21  injunction over ongoing proceedings regarding the child custody

22  issues, then the Court would be inclined to abstain under

23  *Younger v. Harris*, 401 U.S. 37.

24          Under *Younger*, federal courts should generally refrain

25  from enjoining or otherwise interfering in ongoing state

180611fishmanC              Conference

1   proceedings, noted the Second Circuit in *Spargo v. New York*

2   *State Commission on Judicial Conduct*, 351 F.3d 65, 74.

3        Now, it's true that abstention generally is disfavored

4   and federal courts have a virtually unflagging obligation to

5   exercise their jurisdiction, said the Second Circuit in *Niagara*

6   *Mohawk Power Corp. v. Hudson River-Black River Regulating*

7   *District*, 673 F.3d 84, 100.

8        And also, unlike *Rooker-Feldman*, *Younger* is more of a

9   prudential limitation grounded in considerations of comity,

10  rather than a jurisdictional bar derived from Article III of

11  the Constitution.  The Supreme Court has, nonetheless,

12  clarified that a district court should abstain from exercising

13  jurisdiction in three exceptional circumstances involving

14  ongoing state criminal proceedings, certain civil enforcement

15  proceedings, and civil proceedings involving certain orders

16  uniquely in furtherance of a state court's ability to perform

17  its judicial function.  That was discussed in the Second

18  Circuit's decision in *Falco v. Justices of the Matrimonial*

19  *Parts of Supreme Court of Suffolk County*, 805 F.3d 425, 427,

20  quoting the Supreme Court's decision in *Sprint Communications*

21  *v. Jacobs*, 134 S. Ct. 584, 591.  And these three exceptions

22  really define the scope of the *Younger* abstention doctrine.

23       Now, there are some other factors to be considered,

24  including whether the ongoing state judicial proceedings

25  provide an adequate opportunity to raise federal challenges.

180611fishmanC              Conference

1          So, the *Younger* abstention is required when three

2     conditions are met:  First, there's an ongoing state

3     proceeding; second, an important state interest is implicated

4     in the proceeding; and third, the state proceeding affords a

5     federal plaintiff an adequate opportunity for judicial review.

6     That's from *Diamond "D" Construction Corp. v. McGowan*, 282

7     F.3d 191, 198.  Here, those three criteria are met.

8          First, the state court proceedings regarding the

9     appropriate child custody arrangement are still ongoing.

10    Everybody is waiting for Judge Schauer's decision, and there

11    are related proceedings going on before Magistrate Jordan.

12    Moreover, child custody disputes are typically reserved for

13    state courts.  So, the state courts or a state's interest in

14    general is very high.  Among other cases noting this is *Puletti*

15    *v. Patel*, 2006 WL 2010809, at *4 (E.D.N.Y. July 14, 2006),

16    where the court there noted, quote, "The whole subject of the

17    domestic relations of parent and child belongs to the laws of

18    the state and not to the laws of the United States."  Thus,

19    this case undoubtedly touches on important state interests.

20          And finally, Mr. Fishman would have an adequate

21    opportunity for judicial review in state court.  While his

22    interim appeals thus far have not proven successful, he still

23    has been able to file those appeals.  And it's clear that even

24    if the state Appellate Court's view has requested relief from

25    the lower court decisions as awaiting a final judgment, that

180611fishmanC                Conference

1    final judgment is apparently imminent.

2         Now, beyond all of this, there is the question of

3    irreparable harm, and higher courts have said that this, in

4    fact, might be the most important prerequisite to getting a

5    preliminary injunction.

6         To satisfy this requirement, plaintiff has to

7    demonstrate that absent a preliminary injunction, the plaintiff

8    will suffer injury that is neither remote nor speculative, but

9    actual and imminent and one that cannot be remedied if the

10   Court waits until the trial to resolve the harm; and that

11   typically involves, for example, a situation where a monetary

12   award cannot adequately compensate a plaintiff for the harms

13   the plaintiff allegedly suffered.

14        Here, the request for the note taker does not satisfy

15   this requirement.  At least Magistrate Jordan is willing to let

16   Mr. Fishman bring a note taker, just as long as the note taker

17   is not a potential witness.  And moreover, Judge Schauer said

18   that while Mr. Fishman couldn't bring somebody to tape record

19   or even take notes, that he could have ordered the transcript,

20   and there's been nothing to suggest -- in fact, it's noted that

21   he has done that -- and so there's nothing to suggest that he

22   can't do that.

23        And to the extent that the Court understands that

24   transcripts aren't cheap, to the extent that there is a

25   monetary recovery to be had here, that undercuts any theory

180611fishmanC          Conference

1    that the harm here is irreparable.

2          Also, the request for an ADA aide does not satisfy

3    this requirement.  Again, the Family Court permitted him to use

4    an ADA aide as long as the individual met with approval and as

5    long as Mr. Fishman was willing to pay for the aide.

6          The 12-point font doesn't satisfy this requirement.

7    The Family Court noted that most of its orders were in 12-point

8    font, and, except for occasional handwritten orders, which are

9    done to provide immediate relief, these orders are read on the

10   record according to Family Court, thus available by way of the

11   transcripts.  Plus, Mr. Fishman has been represented by counsel

12   in these proceedings, and they can read the orders to him.

13         The allegations regarding the contempt, the potential

14   jail time certainly raise imminent concerns but fail on the

15   merits because, as I said, the issue is not so much the

16   accommodation; the issue is making sure that any note taker is

17   somebody who is not a potential witness, and there, the Court

18   is acting within its authority to protect the integrity of any

19   hearings, which, of course, they want to have witnesses who are

20   untainted by whatever they have learned in a courtroom.

21         The balance of hardships factor:  Because plaintiff

22   hasn't gotten past these first two, I think it really doesn't

23   change the analysis.  So while it may cut slightly in favor of

24   plaintiff, it's more than outweighed by plaintiff's failure to

25   satisfy the other requirements.

180611fishmanC                    Conference

1          The public interest I think is a wash.  There

2   certainly is always a public interest in accommodating

3   individuals dealing with disabilities, but also, there is a

4   public interest in making sure that the Family Court

5   proceedings are done in ways that are fair to all parties.  And

6   in any event, as I said, even if that cut in favor of

7   plaintiff, it would not be enough to overcome plaintiff's

8   failure to satisfy the likelihood of success on the merits of

9   the irreparable harm criteria.

10          So, for those reasons, the request for a preliminary

11  injunction is denied without prejudice to see what happens

12  going forward in the state court.

13          Is there anything else?

14          MS. EVANS:  Judge, at an earlier letter, dated

15  April 23rd, we requested a pre-motion conference.  So, we'd

16  like to either resolve that today or --

17          THE COURT:  I think what we should do is just set a

18  schedule.

19          MS. EVANS:  Okay.

20          THE COURT:  Before I do that, I want to give --

21  Mr. Fishman, do you want to amend your complaint at all?

22          MR. FISHMAN:  Yes, your Honor.

23          THE COURT:  So, when do you think you can amend your

24  complaint by?

25          MR. FISHMAN:  If I could have about 30 days.

180611fishmanC                Conference

1          THE COURT:  Sure.

2          MR. FISHMAN:  I'd appreciate that.

3          THE COURT:  No problem.  Let's say that your amended

4  complaint will be due July 9.

5          Is that good?

6          MR. FISHMAN:  Yes, your Honor.  Thank you.

7          THE COURT:  And then within your time to answer,

8  Ms. Evans, you'll either answer or you can file another

9  pre-motion letter suggesting a briefing schedule.

10          MS. EVANS:  Yes, your Honor.

11          THE COURT:  And either I'll bring you all in again or

12  I'll just set a briefing schedule, okay?

13          MS. EVANS:  Thank you, your Honor.

14          THE COURT:  Now, as I said, if there are things that

15  happen in state court that alter the factual landscape,

16  Mr. Fishman, I'm sure you'll either include those in your

17  amended complaint or otherwise let us know in writing, okay?

18          MR. FISHMAN:  Yes.

19          THE COURT:  Anything else?

20          MR. FISHMAN:  One question for the Court, since we are

21  on the calendar with Judge Schauer for June 21st for a

22  hearing, am I allowed to bring a note taker, or is this Court

23  declining to get involved --

24          THE COURT:  I'm not requiring that at all.

25          MR. FISHMAN:  Okay.  Thank you.

180611fishmanC              Conference

1          THE COURT:  Then we are adjourned.  Thank you.

2          MS. EVANS:  Thank you.

3          MR. FISHMAN:  Thank you.

4                    - - -

5    Certified to be a true and correct

6    transcript of the stenographic record

7    to the best of my ability.

8    _____

9    U.S. District Court
     Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25