Marc Fishman
3200 Netherland Avenue
Apartment G
Bronx, NY 10463
(914) 837 – 3209
Facsimile (347) 843 - 6894



Via Hand Delivery and Facsimile

(914) 390-4152

March 4, 2020

Honorable Judge Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, NY 10601-4150



Re: 7-18-CV-00282-KMK Civil Rights Case Fishman
vs. "State" Office
     Of Court Administration New York Courts
Request for Emergency
     Injunctive Relief against state court office of
administration executive Nancy
     Barry, court administrator Michelle D'ambrosio
and Court ada liaison Dan
     Weitz to close New Rochelle Family Court For
repeated failure to comply
     With the American with disabilities ACT and
section 504 of the Rehab act
     Of 1973/4

Dear Honorable Judge Karas:

I am writing to notify the court that the repeated
disability discrimination, failure to accommodate
disabilities and retaliation continues unabated from
the State Family court and their employees and

administrators against the qualified ADA disabled.

Without an ada title two compliant grievance procedure the office of court administration and its executives and administrators continue to operate court facilities at New Rochelle that fail to even partially comply with the American with disabilities act.

Despite repeated requests to remove my ongoing continuing family court proceedings from the magistrate in New Rochelle for failure to have an ada compliant courthouse with any parking, the OCA refuses to move me to an ada compliant family court in White Plains for support proceedings.

New York court administration is well aware from the 6/22/2010 report it prepared in exhibit "A," that its new Rochelle and Yonkers courthouses do not fully comply with the ADA.

In my specific case the courtroom where  Magistrate Jordan operates in new Rochelle is less than 350 square feet and less than 600 ft where Judge schauer operated from 12/31/14 through 2016 in New Rochelle.  Nether courtroom  can fit the latest CART real time transcription service or adequate amount of guests. Per exhibit "B" New York family court cases are open to the public per the oca pamphlet entitled access to Ny Family courts.  However since guests or neutral observers  cannot fit in the new Rochelle courtrooms, guests from the public ARE NEVER ALLOWED IN THE 350 SQ FOOT COURTROOM IN NEW ROCHELLE or the 600 main court room. The wiring does not support video conferencing for interpreters in either court room.  The smaller courtroom rooms has no windows or natural light. The room is so small that recordings in it are inaudible for the most part.

I tried to comply with the office of court administration/administrative judges instructions to order my own transcripts as their ada accommodation from the family court to have meaningful

communication for my hearing, speech, traumatic brain injury, obstructive sleep apnea and peripheral neuropathy qualified ada disabilities memory/speech and hearing disabilities.  However New York state suspended my transcriber Alan Kachalsky in an act of retaliation and associative disability discrimination(see exhibit "C" after the state court denied any note taker access for three years from 2015 to 2018 per new Rochelle court order(see denied ada 1/25/17 order stating no note taker whatsoever allowed in the courtroom in denial of my ada request.)  The high state appellate court second dept ruled I was not entitled to a note taker of any sort for my disabilities (see exhibit "D" in June 2018.)  I tried to appeal the order to the court of appeals, New York's highest court FOR DENIAL OF ANY NOTETAKER TO HELP ME WITH MY TRAUMATIC BRAIN INJURY/POST CONCUSSION SYNDROME, but the appeal was rejected as not appealable (see attached exhibit "E".) The OCA ruled I could not use Alan's transcripts and would have to order new ones.

The courtrooms are very very noisy in new Rochelle family and inaudible per Office of court administrations because there are people waiting in tight hallways in the courthouse within 8 feet of the courtroom entrances and limited seating in the facility.  There is no dedicated parking for litigants at all and no garages to park cars within a one block radius like in white plains court.

Office of court administration administrator Cindy Hurd stated in exhibit "C" that the transcripts were not compliant because they were so inaudible and retaliated against Alan Kachalsky by suspending him.  Alan was attempting to help me have meaningful communication with the courthouse by performing the transcribing.  Alan has performed transcribing for over 20 years. Alan as well as other court approved transcribers (see exhibit "F" have repeatedly informed me and the court administration that new Rochelle recordings in family court are too noisy and disruptive to allow basic effective meaningful communication. I

attach the for the court record as proof of the inaudible sound recordings the November 2016 attempted transcript of my new Rochelle proceeding as exhibit "G". There are over 41 inaudible words in it for a short 7 page hearing. In the hearing I was trying to communicate that my child support payment from 2014 was not credited by child support, but failed to due to poor communication. This resulted in my credit being ruined and my payment not to be applied for another 3 years.

I submit to the court that oca did not have problems with Alan Kachalsky's transcripts until I commenced this disability discrimination lawsuit 27 months ago. OCA simply wanted to blame Alan for very very noisy defective old style recordings in family court that were sent to him that he tried to interpret.

If Alan Kachalsky, an experienced transcriber cannot interpret the words at the New Rochelle hearing for the hearing/memory impaired disabled like me as an experienced transcriber, then no layman can in court. No other New Rochelle OCA approved transcriber was suspended by oca as proof this was retaliation against Alan for me hiring him. Failure to have court rooms that afford meaningful communication and access violated the American with disabilities act. OCA admits this courthouse fails to comply with the ada in the attached 6/22/2010 report, but wants to blame one small single proprietor transcriber for oca's own noncompliant communications.

OCA has repeatedly stated it would close the New Rochelle courthouse over the past 10 years but has failed to do so. New construction of a new courthouse has been delayed unreasonably.

No disabled or non-disabled person should have to have their case heard in a defective, noncompliant with the ada, inaudible, cramped and lacking basic sized human facilities family courthouse in New Rochelle.

There is ample extra space in White Plains main family court and civil court to hear family court cases from New Rochelle.  There is only one judge and one magistrate in new Rochelle so it would not be an undue burden to close the courthouse.  New Rochelle hears the fewest cases of the three courthouses.  All other counties have one family courthouse while Westchester has three Family courthouses.

I submit that this court can enter/order an emergency injunctive relief order against the administrators of family courthouse and New York State courts to cease and desist operating a family court in new Rochelle on north avenue in the existing facility until an acceptable ada compliant New Rochelle facility is built and reviewed by the usdoj/federal government ada unit to insure compliance.  This would not be an undue burden as the rights of all disabled and nondisabled families to a courthouse that meets minimum oca and ada standards benefits all families and citizens that use state family court.

As a matter of  fact the closing of the New Rochelle courthouse will actually save taxpayer money as there are already more than enough court security officers and holding cells in Westchester family/supreme court in white plains.  There is already extra available parking next to the white plains courthouse with the closing of sears next to the courthouse.  So hundreds of ada complaint garage spaces are already available with an elevator next to the courthouse. The oca would save on utilities, rent, insurance and maintenance of an outdated new Rochelle family court facility.  Plus the family court could save on administrative staff as the white plains family court is half empty most days and the county clerk has extra staff to print out divorce orders/judgments that are unavailable in New Rochelle anyway.  New Rochelle residents in the residential neighborhood would be happy as all available street parking is now needed for a court.  these homeowners could get parking for their neighbors and guests on the street that is unavailable now due to court overflow parking needs.

There is no  Ex parte Younger or Rooker Feldman exemption for sovereign immunity against state officers acting in their administrative capacity in access to a public building or courtroom.  Congress waived sovereign immunity for access to the disabled to state courthouses in Tennessee versus lane 541 us 509 2004 as a waiver under title two of the ada.  In addition the eleventh circuit United States Court of Appeals in 18-12786 dc docket 1:18 cv2132-UU in National Assoc of the deaf/Eddie I Sierra v. State of Florida and Bill Gavano as president of the Florida senate recently ruled on 1/3/2020, that "the Pennhurst exception to Ex parte Young does not bar Plaintiffs title two claims for declaratory and injunctive relief against certain state officials" (see Garret 531 U.S. at 374 n 9. 121 S ct. at 968n 9.)  The ada standards of compliance can be enforced by private individuals in Federal; Court actions for Injunctive relief under exparte young per (Green  V. Mansour 474 US 64, 68, 106 S ct. 423,426 (1985).)

Seeking to also file for declaratory judgement that New York office of court administration and its administrators discriminated against me for my disabilities and retaliated against me for filing federal suit against them and family court staff retaliated against me for starting the federal lawsuit in your court by suspending my transcriber and not other transcribers with inaudible words from new Rochelle family courts.  Seeking declaratory judgement to  have oca reimburse me for all the transcripts that are inaudible and order new hearings where the facilities enable effective communications due to the willful deliberate disability discrimination and retaliation.

This Federal court already stated that Rooker Feldman  exclusion does not apply in this case.  Congress specifically allowed the piercing of state immunity against officers and the state itself for access to the state court and court programs (see Tennessee versus Lane. 504 US 509 2004 and Foley v. City of Lafayette, 359 F. 3d 925, 928 7ᵗʰ cir 2004.)

The Younger exemption does not apply because state court officers and administrators can be held liable and granted injunctive relief against for enforcement of title two of the ada and section 504 of the rehabilitation act in their official capacity.  Under case Prakal v. Indiana 100 F. supp. 3d 661 (2015), administrators and judicial officers are liable under ADA for violations of title two of the ADA in access to state courts.

Under Foley, 359 F. 3d at 928 I have shown I have been discriminated against by establishing, 1. I was a protected person under title two of the ADA, that 2. I was subject to discrimination by the state/city entity and 3. the discrimination was by reason of disability.

Administrators D'ambrosio, Barry and Weitz violated 28 CFR 35.160. All these administrators acted with deliberate intent to deny me the accommodations of auxiliary aides and services for meaningful access to the courts and meaningful communications by denying the note taker from 2015 and 2018 access to the courtroom and by having me hold hearings in courts with inaudible rooms.  By denying a stenographer or note taker of mine access to New Rochelle State courts, these administrators acted with deliberate indifference by willfully denying the accommodations that could have easily been granted. This constitutes disability discrimination in  Duvall , 260 F. 3d at 1138-39; and  Barber, 562 F. 3d at 1229.  Thus there is no judicial umbrella protection for D'ambrosio , Weitz or Barry as they were acting as  administrators and are not protected by a judges immunity for their administrative tasks as court attorney, court printer, court executive, court ada liaison,  and or court scheduler( See Prakal v. Indiana case 4:12-cv-45-SEB-WGH.)Barry, D'ambrosio and Weitz administrators and NY State Courts could have easily operated  a courtroom that allowed note takers and closed captioning but decided to operate new Rochelle courts knowing they do not comply with the ADA..  Turning on CART technology in white plains or the new Yonkers courthouse would not have

interfered with any part of the Family court judge's judicial authority or operation in her courtroom. Keeping my magistrate support cases in New Rochelle violated my civil rights and prevented meaningful communication as the administrators knew this courtroom was inaudible to the public and even worse for those with hearing/memory disabilities like mine.    Federal court must send a strong message that failing to grant needed auxiliary aides in state court is a clear violation of ADA and the Rehabilitation act.

Under attorney general regulation 28 CFR 35.160, " A State entity shall take appropriate steps to ensure that communications with applicants, members of the public with disabilities are AS EFFECTIVE AS COMMUNICATIONS WITH OTHERS." Under 28 CFR 35.160 it states, " A state entity shall furnish appropriate auxiliary aids (including real-time computer-aided transcription services, open and closed captioning, including real time captioning and a note taker) and services where necessary to afford individuals with disabilities, including applicants, participants, and members of the public an equal opportunity to participate in and enjoy the benefits of a service, program, or activity of a state entity." (see page 10 of previously submitted enclosure entitled " Procedures for Implementing Reasonable Accommodation in Programs and Services for Individuals with Disabilities Dept of State New York State previously submitted to federal court.")

Numerous Studies show that closed captioned helps those with learning disabilities like traumatic brain injury and post concussion syndrome.  CART Real time transcripts and Closed captioning aide the disabled like me and assist to provide meaningful communication in the court room.  The Supreme Court mandated "Meaningful access and Communication" for the disabled in the decision in Tennessee versus Lane 504 US 509 in 2004.

No where has NEW YORK STATE OFFICE OF

COURT ADMINISTRATION shown that providing CART would be a hardship to them or effect the normal operation of the courtroom outside New Rochelle under 28 CFR 35.164. Auxiliary AIDS including CART and note takers must be provided to the hearing impaired with tinnitus and Occipital Neuralgia FOR PROGRAM ACCESSIBILITY PER ATTORNEY GENERAL MANADTATE UNDER 28 CFR 35.149-150. No where in New York State's papers does it dispute that I have a hearing disability called tinnitus and occipital neuralgia. My neurostimulator stimulation cord implant runs within inches of the ear and sometimes effects my hearing. The ringing in my ear from tinnitus affects my hearing and communication. Administrator Dan Weitz, Administrator Nancy Barry and Administrator Michelle D'ambrosio could have granted this request as the white plains and Yonkers court already has CART technology and cart operators. They simply chose not to and to willfully discriminate against me. The court even ignored by advocates at Disability Rights New York who wrote to court requesting CART. DRNY was never even responded to.

As the Federal Court is aware I have numerous qualified ADA disabilities including Tinnitus, Traumatic Brain Injury, Occipital Neuralgia, TMJ, Peripheral Neuropathy, Sever Obstructive Sleep apnea, Cubital Tunnel Syndrome and Post Concussion Syndrome. These "qualified disabilities" effect the major bodily functions of but not limited to hearing, learning, sleeping, remembering, eating, breathing, use of arm, organizing and writing. The courts need to reasonably accommodate, and not discriminate.

Please grant my request for injunctive relief and declaratory judgement to benefit all citizens and court users of New York Westchester Family Courts.

Thank you for your assistance.


Very Truly Yours,

Marc Fishman
Qualified Ada Disabled Litigant, Pro se

Enclosures

C:  USDOJ, Disability Rights Section
     Kathy Davidson, Chief Administrative Court
Supervising Judge 9th district.
     Donna Drumm, Ada Advocate
     M. Fliedner, DRNY
     Judge Egetto, Chief Administrative Judge Family
Court

*Exhibit "A"*

## AN ASSESSMENT OF THE

# WESTCHESTER COUNTY FAMILY COURT FACILITIES IN YONKERS AND NEW ROCHELLE



*See pge seven and eight*

*New Rochelle Court Acoustics are poor*

*Conclusion: Family Court New Rochelle not suitable for conducting Family Ct Business*

**JUNE 22, 2010**

**OFFICE OF COURT FACILITIES PLANNING**

**NEW YORK STATE OFFICE OF COURT ADMINISTRATION**

# Introduction

**The Westchester County Family Court has facilities in three cities:** White Plains, Yonkers and New Rochelle. Each of these courts is a high-volume court with a large workload and thousands of visitors each year. The filings for each court in 2009 were:

White Plains . . . . . 13,881
Yonkers. . . . . . . . 11,115
New Rochelle . . . . . 6,871
Total . . . . . . . . . 31,867

The Family Court in White Plains is housed in a state-of-the art facility, which opened in 2005, and is one of the best-designed Family Court courthouses in the State. In sharp contrast, the Yonkers and New Rochelle facilities are among the worst in the State.

The Yonkers and New Rochelle Family Courts are both located in leased space in office buildings. The Yonkers Family Court occupies approximately 14,000 square feet at 53 South Broadway, where the annual rent is approximately $640,000. The New Rochelle Family Court occupies approximately 11,000 square feet at 420 North Avenue, at an annual rent of approximately $364,000.[1]

The deficiencies at the Yonkers and New Rochelle facilities include:

- the absence of even a minimal level of dignity appropriate to a court facility
- inadequate means of entrance and egress
- lack of separate patterns of circulation for prisoners, the public, and judges
- overcrowded waiting areas and hallways
- undersized children's centers
- serious security problems as a result of inadequate space and poor layout
- lack of attorney/client conference rooms
- courtrooms and hearing rooms with insufficient space for the numerous parties who appear in the typical Family Court matter
- insufficient space for records and other storage
- violations of the Americans with Disabilities Act 
- non-secure parking for judges, and inadequate parking for attorneys and litigants
- numerous problems with heating, air conditioning, windows and other building systems

---

[1] Because the Yonkers and New Rochelle Family Courts are located in leased facilities, the County is not eligible for any State financial assistance and bears the full cost for leasing these facilities. In contrast, counties and cities that provide new or improved court facilities by means of a bonded project are entitled, pursuant to the Court Facilities Act of 1987, to an interest aid subsidy to assist with the cost of the project. In fashioning a plan to address the issues at the Yonkers and New Rochelle Family Courts, the County should work closely with the Office of Court Administration to take maximum advantage of the State aid available.

# Yonkers Family Court

**Since 1979, the Yonkers Family Court has been located** in an office building in downtown Yonkers. The Court initially occupied the third floor, but in the 1980s, as its caseload grew, the Court expanded to the fourth floor. Despite this expansion, the facility is still severely overcrowded and inadequate.

The facility is entirely inappropriate for use as a courthouse. The building itself is drab and run-down, and lacks a sense of dignity appropriate for the serious work of the Family Court. The following is an overview of the most serious problems at the Yonkers Family Court facility.

## Security and Life Safety Issues

**One of the fundamental safety and security problems** at the Yonkers facility is the absence of three separate and secure patterns of circulation: one for the public, one for the judges, and one for prisoners. The result is the commingling of these groups in an emotionally charged Family Court environment, which poses serious challenges for the Court's security staff.

The building is served by two elevators, one dedicated to court use and the second which serves the non-court floors and the building's other tenants. Both of the elevators are accessed from the first floor lobby, which is beyond the Court's security perimeter. In the past, due to insufficient space on the third and fourth floors, the Court experimented with setting up its screening operations in the building's main lobby. This arrangement, however, created problems because (a) it meant screening of all building visitors (with some tenants objecting) or allowing the other building tenants and non-court visitors to bypass the screening process and (b) it required that the screening equipment be set up and then disassembled every day (rather than left in place in the unsecured lobby on weekends and evenings).

Ultimately, the screening equipment was placed on the third and fourth floor elevator lobbies, with the result that the first floor lobby and the elevators are beyond the Court's security screening. The concern here is that everyone coming to the court facility — litigants, family members, persons-in-custody, as well as court staff and judges — all end up in close proximity in the small lobby and on the single elevator that serves the court floors, without oversight from the Court's security team.

The elevator opens directly into the third and fourth floor elevator lobbies, where the Court's security screening operations are located. Neither of these lobbies has sufficient space for screening equipment, court officers and queuing for court visitors. Often, upon reaching the court floors, visitors encounter a sea of people lining up to pass through the magnetometers.

During peak times, congestion in the lobbies can be extreme, with large numbers of people in the unsecured first floor lobby waiting for the Court's lone elevator, and large numbers of people in the third and fourth floor lobbies queuing at the magnetometer operation. This situation was recently exacerbated when the Yonkers Fire Department established a maximum occupancy of 40 persons in the fourth floor waiting room. While this restriction assures that the space upstairs is not dangerously overcrowded, it has resulted in increased congestion in the first floor lobby. As a result, the Court now must assign additional court officers to the first floor lobby for crowd control purposes.

This new occupancy restriction also seriously impedes court operations because newly arriving court visitors are not allowed up to the court floors until the parties already upstairs have concluded their business and left the building. The departure of court visitors does not always occur immediately upon completion of courtroom proceedings because litigants often must wait for printed orders and other documents related to

their cases. The fact that, due to space limitations, the Court has only one public window where such papers can be picked-up contributes to delays in departure and the ability of other litigants to come up to the court floors.

Even before these occupancy restrictions were imposed by the Yonkers Fire Department, court officers were frequently deployed to the first floor lobby to restrict the number of people entering the court-bound elevator. Court officers are also frequently deployed to the lobby when one of the building's two elevators is out of order and the single remaining elevator must serve the entire building.

Aside from the dedicated court elevator, the only other exit from the building is a single fire stairway, which becomes narrower, rather than wider, as it descends to the lower floors, posing safety concerns in the event of an emergency evacuation.

There are also a variety of security concerns with respect to the hearing rooms, primarily as a result of their limited size and locations. For example, the hearing room used for Permanency Planning proceedings is undersized and inadequate. These proceedings typically involve many participants and the lack of sufficient space results in extreme congestion. There is also little separation between the parties and the referee, which adds to security concerns. In addition, the lack of secondary exits from hearing rooms creates security issues since the referee lacks an exit near the bench. Any security-related situation occurring in the hearing room could result in the referee being trapped, without a secure route to evacuate the hearing room.

Additional security issues include:

- direct access from the public hallway to the judges' chambers
- a non-working toilet within the detention area, which requires that prisoners be escorted to use non-secure restrooms
- due to space and layout limitations, the third-floor waiting room, which is typically crowded with litigants, is located beyond the direct view of court security
- public area benches in such poor condition that pieces falling off are capable of being used as weapons.

## Space Inadequacies

**Severely overcrowded conditions at the Yonkers Family Court** not only pose safety hazards, but also hamper efficient court operations and preclude the assignment of additional staff to this site and the introduction of additional services and programs to serve families. The following are among the many space problems at this facility.

*Clerk's Office*   The clerk's office does not have sufficient space for existing files and cannot properly accommodate future filings or any future initiatives that would involve any type of growth. As a result, court files in the Intake Unit are maintained on a system of filing racks located in the center of the office. This solution congests the office, making it difficult for court staff to communicate with each other or see the public waiting at the intake window. In addition, the weight of case files in these racks has placed an excessive load on the facility's floors, which are sagging, apparently due to the weight of the files. (An immediate assessment of floor load capacities should be undertaken to address this concern.) Further, the lack of adequate storage space has resulted in the placement of court files, books and equipment in the corridors, congesting the hallways and adversely affecting court efficiency.

***Public Counters***  The Intake Unit's public access window is inadequate given the volume of people using this Court. The staff is unable to assist more than one litigant at a time, causing delays and, often, long lines.

***Court Officer Locker Rooms***  The Court's security staff occupies two poorly located locker rooms immediately adjacent to the crowded elevator lobby and queuing area. Opening the doors to these locker rooms eliminates any privacy for anyone within these rooms. Finally, the sergeant's office is too small to accommodate confidential counseling sessions.

***Courtrooms***  As a result of the small size of the courtrooms, courtroom staff, litigants and attorneys sit on top of one another in an inappropriate and uncomfortable setting. The courtrooms also lack sufficient space for the placement of additional equipment and files. The clerical spaces in the courtrooms are inadequate and adversely affect efficiency.

***Referee Hearing Room***  As indicated above, this room is too small to safely and comfortably conduct hearings for Permanency Planning cases. In addition to being undersized, the hearing room is poorly situated within the facility and poorly ventilated. The door is frequently left open to improve air circulation, with the result that noise from the busy hallway often disrupts proceedings. The lack of space also results in the inability to store active case files in the hearing room, which leads to the unacceptable solution of storing files in the facility's hallways.

***Law Library***  The facility lacks space for a law library and, as a result, legal reference materials are stacked in the hallway along with overflow court files.

***Attorney Waiting Room***  The attorney waiting room seats only eight and is inadequate for the volume of cases handled at this site.

***Children's Center***  Based on the Court's heavy caseload the area allocated for the Children's Center is undersized. The Center can accommodate no more than five children at one time, with the result that children are turned away numerous times each week. When this happens, parents must keep their children with them, in the crowded hallways and waiting rooms, until space is available within the Center. The Center lacks space for the staff's personal items as well as appropriate work space to perform necessary paperwork. The Center also lacks a bathroom facility for the children and as a result the children must use the public restrooms, which are poorly maintained and unsuitable for their use. The absence of appropriate storage space also results in children's jackets and clothing being placed on the Center's floor.

***Supply Room/Lunch Area***  Until recently, the staff lunch room also doubled as the supply storage room for the Court. The large volume of supplies stored in the room not only made the room unsuitable for joint use as a lunch room, but also raised concerns about excessive floor loads. Recently, the room was converted into a much needed courtroom for a Support Magistrate, thereby eliminating the staff lunch room and further reducing the Court's already limited storage capacity.

***Chambers and Related Space***  The chambers' suites lack adequate space for the court's secretarial staff. One of the chambers is too small to accommodate appropriate-sized office furniture, and one of the court attorney's offices has serious problems with water penetration and leakage from the radiators. There are also ventilation deficiencies in the chambers. Recently, a courtroom used by a Support Magistrate was converted into a courtroom for an additional Judge who was brought in to address the Court's backlog of cases. As a consequence, one of the court attorney offices had to be divided to provide space for an additional court attorney, further congesting the overcrowded chambers spaces.

## Parking

**The parking at the facility is inadequate.** There are only two reserved spaces for judges. These spaces are located on the street in front of the building, are not secure and are readily identifiable as spaces reserved for judges. There have been instances where judges' vehicles in these spaces have been "keyed" and otherwise vandalized and, based on these security concerns, as well as the potential for litigant contact, the judges must be escorted to and from their cars by court officers. There is a lack of suitable parking for court staff as well as the attorneys and litigants visiting the courthouse. These people are on their own to find suitable parking near the court facility. Some are able to park on the street, while others are required to use parking lots and garages in the downtown area. None of these alternate locations is secure and some are at least a ten-minute walk to the courthouse. Anyone arriving downtown after 9 a.m. often has difficulty finding parking convenient to the courthouse. Over the years, there have also been concerns voiced by the County Attorney and Department of Social Services about the safety of their attorneys and staff who must walk to their cars in the dark following court appearances.

## Miscellaneous

**There are recurring problems with the HVAC (heating, ventilation, and air conditioning) system.** Because of the numerous interior offices and spaces where large numbers of people assemble, these HVAC problems create serious operational difficulties for the Court. Related to this issue is the poor condition of the building's windows, many of which are difficult to open and close.

## Update: Emergency Relocations from the Yonkers Family Court

**As a result of the conditions discussed above,** in particular the congestion and delays resulting from the occupancy restrictions imposed by the Yonkers Fire Department, court administrators are developing emergency plans to temporarily relocate certain functions out of 53 South Broadway. The plans include moving Support cases to the Yonkers City Courthouse and Permanency cases to the Family Court facility in White Plains.

 # New Rochelle Family Court 

**The Westchester County Family Court facility in New Rochelle** has been at its current location since 1985. This facility, like the Yonkers Family Court, is in an office building and suffers from many of the same problems seen at the Yonkers facility. The building has not undergone a major renovation or upgrade since the early 1980s, before it became a Family Court facility.

The Court's location, at 420 North Avenue, is isolated from many of the agencies that provide critical services to the Family Court and its users. The County Attorney's office and the Department of Social Services only appear if they have a case scheduled. If a matter requiring their involvement develops on a day when these agencies are not on the schedule, the matter must be adjourned, inconveniencing the litigants and adversely affecting the Court's efficiency.

The main entrance is on the side of the building, adjacent to the parking lot, making it difficult to identify the building as a Family Court facility when approaching from North Avenue. This building also houses

mental health offices and drug rehabilitation facilities, which results in congestion in the front of the building. Numerous complaints have been filed regarding smokers congregating at the facility's front entrance.

## Security and Life Safety Issues

**This facility lacks separate, secure entrances** and circulation patterns for the public, persons-in-custody, and court staff and judges. The Court is located on the building's third floor and is accessed via a single elevator bank. The lobby has only one entrance for all building visitors and is beyond the Court's security screening (which is located in the third floor lobby). This results in a mix of all court users, including judges and persons-in-custody, commingling in the building's lobby and elevators waiting for transport to the third floor court.

The elevator lobby on the third floor serves as the security check point as well as public queuing and screening space. This area is often very congested during periods of peak volume, which creates a dangerous condition as the elevator cars open directly into crowds of people waiting to pass through court screening.

Additional security issues arise based on a lack of adequate wiring and electrical outlets in security equipment areas. These deficiencies result in the sub-standard positioning of security staff and security equipment and restrict planning future enhancements and security-related technological upgrades.

There are insufficient holding cells and as a result there is no dedicated juvenile holding area, making it difficult to comply with the federal requirement of "sight and sound" separation between juveniles and adults.

The court officers' locker rooms are also inadequate. The male locker room, which is only 80 square feet, serves four officers and also doubles as an employee swipe-out station. Currently, the female locker room, for two officers, is a mere 36 square feet.

## Space Inadequacies

*Clerk's Office*   The back-office areas lack adequate wiring and electrical outlets, which results in inefficiencies due to restrictions in space usage and the positioning of staff and equipment. This also impacts planning for future growth and placement of technologies needed to keep pace with developments in court operations. The Court's filing capacity has been reached. Files are now being stored on shelving installed in the center of the clerk's office floor space. This "solution" congests the office and adversely impacts communications among the court staff.

*Waiting Rooms and Public Access Counter*   There are two waiting rooms, one for adults and one for juveniles. Both are inadequate for the Court's workload. As a result, overflow in the main waiting room is sent to the juvenile waiting room, thereby defeating the effort to segregate juveniles from the rest of the court-visitor population. The public access counter is poorly located inside the main waiting room. Its prominent location and open design does not allow for privacy or discrete communications between the public and court staff. Similarly, since the facility lacks any attorney/client conference rooms, sensitive discussions between counsel and litigant must take place in the building's open and congested hallways.

*Attorney Waiting Room*   The attorney waiting room is woefully inadequate and accommodates no more than eleven attorneys in tightly-placed chairs. The result is an uncomfortable waiting area, which leads to non-use and additional hallway congestion as attorneys discuss matters with their colleagues and clients in every available nook throughout the facility.

***Courtroom and Hearing Rooms***  The Court lacks adequate hearing rooms for Support Magistrates and Judicial Hearing Officers. The hearing rooms for both Magistrates and JHO's measure less than the 300 square foot minimum that is required by the Guidelines for Court Facilities. In addition, the JHO hearing room has only one entry point. Parties, attorneys, prisoner and witnesses must access this room through a congested internal corridor.

The clerk's work stations in the courtroom and in the Magistrate's hearing room lack sufficient space for performing routine paperwork and locating files and equipment. The clerk's desk in the courtroom measures less than seven square feet, making it uncomfortable and impossible to add any equipment to this area. In addition to the lack of space, these courtrooms and hearing rooms lack adequate data and power wiring to accommodate the technology that is needed.



***Chambers and Related Space***  The Court's chamber is undersized and lacks adequate wiring and electrical outlets which, in turn, limit flexibility in use and positioning of the judge's staff and equipment.



***Children's Center***  The Children's Center suffers from the same issues as Yonkers Children's Center: limited space (for only six children), no private restroom and no easy access to drinking water. As a result, children are often turned away and must wait with their parents in the crowded waiting rooms and hallways of the facility.

***Supply Room/Lunch Area***  The Court's lunch area doubles as a storage closet where paper supplies, equipment and furniture occupy much of the space. This area does not have a sink and employees must clean their dishes and utensils in the restrooms.

## Parking

**The New Rochelle Court lacks both sufficient and secure parking.** The facility's parking lot, which serves the court users as well as other building tenants, has four spaces reserved for Judges and court staff. The parking lot is inadequate and undersized for the number of attorneys and litigants appearing in the Court during peak hours. The combined use of the lot by court users and the other building tenants and visitors results in a full and congested lot throughout the day. Court visitors and staff are required to park off-site, using municipal parking garages and street parking located blocks away from the court facility.

## Miscellaneous

**Acoustics within the facility are poor.** Noise travels easily from the waiting rooms and lobby into nearby courtrooms thereby making it difficult to conduct proceedings. In addition, privacy and confidentiality between attorneys and their clients is often compromised due to lack of attorney/client conference rooms.

This facility has a long history of heating and cooling system failures. Water leaks are routine and window seals are failing. There are problems with the integrity of the building's roof as rainwater has penetrated into the courtroom and public access counter areas. This condition has become so bad that a portion of the ceiling in the courtroom has collapsed. In addition, when there is a heavy rain, the public access counter is rendered unusable due to leaking water. This situation has become so serious that the computer at the public counter is covered in plastic to protect it from such leaks.

## Conclusion

 

**Both the Yonkers and New Rochelle Family Court facilities** have numerous and serious deficiencies and are not suitable or sufficient for conducting Family Court business. Immediate action is required to address these deficiencies, and to provide facilities that meet the needs of the Court and its users and that provide a sense of dignity appropriate for the serious business of the Family Court.

Exhibit "B"



# Section 2

## An Introduction to the Family Court

The Family Court Act of 1962 established the Family Court of New York State, and gave the court jurisdiction over most cases involving families and children. The Family Court hears cases involving such issues as the abuse and neglect of children, violence and abuse among family members, paternity, custody and visitation, support, guardianship, persons in need of supervision (PINS), foster care review and placement, and juvenile delinquency (all described in greater detail in Section 4 of this guide). In addition, it shares jurisdiction in adoption cases with the Surrogate's Court. However, the Family Court does not handle divorce, separation or annulment proceedings, which are reserved for the Supreme Court.

**General Information**
There is a Family Court in each county of New York State including the five boroughs of New York City. These courts are open statewide Monday to Friday, from 9AM to 5PM. In addition, some courts have a night or evening session several times a week. The courtrooms and hearing rooms are closed at midday for a lunch recess, but areas of each building remain open to the public during this time. A list of the locations of every Family Court in New York State can be found at the back of this guide.

**Public Access and Recording in Family Court**
The Family Court is open to the public. This means that the public, including the news media, have access to courtrooms, public waiting areas, and other common areas of the courthouse. However, judges in Family Court may exclude the public from proceedings in which privacy is in the best interest of the parties involved.

All proceedings in Family Court are recorded, most often by tape recording. Either party, with the requesting party bearing the costs, can request a transcript of the recording or a duplicate copy.

 

*Exhibit "C"*

*Retaliction by OCA*
*Against my transcribt because Court recordings not legible*
*Court too noisy*

# M Gmail

marc fishman <rentdriver@gmail.com>

**Fwd: REVIEW FOR APPROVAL - FISHMAN v SOLOMON - NON COMPLIANT - Al's Transcription Services**

**ALAN KACHALSKY** <catchsky@earthlink.net>
To: marc fishman <rentdriver@gmail.com>

Wed, Mar 6, 2019, 5:26 PM

Begin forwarded message:

**From:** ALAN KACHALSKY <catchsky@earthlink.net>
**Subject: Re: REVIEW FOR APPROVAL - FISHMAN v SOLOMON - NON COMPLIANT - Al's Transcription Services**
**Date:** March 6, 2019 at 4:10:41 PM EST
**To:** CINDY HURD <transcriptionservices@nycourts.gov>

If you read the e-mail that that the PDF came with it clearly says "Atta

ched is the 2ND PASS through p. 120." Anything AF5ER P. 120 IS CLEARLY FIRST PASS. I am attaching the completed 2nd pass.
THIS IS THE LATEST VERSION

On Mar 6, 2019, at 3:55 PM, Transcription Services <transcriptionservices@nycourts.gov> wrote:

Good afternoon Mr. Kachalsky,



Please be advised, the attached transcript (#1) you submitted for review is NON-COMPLIANT. Following a brief review, the non-compliancy determination is mostly in regards to unacceptable content. A few of the pages have been attached (#2) and marked showing just some of the problems.

Al's Transcription Service will remain suspended from the NYS Transcription Vendor Services list. These transcripts as submitted by you, to us for review and approval are NOT APPROVED to be remitted to the client or the court.



Cindy
Cindy J. Hurd
NYS Unified Court System
Division of Professional & Court Services
Office of Production of the Record
187 Wolf Road
Albany, NY 12205
Phone: 518-285-8558
E-mail: churd@nycourts.gov
E-mail: transcriptionservices@nycourts.gov

*Exhibit "C"*

**From:** ALAN KACHALSKY <catchsky@earthlink.net>
**Sent:** Monday, February 25, 2019 12:42 PM
**To:** Transcription Services <transcriptionservices@nycourts.gov>
**Subject:** FISHMAN v SOLOMON

Good afternoon, Cindy.
Attached is the 2ND PASS through p. 120. I believe you have the relevant title pages (which are WORD documents and will replace the 'placeholder' title pages in the attached PDF.

Alan

| Matter of Solomon v Fishman |
| :---: |
| 2018 NY Slip Op 04741 [162 AD3d 1052] |
| June 27, 2018 |
| Appellate Division, Second Department |
| Published by <u>New York State Law Reporting Bureau</u> pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, August 1, 2018 |

Exh.b+ "D" Denial of Any nctetcke
es ADA Accwnodthan

[*1]

| In the Matter of Jennifer S. Solomon, Respondent, v Marc H. Fishman, Appellant. |
| :---: |

Del Atwell, East Hampton, NY, for appellant.

Virginia Foulkrod, White Plains, NY (Nicole E. Feit of counsel), for respondent.

Kathleen M. Hannon, Scarsdale, NY, attorney for the children.

In a proceeding pursuant to Family Court Act article 8, the father appeals from an order of protection of the Family Court, Westchester County (Michelle I. Schauer, J.), dated June 27, 2017. The order of protection directed the father, inter alia, to stay away from the mother until and including June 27, 2019.

Ordered that the order of protection is affirmed, with costs.

Contrary to the father's contention, vacatur of the order of protection is not warranted based upon the Family Court's alleged failure to provide reasonable accommodations for his alleged disabilities, in violation of the Americans with

Disabilities Act (42 USC § 1210 *et seq.* [hereinafter the ADA]). The father failed to submit sufficient evidence in support of his claim that he was disabled (*see Kadanoff v Kadanoff,* 46 AD3d 626, 627 [2007]). Additionally, the father did not demonstrate, as required by the ADA, that, by virtue of his alleged disabilities, he was substantially limited in a major life activity (*see id.* at 627; *Blank v Investec Ernst & Co.,* 2004 WL 2725138, 2004 US Dist LEXIS 24008 [SD NY, Nov. 29, 2004, No. 02 Civ 3260 (RCC)]). Moreover, the court, despite the absence of an adequate showing by the father of any such disability, nonetheless acceded to all of the father's reasonable requests for accommodations.

   The Family Court providently exercised its discretion in denying the father's request for the use by him of a personal note-taker or tape recorder at court proceedings, as the father had the ability to order official transcripts of the proceedings. Likewise, the court providently denied the [*2]father's ex parte requests under the guise of an ADA accommodation for alterations to the terms of his supervised parental access with the parties' children, since no such alterations could be made in the absence of a determination of the best interests of the subject children (*see Matter of Wilson v McGlinchey,* 2 NY3d 375, 380-381 [2004]; *Matter of Irizarry v Jorawar,* 161 AD3d 863 [2d Dept 2018]). The court also providently denied the father's ADA-based requests for the production to the father by the court of confidential records prepared for the court by a social worker, and for certain ADA accommodations for one of his sons, who he claimed was also disabled. Rivera, J.P., Maltese, Barros and Christopher, JJ., concur.

*Exh.b.t E* (handwritten)

| Matter of Jennifer S. Solomon v Marc H. Fishman |
|---|
| Motion No: 2018-851 |
| Slip Opinion No: 2018 NY Slip Op 90479 |
| Decided on December 11, 2018 |
| Court of Appeals Motion Decision |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This motion is uncorrected and subject to revision before publication in the Official Reports. |

*Exhb.t "E"*
*Denial of Appeal of ADA ordr*
*Denying notetker* (handwritten)

## In the Matter of Jennifer S. Solomon,

## Respondent,

## v

## Marc H. Fishman,

## Appellant.

## (App. Div. No. 2017-07774)

Motion for leave to appeal dismissed upon the ground that the order sought to be appealed from does not finally determine the proceeding within the meaning of the Constitution.

Exhibit E

| Matter of Jennifer S. Solomon v Marc H. Fishman |
|---|
| Motion No: 2018-852 |
| Slip Opinion No: 2018 NY Slip Op 90480 |
| Decided on December 11, 2018 |
| Court of Appeals Motion Decision |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This motion is uncorrected and subject to revision before publication in the Official Reports. |

# In the Matter of Jennifer S. Solomon,

## Respondent,

### v

## Marc H. Fishman,

## Appellant.

## (App. Div. No. 2017-07775)

Motion for leave to appeal dismissed upon the ground that the order sought to be appealed from does not finally determine the proceeding within the meaning of the Constitution.

# NEW YORK - ELECTRONIC RECORDING TRANSCRIPTION SERVICES - 5/5/17a

All services have agreed to comply with the Standard Transcript Specifications (section 108.3 of the Rules of the Chief Administrator) and to have their transcripts subject to random accuracy audits by the Unified Court System (UCS). The services on this list are not employed as electronic recording transcribers by the UCS and each sets their own rates. The UCS does not recommend particular services.

| | |
|---|---|
| **(A)-Aarons Court Reporting**    Digital<br>175 Main Street, 7th Floor, Suite 18    **SONY BM-246**<br>White Plains, NY 10601<br>Contact Person: Rebekah Solomon<br>Phone #914-506-1288 or 631-353-2002<br>E-mail: ebttranscript@gmail.com<br>and<br>160-75 Willets Point Boulevard<br>Queens, NY 11357<br>and<br>1322 Ackerson Boulevard<br>Bay Shore, NY 11706 | **(A)-ABLE Audio Court Transcriptions**    Digital<br>5 Hawthorne Avenue, #3 South    **SONY BM-246**<br>Yonkers, NY 10701<br>Contact Person: Judy/Phyllis<br>Phone #631-878-8355<br>and<br>4 Saddlebrook Lane<br>Manorville, NY 11949<br>Contact Person: Judy /Phyllis<br>Phone #631-878-8355<br>E-mail: PuglieseRptr1@aol.com |
| **(A)-ADL Transcription Services, Inc.**    Digital<br>24 Crossway Drive    **SONY BM-246**<br>Deer Park, NY 11729<br>Contact Persons: Lisa Lugo or Adrienne Militello<br>Phone #631-277-7900<br>Fax #516-797-0256<br>E-mail: ADLTranscription@aol.com<br>Offices in: Bronx, Brooklyn, Queens, New York<br>(same phone and fax for all) | **A & N Legal Transcription Service**    Digital<br>114 Campbell Road    **SONY BM-246**<br>Syracuse, NY 13211<br>Contact Person: Rose Nardiello<br>Phone #315-395-3886 |
| **A A Angie DePompo Court Reporting Services**  Digital<br>86 Kensico Street    **SONY BM-246**<br>Staten Island, NY 10306<br>Phone #718-667-1774    and<br>136 Bay Street<br>Staten Island, NY 10306<br>and<br>142 Joralemon Street<br>Brooklyn, NY 11201 | **A Better Transcript**    Digital<br>45 Rose Lane<br>Rensselaer, NY 12144<br>Contact Person: Laurie Marchiony<br>Phone #518-423-3234<br>E-mail: abettertranscript@gmail.com |
| **A Case By Case Transcription**    Digital<br>40 Wuthering Drive<br>Elmira Heights, NY 14903<br>Contact Person: Casey Johnson<br>Phone #607-426-2797<br>E-mail: cbctranscription@gmail.com | **A Long Island Transcribing Service**    Digital<br>17 Apple Lane    **SONY BM-246**<br>Commack, NY 11725<br>Contact Person: Theresa Beirne<br>Phone #631-245-9098<br>E-mail: terycon@optonline.net |
| **A.D.K. Transcription Service**    Digital<br>30 Old Schroon Road    **SONY BM-246**<br>Schroon Lake, NY 12870<br>Contact Person: Ruth Peterson<br>Phone #518-532-9451<br>Cell #518-420-8441<br>E-mail: ruthiep45@aol.com | **A+ Office On Call, Inc.**    Digital<br>336 East 87th Street, #B1    **SONY BM -246**<br>New York, NY 10128<br>Contact Person: Denise Hidalgo<br>Phone #212-876-2255<br>Fax #212-876-2258<br>E-mail: denise@aplusoncall.com |
| **A-1 Transcripts**    Digital<br>245 Parkview Avenue, Suite MA<br>Yonkers, NY 10708<br>Phone #877-777-5133<br>Fax #888-677-6131<br>E-mail: A1@court-transcripts.net | **AA Express Transcripts**    Digital<br>Attn: R. Mayes<br>195 Willoughby Avenue, #1514<br>Brooklyn, NY 11205<br>Phone #888-456-9716<br>E-mail: AAExpress@court-transcripts.net |
| **A-A For The Record Transcripts**    Digital<br>10 Doreen Drive<br>Staten Island, NY 10303<br>Contact Person: Vincent Naimo<br>Phone #718-801-2057<br>E-mail: afortherecord@gmail.kom | **AAA-"And Justice For All" Transcripts**    Digital<br>10 Doreen Drive<br>Staten Island, NY 10303<br>Contact Person: Dorothy Naimo<br>Phone #718-530-3233<br>E-mail: AndJustice4All@optonline.net |

**AAA All Court Transcripts**
111 Rowland Street
Ballston Spa, NY 12020
Contact Person: Jacquelyn Ravena
Phone & Fax #518-885-9818
E-mail: AAATranscripts@nycap.rr.com

Digital
SONY BM-246

**AAA Write It Right Transcription**
500 Silver Lane
Oceanside, NY 11572-1941
Contact Person: Phyllis Corella
Phone #516-764-3906
Cell #516-244-3691
Fax #516-203-4244
E-mail: ppcorella@hotmail.com

Digital

**A-Absolute Transcripts**
137-28 171st Street
Jamaica, NY 11434
Phone #877-572-0771
E-mail: AAbsolute@court-transcripts.net

Digital

**ABC Court Reporting, Inc.**
21 Greene Avenue, Suite 203
Amityville, NY 11701
Contact Person: Juanita Evans
Phone #631-608-4430
Fax #631-228-0996
E-mail: abcreportinginc@aol.com

Digital
SONY BM-246

**ABC Transcripts**
72 Wall Street
Amsterdam, NY 12010
Contact Person: Kim Nethaway
Phone #518-605-8711
E-mail: nykim313@yahoo.com

Digital

**ABW Transcription**
7105 3rd Avenue, Suite 412
Brooklyn, NY 11209
Contact Person: Ms. Butler-Wood
Phone #718-395-2404
E-mail: abwtranscriptionco@gmail.com
Website: www.abwtranscription.com

Digital
SONY BM-246

**Accomplished Office Services**
61 Broadway, Suite 1400
New York, NY 10006
Contact Person: Stephane Borello
Phone #212-227-7440 or 1-800-221-7242
Fax #212-227-7524
E-mail: sborello@ubiqus.com

Digital
SONY BM-246

**Accurate Court Reporting Service, Inc.**
6 Frances Lane
Port Jefferson, NY 11777
Contact Person: Lorraine Berardi
Phone #631-331-3753
Fax #631-331-1433
E-mail: Lorraine@accuratecorp.com

Digital
SONY BM-246

**AccuScript CNY**
210 Brookfield Road
Syracuse, NY 13211
Contact Person: Robin L. Irvine
Phone #315-863-1154
E-mail: AccuScriptCNY@gmail.com

Digital

**Adam's Court Reporting, Inc.**
359 Little East Neck Road South
Babylon, NY 11702
Contact Person: Trish Adams
Phone #631-525-2712
Fax #631-331-1377
E-mail: trish@adamscourtreporting.com

Digital

**Advantage Transcription Service**
336 Laurel Avenue
Olean, NY 14760
Contact Person: Shane Booth
Phone #716-307-8883
E-mail: advantagetranscripts@gmail.com

Digital

**Jennifer Adydan**
639 County Route 5
Pulaski, NY 13142
Phone #315-430-8260
E-Mail: jadydan61@yahoo.com

Digital

**AFP Transcription Service**
15 Baldwin Place
Massapequa, NY 11758
Contact Person: Angela Pressler
Phone #516-798-7707
Cell #516-428-8731
E-mail: APressle@optonline.net

Digital
SONY BM-246

**Al's Transcription Services**
800 Westchester Avenue, Suite S-608
Rye Brook, NY 10573
Phone #914-220-5324
Cell #516-557-1200
E-mail: catchsky@earthlink.net

Digital

*Alan Keebleky previosly approved*

**Pamela Alexander (Stubbe)**
30 Kilkenny Court
Fairport, NY 14450
Phone #585-388-7576
E-mail: pams1210@frontiernet.net

Digital
SONY BM-246

**All Court Transcription Service**
350 Water Street, Box 6-1
Newburgh, NY 12550
Contact Person: Lynne Keating
Phone & Fax #845-569-1466
E-mail: lynnek113@yahoo.com

Digital

EXhibit O

FISHMAN v. SOLOMON November 14, 2016 Page 1

1

2    FAMILY COURT OF THE STATE OF NEW YORK
     COUNTY OF ONEIDA
3    -------------------------------------
IN THE MATTER OF A   SUPPORT PROCEEDING )
4    MICHAEL KENNELY,                    )
                                         ) DOCKET
5    NO.                                 )
                                         )
6    DOCKET OR INDEX NO.
                                         )
7    Plaintif                            )
     fPetitioner},                       )
8                                        )                41
              -against-                  )
9                                        )    " ineduble"
                                         )
10   DefendantCaption      ,             )    wards because
                                         )    Court in New
11                                       )    Rochelle is
     Defendant                           )    ineduble see
12   Respondent}                         )    1/22/10 report
     ------------------------------------    and recudings are
13                   NOVEMBER 14, 2016        poor
14                   HEARING / TRIAL / ETC

15     HELD AT:
     COURT STREET ADDRESS
16                   COURT CITY ADDRESS

17

18     BEFORE:        HONORABLE JUDGE'S NAME

19     APPEARANCES:   ATTORNEY 1

20                    Behalf of Plaintiff Petitione
                      Attorney 2
21                    Behalf of
     Plaintiff Petitioner
22                    Defendant Name
                      Defendant

23

24        TRANSCRIBER:    ALAN KACHALSKY

25

FISHMAN v. SOLOMON November 14, 2016 Page 2

1    COURT CLERK:  Good morning, your Honor.  This is

2    (inaudible) in the Matters of Solomon versus Fishman.

3    THE COURT:  Good morning. (inaudible) on the

4    calendar.

5    MS. FOULKROD:  Legal Services of the Hudson Valley,

6    for Miss Solomon, by Virginia Foulkrod, one Park Place, Suite

7    303, Peekskill, New York, 10566 (inaudible).

8    THE COURT:  Is petitioner ready to go today?

9    MR. FISHMAN:  Yes, Your Honor.  I have a written

10   request from counsel, but I didn't hear back from the Court.

11   (inaudible) last week with the clerk (inaudible) your Honor.

12   (inaudible) the submission went in early October, your Honor.

13   THE COURT:  Miss Foulkrod, (inaudible) my decision

14   (inaudible)

15   MS. FOULKROD:  Your Honor, we're going forward,

16   seeking a finding of willfulness.

17   THE COURT:  (inaudible) incarceration?

18   MS. FOULKROD:  Yes, Your Honor.

19   THE COURT:  Do you believe that Mr. Fishman

20   (inaudible) to hire counsel to represent (inaudible).

21   MS. FOULKROD:  (inaudible) your Honor.

22   THE COURT:  So, at this time, given the amount of

23   the child support that's been ordered, the Court will not

24   assign counsel (inaudible).  I will adjourn all matters.  We

25   have a trial date on the violations and the application that

1    counsel -- that Mr. Fishman's filed (inaudible) you Thursday,

2    February 19th (inaudible)

3            MR. FISHMAN:  Your Honor, I'm getting operated on

4    on the 18th.  I have a (inaudible) neurostimulator coming in.

5    So I'm not available the 19th.

6            THE COURT:  When will you be (inaudible)

7            MR. FISHMAN:  I have surgery on the 29th, in

8    December, surgery the 15th for a hernia (inaudible) be on bed

9    rest for about 6 to 8 weeks for the right hernia (inaudible)

10   till May.  So, by late February, your Honor, that's when the

11   surgery should be (inaudible) having four different

12   procedures.

13           THE COURT:  So we'll be starting (inaudible)

14   requesting (inaudible) that you are (inaudible) And then I

15   can (inaudible).  I can't (inaudible)

16           MR. FISHMAN:  And your Honor, if I may, there were

17   payments made to Miss Solomon in 2014, which still haven't

18   been credited.  They're waiting for an Order from this Court.

19   We had put in papers to have that Order.  And the last

20   statute wasn't credited.  And also payments in the Supreme

21   Court action, both of which are being appealed and objected

22   to.  So, is your Honor willing to entertain the motion for

23   the checks that were given in the Supreme Court case to

24   Miss Solomon's attorney and Miss Solomon?  Requests child

25   support (inaudible) were not credited then, from June of '14

FISHMAN v. SOLOMON November 14, 2016 Page 4

1    without an order.

2        THE COURT:  Is that true, Counsel, that there were

3    direct payments to (inaudible) Miss Foulkrod.

4        MS. FOULKROD:  Your Honor, the -- there was a

5    direct payment, but my client did go through crediting.  She

6    was informed by this (inaudible) would not be allowed again.

7        There was a one-time they did agree to a one time.

8    It was made very clear that direct payments to my client did

9    not count.  She did send a notarized letter, and they

10   indicated to my client that they would not again entertain

11   that with the payments that we (inaudible) according to the

12   Court Order, Judge.

13       THE COURT:  What is the amount that Mr. Fishman was

14   asking for the Court to credit, even thou it wasn't --.

15       MR. FISHMAN:  May I, may I, may I -- (inaudible)

16       THE COURT:  (inaudible).

17       MS. FOULKROD:  Let me just confer with my client.

18   This was, I believe, 2014.  I didn't represent her at that

19   time.

20       MR. FISHMAN:  Your Honor, I was --

21       THE COURT:  (inaudible)  One moment.

22       MR. YOUNG:  Thank you, your Honor.

23       MS. FOULKROD:  Your Honor, if we could address -- I

24   mean, I -- I would be objecting to that being credited

25   without, certainly, I need more opportunity to discuss with

FISHMAN v. SOLOMON November 14, 2016 Page 5

1    my client.  That was, has been in front other judges, and

2    he's been denied having this included and (inaudible) --.

3              THE COURT:  (inaudible).

4              MS. FOULKROD:   -- credited.  That's my

5    understanding right now, from my client.

6              THE COURT:  So you're saying that a superior court

7    judge, who, a Supreme Court Judge and a Family Court judge

8    has ruled that this (inaudible) the credit for.  But I cannot

9    go ahead and make the ruling --

10             MR. FISHMAN:  May I (inaudible) or not, a Supreme

11   Court justice specifically said it would be credited in front

12   of your Honor.  And (inaudible) that's actually submitted

13   proof.  I also sent a copy of the check as well as a letter

14   from child --

15             THE COURT:  What was in the letter?

16             MR. FISHMAN:   -- Child Support Collection.

17             THE COURT:  (inaudible).

18             MR. FISHMAN:  Two thousand eight seven, your Honor.

19   It was June 1st, 2014.  Judge Marx specifically wanted

20   hand-delivered to my then attorney Arlene Wexler, to then

21   attorney, I believe it was (inaudible) and the child support

22   collection said Miss Solomon refused to come in to attest the

23   thing, and send notarized letter.

24             They had the regular unnotarized.  They would not

25   do it without a court order.  And specifically, the appeal

1    case in front of -- your Honor, with all due respect, Judge

2    Mallone specifically stated it would be credited here.  And

3    now that matter's appealed.  So, both courts are saying it

4    would be credited each other place.  There were also

5    insurance proceeds, your Honor, that she received directly

6    that weren't credited --

7         MS. FOULKROD:  Your Honor --

8         MR. FISHMAN:   -- that would be the last

9    application --

10        MS. FOULKROD:  -- I can speak to what happened in

11   front of Judge Mallone.  I was the attorney of record in that

12   courtroom.

13        There is nothing in the Court's Order referencing

14   those payments.  That was knocked out (inaudible) there was

15   no indication given that this Court would credit him, not by

16   Judge Mallone.

17        MR. FISHMAN:  Your Honor, we have a transcript that

18   I'd be happy to provide (inaudible) said Judge Mallone would

19   have the credit here.

20        THE COURT:  I've given you a trial date, and

21   (inaudible) Mr. Fishman, (inaudible) 9:00 am.  And hire

22   counsel to represent you in the violations.

23        Counsel is seeking your incarceration.

24        Thank you, all.

25        MS. FOULKROD:  Thank you.

FISHMAN v. SOLOMON November 14, 2016 Page 7

1          MR. FISHMAN:   Parties are excused.

2       (whereupon the proceeding was concluded at

3       11:03 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FISHMAN v. SOLOMON November 14, 2016 Page 8

C E R T I F I C A T E


I, Alan Kachalsky, certify that the foregoing

transcript of proceedings in the NEW ROCHELLE FAMILY

COURT, of FISHMAN and SOLOMON, File no. 131794 was

prepared using the required transcription equipment

and is a true and accurate record of the

proceedings.


Signature _____


**Al's Transcription Services**
**800 Westchester Avenue, Suite S-608**
**Rye Brook, New York 10573**
**Tel: (914) 220-5324**
**E-mail: catchsky@earthlink.net**