UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARC FISHMAN,

                              Plaintiff,

            v.

OFFICE OF COURT ADMINISTRATION
NEW YORK STATE COURTS, *et al.*,

                              Defendants.

No. 18-CV-282 (KMK)

OPINION & ORDER

APPEARANCES:

Marc Fishman
Bronx, NY
*Pro se Plaintiff*

Lee Alan Adlerstein, Esq.
Lisa M. Evans, Esq.
Office of New York State Office of Court Administration
New York, NY
*Counsel for Defendants Office of Court Administration New York State Courts, New York State Unified Court System, Nancy J. Barry, and Dan Weisz*

Michael Adam Berg, Esq.
Office of New York State Attorney General
New York, NY
*Counsel for Defendant Michelle D'Ambrosio*

KENNETH M. KARAS, United States District Judge:

Pro se Plaintiff Marc Fishman ("Plaintiff") brings this Action, under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301. Plaintiff seeks various forms of relief against the Office of Court Administration, New York State Courts ("OCA"); the New York State Unified Court System ("NYSUCS"); Nancy J. Barry, District Executive of the Ninth Judicial District ("Barry"); and Dan Weisz, Statewide ADA Coordinator for NYSUCS ("Weisz") (collectively, "OCA Defendants"); and Associate Court

Attorney Michelle D'Ambrosio ("D'Ambrosio)[1] (collectively, "Defendants").[2]  All Defendants

are sued exclusively in their "administrative and official capacity[ies]."  (*See generally* Sec. Am.

Compl. ("SAC") (Dkt. No. 44-1).)  Before the Court are D'Ambrosio's and OCA Defendants'

respective Motions To Dismiss (the "Motions").  (Not. of Mot. (Dkt. No. 67); Not. of Mot. (Dkt.

No. 70).)  For the following reasons, the Motions are granted.

## I.  Background

### A.  Factual Background

The following facts, which are taken as true for the purpose of resolving the instant

Motions, are drawn from Plaintiff's SAC, exhibits attached thereto, and matters of which judicial

notice may be taken.  *See Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

Plaintiff is a divorced father of four minor children engaged in proceedings in the New

York State Family Court ("Family Court").  (SAC ¶¶ 1, 155.)  Plaintiff suffers from traumatic

brain injury, post-concussion syndrome, occipital neuralgia, temporomandibular joint syndrome,

sleep apnea, and other cognitive disorders.  (*Id.* ¶¶ 1, 10, 173–182.)  As relevant here, Plaintiff

alleges that his rights were violated when Defendants "discriminated against [him] and other[s]

similarly situated" and "retaliate[ed] against [them] with deliberate intent and indifference for

[their] 'Qualified ADA Disabilities.'"  (*Id.* ¶ 1.)

---

[1]  Although Plaintiff refers to D'Ambrosio as a "court administrator," her proper job title, "Associate Court Attorney," is listed on the public document displaying Judge Schauer's individual "Part Rules," available on the New York Courts system's official website at: https://www.nycourts.gov/LegacyPDFS/courts/9jd/PartRules/PR_MISchauer.pdf.

[2] Plaintiff names several additional purported defendants in his SAC, including Judge Gordon Oliver, Magistrate Carol Jordan, Judge Kathy Davidson, Judge Michelle I. Schauer, Judge Hal Greenwald, and Judge Alan Scheinkman.  (SAC ¶ 1.)  However, in issuing its Order of Service, the Court dismissed all such claims on judicial immunity grounds.  (*See* Dkt. No. 46.) Accordingly, the recitation of facts below omits allegations that focus only on these dismissed defendants.

Plaintiff alleges that Defendants require "excessive proof of disability," (*id.* ¶ 11), and have therefore denied several of Plaintiff's requested accommodations, including his requests for "a note taker," "large print court orders," " access to medical records held in court," "use of the 'CART' real time transcription services," "use of notes in court," "morning only court appearances," adjournments based on his disability, and "home[-]based based visitation" after surgery. (*Id.* ¶¶ 1, 36.) The denial of these accommodations caused Plaintiff "and others similarly situated" anxiety and post-traumatic stress disorder, led to "extensive medical[] and therapy review," and "interfered with [Plaintiff's] civil rights as a father." (*Id.* ¶ 1.) Plaintiff has also been forced to "pay for the auxiliary aid[] of transcriber costs," (¶ 50), expending over $25,000, (*id.* ¶ 87), even though the requested accommodations could be provided at little cost to the courts, (*id.* ¶¶ 50, 87, 94–97).

Plaintiff also alleges certain specific adverse acts. In particular, he alleges that Family Court Judge Michelle I. Schauer ("Judge Schauer"), Magistrate Carol Jordan ("Magistrate Jordan") and their judicial staffs denied Plaintiff's requests for a note-taker despite repeatedly permitting his ex-wife "multiple note-takers." (*Id.* ¶¶ 43, 49, 71.) Additionally, several Family Court judges and officials, including Judge Schauer and D'Ambrosio, "intentionally" delayed the production of transcripts by "instructing the court clerk and staff not to send digital recordings or delay sending recordings" to Plaintiff's transcriber. (*Id.* ¶¶ 49, 74.) Specifically, Judge Schauer required a court clerk to obtain individual permission before sending recordings for transcripts in Plaintiff's case, a practice that Plaintiff alleges was unusual. (*Id.* ¶ 73.)

In 2016, Plaintiff sent gifts to his children for Passover, Memorial Day, Independence Day and his twins' birthday. (*Id.* ¶ 59.) Although a temporary order of protection ("TOP") prohibited him from doing so, Plaintiff believed at the time that these particular gifts were

permitted because they were "on major holidays." (*Id.* ¶ 60.) Plaintiff now acknowledges that

"Defendants" (presumably Judge Schauer and D'Ambrosio) clarified at a prior hearing "that

there were no major holidays between April and July 2016." (*Id.* ¶ 63.) However, with his

"slight memory impairment" and without the assistance of a real-time transcript or a note-taker

(denied by Judge Schauer), Plaintiff did not remember these instructions. (*Id.* ¶¶ 59–70.)

Nevertheless, Judge Schauer denied him the opportunity to call "rebuttal medical witnesses to

testify that [his] disabilities . . . prevented [him] from remembering" the Family Court's

instructions. (*Id.* ¶¶ 70, 153.)

On another, unspecified, occasion, Judge Schauer again refused to allow a social worker

to testify on Plaintiff behalf. (*Id.* ¶ 160.) Additionally, Judge Schauer and other Defendants

have refused to lift the TOP restricting Plaintiff's access to his children's school, even though he

is "zero threat" to the school and has no history of violence. (*Id.* ¶¶ 186–89.) Plaintiff believes

that Judge Schauer's decisions were discriminatory, as "non-disabled fathers in similar court

proceedings" have been treated differently, (*id.* ¶ 130), and retaliatory, as they followed multiple

requests that she recuse herself, (*id.* ¶ 132).

Although the OCA Defendants were "repeatedly made aware" of Judge Schauer and

D'Ambrosio's actions, they failed to "act administratively" to redress his complaints. (*Id.* ¶ 76–

79.) Defendants have also failed to "negotiate or compromise" on Plaintiff's ADA

accommodation requests. (*Id.* ¶ 205.) Plaintiff was informed by a court "ADA liaison," William

Curry, that if the decision were his, he would ordinarily grant accommodations similar to those

requested by Plaintiff. (*Id.* ¶¶ 79, 84.) By contrast, Defendants, including D'Ambrosio,

scheduled afternoon court sessions (despite awareness of Plaintiff's need for afternoon naps) and

denied his requests for a note-taker and related accommodations. (*Id.* ¶¶ 81, 84.)

Plaintiff further alleges that Magistrate Jordan and OCA staff threatened to jail Plaintiff if he did not bring multiple note-takers (from which she could choose) to court appearances in Family Court. (*Id.* ¶ 103.) Magistrate Jordan also failed to hear Plaintiff's requests to lower his child support obligations in light of his disabilities, or to "order the support collection unit to credit child support paid in 2014 and other years between September 2014 and November 2018." (*Id.* ¶ 109.) Additionally, Magistrate Jordan dismissed Plaintiff's cases for failure to appear, even though that failure was due to Plaintiff's recent hospitalization, and despite a doctor's letter indicating that Plaintiff should "not go to court for 5 days." (*Id.* ¶¶ 110–12.)

Plaintiff's additional allegations against unspecified Defendants include that they have: "exploited" his disabilities and "falsely mislabel[ed his] disabilities as personality disorders," (*id.* ¶ 1); "sided with" his ex-wife's and children's counsel in custody proceedings and shared confidential medical information with that counsel, (*id.* ¶¶ 24, 33); and failed to respond to his request that certain medical records, created by a court-appointed social worker from 2014–2016, be produced to his treating psychologist, (*id.* ¶ 184).

Plaintiff has tried to appeal adverse ADA decisions, but has determined that successfully appealing the denial of an ADA accommodation to New York's Second Department is "an impossible endeavor." (*Id.* ¶ 122.) First, Plaintiff was informed by Second Department Clerk of Court Aprilanne Agostino that responding to "ADA accommodations is an 'administrative function that the appellate division could not help me out with.'" (*Id.*) Likewise, the "[A]ppellate [D]ivision [S]econd [D]epartment recommended [that Plaintiff] contact" OCA and the Commission on Judicial Conduct ("CJC") about such matters. (*Id.* ¶ 123.) Both OCA and CJC, however, informed Plaintiff that he would need to file an appeal to the Second Department. (*Id.* ¶ 124.) When Plaintiff has done so, the Second Department has rejected Plaintiff's appeals,

explaining that the denial of requested accommodations in Family Court cannot be appealed without a final order. (*Id.* ¶¶ 124, 141–42.) Plaintiff believes that Defendants have delayed issuing final orders in order to inhibit him from filing such appeals. (*Id.* ¶ 156.)

According to Plaintiff, "New York State's ADA accommodation process of allowing inexperienced Judges and Court Attorneys . . . in Family [C]ourt hearings to usurp the Experienced Court ADA Liaisons and prevent liaisons like William Curry from granting of ADA accommodations interferes with . . . and violates the ADA." (*Id.* ¶ 113.) This policy contrasts with the ADA policies of other states which employ "central [ADA] administration judges" to provide accommodations within "hours or days." (*Id.* ¶ 116.)

Plaintiff seeks several forms of relief. First, he seeks a declaratory judgment declaring that New York State discriminated against him and others similarly situated in violation of federal and state law. (*Id.* ¶¶ A, C).[3] Second, Plaintiff requests that the Court issue an order requiring OCA to provide specific accommodations (e.g., "morning[-]only appearances due to my tiredness from sleep apnea," or that all of his requests "be administered by the court [ADA] liaison, not the sitting judge as is customary practice"). (*Id.* ¶ B.) Third, Plaintiff seeks reimbursement of various legal and medical costs as well as compensatory damages. (*Id.* ¶¶ D, E.) Fourth, Plaintiff requests that the Court direct Defendants to provide all previously requested accommodations, enjoin Defendants from retaliating against him, and order "a stay of all State Family Court proceedings until Defendants comply" with the ADA and the Rehabilitation Act, as well as grant "other relief as it deems just and equitable." (*Id.* ¶¶ F–I .)

---

[3] The last several paragraphs of Plaintiff's SAC are marked by letter rather than number. The Court identifies these paragraphs accordingly.

B. Procedural Background

Plaintiff filed his initial Complaint and a request to proceed in forma pauperis ("IFP") on January 10, 2018. (Dkt. Nos. 1–2.) On January 19, 2018, the Court granted Plaintiff's IFP application. (Dkt. No. 7.) On July 9, 2018, Plaintiff filed his First Amended Complaint. (Dkt. No. 26.) On September 7, 2018, Plaintiff purported to file a second amended complaint without Defendants' written consent or the Court's leave. (Dkt. No. 32.) On October 9, 2018, the Court directed Plaintiff to file a second amended complaint that complied with Federal Rule of Civil Procedure 8. (Dkt. No. 41.) Plaintiff then filed the operative SAC on November 8, 2018. (Dkt. No. 44-1.) The Court issued an Order of Service as to current Defendants on November 26, 2018, but as it did so, the Court dismissed several original defendants, all judges of Westchester Family Court, on the grounds of absolute judicial immunity. (Dkt. No. 46.)

Plaintiff has also twice sought, and been denied, preliminary injunctions. On April 24, 2018, Plaintiff filed his first Motion for a Preliminary Injunction, seeking to be provided with "a qualified note taker, an aide for the court program of visitation[,] and large print court orders." (Dkt. No. 17.) On June 11, 2018, the Court held oral argument, (Dkt. No. 24), after which it filed an Order denying the Motion, (Dkt. No. 25). On August 31, 2018, Plaintiff filed a second Motion for a Preliminary Injunction, again seeking an order directing OCA to provide him with real-time transcription services during court proceedings. (Dkt. No. 29.) On January 9, 2019, the Court denied that Motion as well. (Dkt. No. 50.)

On May 23, 2019, D'Ambrosio filed her Motion To Dismiss and accompanying papers, (Dkt. Nos. 67–69), and the next day, OCA Defendants followed suit, (Dkt. Nos. 70–72). On July 24, 2019, Plaintiff filed a letter styled, "Request to file for Injunctive relief . . . and [O]pposition to [D]efendant[s'] [M]otion[s] [T]o [D]ismiss," which the Court construed as Plaintiff's

Response.  (Dkt. Nos. 79–80.)  On July 31, 2019, D'Ambrosio filed a Reply, (Dkt. No. 81), and

on August 2, 2019, OCA Defendants file a letter in Reply as well, (Dkt. No. 82).

## II.  Discussion

Defendants advance several arguments: that D'Ambrosio is shielded by judicial

immunity; that federal jurisdiction over the case is barred by *Younger* abstention; that the

Eleventh Amendment bars many of the claims at issue; that Plaintiff, as a non-attorney, is

forbidden from representing others in court, (*see generally* D'Ambrosio's Mem. of Law in Supp.

of Mot. To Dismiss ("D'Ambrosio Mem.") (Dkt. No. 69)); and that the SAC fails to state a claim

for which relief can be granted, (*see generally* OCA Defs.' Mem. of Law in Supp. of Mot. To

Dismiss ("OCA Mem.") (Dkt. No. 72).)  The Court addresses the arguments as needed.

### A.  Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (citation and quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*,

517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation, italics, and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (citation and italics omitted).

### B. Analysis

#### 1. Claims for Damages

##### a. Judicial Immunity

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages." (citations omitted)). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id*. at 209 (citations omitted). Thus, judicial immunity is "overcome in only two sets of

circumstances[:] . . . [(1)] actions not taken in the judge's judicial capacity[,] . . . [and (2)] actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12 (citations omitted). The reason for this far-reaching grant of immunity is simple: "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (citation omitted), *cert. denied*, 514 U.S. 1102 (1995). Moreover, this rationale applies with particular force to judicial figures called upon to adjudicate family law disputes. "Not surprisingly, disgruntled ex-spouses often bring claims against state court judges who have presided over divorce and child custody issues. . . . Given the inherently emotional nature of their work, family court judges may be particularly susceptible to harassment." *Lewittes v. Lobis*, No. 04-CV-155, 2004 WL 1854082, at \*5 (S.D.N.Y. Aug. 19, 2004) (citations and quotation marks omitted), *aff'd*, 164 F. App'x 97 (2d Cir. 2006).

Importantly, the absolute immunity afforded to judges is not limited to judges alone, but also extends to "certain others who perform functions closely associated with the judicial process." *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (citation omitted); *see also McKeown v. N.Y. State Comm'n on Judicial Conduct,* 377 F. App'x 121, 124 (2d Cir. 2016) (citing *Oliva*). Thus, individuals whose responsibilities are "functionally comparable" to those of a judge are also absolutely immune from liability. *Bliven*, 579 F.3d at 211 (quoting *Butz v. Economou,* 438 U.S. 478, 513 (1978)). Accordingly, "courts have granted absolute immunity to court clerks where they were performing discretionary acts of a judicial nature," because their "duties and responsibilities are most intimately connected with the judge's own exercise of the judicial function," and because they "are simply extensions of the judges at whose pleasure they serve." *Oliva*, 839 F.2d at 39–40 (citations omitted); *see also Jackson v. Pfau*, 523 F. App'x 736, 737–38

(2d Cir. 2013) (affirming the dismissal of claims against judicial law clerks, court attorneys, and attorneys in the OCA on judicial immunity grounds). Similarly, courts in the Second Circuit have recognized that "court attorneys," who function in New York State courts much like law clerks in federal courts, are protected by judicial immunity. *See Clark v. Adams,* No. 10-CV-1263, 2010 WL 3123294, at *2–3 (E.D.N.Y. Aug. 8, 2010) (holding that a court attorney in the New York court system "perform[ed] acts of a judicial nature," and was "therefore entitled to absolute immunity"); *Alfano v. Vill. of Farmingdale,* 693 F. Supp. 2d 231, 233 (E.D.N.Y. 2010) (confirming that "the legal advisors to state and federal judges are entitled to judicial immunity" (citations omitted)).

Here, Plaintiff's claims against D'Ambrosio are based entirely on conduct that she engaged in within her capacity as Judge Schauer's court attorney. For example, Plaintiff alleges that "Judge Schauer . . . and Michelle D'[A]mbrosio . . . instruct[ed] the court clerk and staff not to send digital recordings or delay sending recordings to [his] transcriber," (SAC ¶ 49); that the Family Court's "refusal to pay for [Plaintiff's requested] transcripts . . . was intentional and willful by Defendants[] including Judge Schauer . . . [and] Michelle D'[A]mbrosio," (*id.* ¶ 57); that "Defendants including Judge Schauer and Michelle D'Ambrosio expected [Plaintiff] to remember words stated at a hearing without a note taker," (*id.* ¶ 64); that "Judge Schauer, Michelle D'Ambrosio, [and others] purposely and willfully scheduled afternoon court sessions," (*id.* ¶¶ 81–84); and that "Judge Schauer and . . . D'Ambrosio, purposefully and intentionally chose the highest cost of disability accommodation", (*id.* ¶ 90). As illustrated by Plaintiff's intertwining of all allegations against D'Ambrosio with identical claims against Judge Schauer, here, D'Ambrosio simply acted as an "extension[] of the judge[] at whose pleasure [she] serve[s]." *Oliva*, 839 F.2d at 39–40 (citation omitted). D'Ambrosio is therefore "entitled to

absolute immunity as a [court attorney] to a state court judge because [she] was acting in a judicial capacity." *Gollomp v. Spitzer*, 568 F.3d 355, 365 (2d Cir. 2009) (citation omitted).

### b. Eleventh Amendment

As a general rule, "state governments may not be sued in federal court [for damages] unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under [Section] 5 of the Fourteenth Amendment." *Id.* at 366 (citation, alteration, and quotation marks omitted). This immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (citation and quotation marks omitted). Accordingly, state sovereign immunity also "extends to damage actions against state employees acting in their official capacities, because the State is the real party in interest in such actions." *Cole v. Goord*, No. 05-CV-2902, 2009 WL 2601369, at *5 (S.D.N.Y. Aug. 25, 2009) (citation omitted); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003) ("The real party in interest in an official-capacity suit is the government entity." (citation omitted)), *cert. denied*, 541 U.S. 936 (2004).

Here, all Defendants are sued in their official capacities. (*See* SAC.)[4] Moreover, the Second Circuit has specifically held that "the New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." *Gollomp*, 568 F.3d at 368 (citation omitted). Accordingly, the Eleventh

---

[4] The SAC makes clear that all claims are against Defendants in their official capacities. However, even if that were not clear from the face of the SAC, "[i]t is well settled that individuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act." *Holly v. Cunningham*, No. 15-CV-284, 2016 WL 8711593, at *4 (S.D.N.Y. June 17, 2016) (quotation marks omitted) (collecting cases).

Amendment precludes Plaintiff's damages claims, unless New York State has consented to suit (under the NYSHRL) or Congress has validly abrogated the states' Eleventh Amendment immunity (through passage of Title II of the ADA).

With respect to the NYSHRL claims, uniform precedent establishes that New York State has not consented to suit for such claims. *See Moultry v. Rockland Psychiatric Ctr.,* No. 17-CV-4063, 2018 WL 5621485, at *2 (S.D.N.Y. Oct. 30, 2018) ("New York did not waive its immunity under NYSHRL." (citations omitted)); *Sunnen v. N.Y. State Dep't of Health,* No. 17-CV-1014, 2018 WL 3611978, at *4 (S.D.N.Y. July 27, 2018) ("New York State has not consented or waived its sovereign immunity to suits arising under the NYSHRL or NYCHRL." (citations omitted)), *aff'd*, ---F. App'x---, No. 18-CV-3382, 2020 WL 521858 (Mem) (2d Cir. Feb. 3, 2020). Accordingly, all NYSHRL claims are barred by the Eleventh Amendment and must be dismissed.[5]

The question with respect to the ADA is more complex. While Congress "explicitly stated an intent under Title II [of the ADA] to abrogate the States' sovereign immunity," such abrogation is only effective to the extent it is "a valid exercise of power under [Section] 5 of the Fourteenth Amendment." *Cole*, 2009 WL 2601369, at *5 (citations and quotation marks omitted); *see also Tennessee v. Lane,* 541 U.S. 509, 518 (2004) (explaining the scope of Congress's power to abrogate Eleventh Amendment immunity). The Second Circuit has concluded that Title II successfully abrogated state immunity only to the extent that plaintiffs

---

[5] Although the *Ex Parte Young* doctrine permits suits for injunctive relief against states under federal law, the Eleventh Amendment bars such suits when based on state law claims. *See, e.g.*, *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.,* 206 F. Supp. 3d 869, 914 (S.D.N.Y. 2016); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). Accordingly, all Plaintiff's NYSHRL claims for injunctive relief are dismissed as well.

"establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability . . . i.e., conduct that is based on irrational prejudice or wholly lacking a legitimate government interest." *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001) (citation omitted).

Subsequent Supreme Court precedent, although consistent with *Garcia*, articulates a more generic test for analyzing whether state immunity precludes Title II suits:

> [L]ower courts will be best situated to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006). Since *Georgia*, courts in the Second Circuit have divided over whether to continue applying *Garcia*. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 194–95 (2d Cir. 2015) ("Some district courts apply *Garcia*. Others[] adopt[] the approach in *Georgia*." (footnote omitted)). As *Garcia* is consistent with *Georgia,* and as the Second Circuit has given no indication that *Garcia* should be adjusted in light of *Georgia*, this Court continues to assume that *Garcia* governs. *See Davis v. Collado*, No. 16-CV-7139, 2018 WL 4757966, at *8 (S.D.N.Y. Sept. 30, 2018) (applying *Garcia*'s "discriminatory animus or ill will due to disability" test).

Here, Plaintiff alleges no facts indicating that any Defendant acted "with discriminatory animus or ill will" toward Plaintiff's disability. For example, Plaintiff cites no discriminatory comments by Defendants. *See Davis*, 2018 WL 4757966, at *8 (dismissing official capacity ADA claims based on a failure to sufficiently allege "discriminatory animus or ill will due to disability," and citing the absence of discriminatory comments as a partial basis for this conclusion (italics omitted)). Nor is there any factual, non-conclusory allegation that Defendants

treated disabled persons any differently than non-disabled comparators. *See Doe v. City of New York,* No. 05-CV-5439, 2009 WL 7295358, at *11 (E.D.N.Y. Nov. 10, 2009) (holding that the plaintiff failed to raise an issue of fact as to discriminatory animus by failing to identify similarly situated non-disabled individuals), *adopted by* 2011 WL 37131 (E.D.N.Y. Jan. 5, 2011), *aff'd,* 473 F. App'x 24 (2d Cir. 2012). In fact, Plaintiff acknowledges that other disabled litigants have been treated better than him. (*See* SAC ¶ 146 ("Other[] disabled litigants in other courts not in New York [F]amily Court [A]rticle 6 and or 8 proceedings are permitted to appeal as of right, where I am discriminated against for my disabilities against appealing.").) To the extent that Plaintiff does allege disparate treatment compared with non-disabled comparators, all such allegations are entirely generic and conclusory. (*See e.g., id.* ¶¶ 133 ("Other non-disabled fathers and mothers are not jailed by [t]he State for sending gifts to their kids."); 149 ("Other non-disabled litigants in front of other judges do not have to pay for transcripts on their own.").) Such conclusory allegations cannot support a claim for the requisite discriminatory intent. *See Clay v. Lee,* No. 13-CV-7662, 2019 WL 1284290, at *7 (S.D.N.Y. Mar. 20, 2019) ("These conclusory allegations fail to allege that Defendants acted with 'discriminatory animus or ill will' at all, let alone 'due to" Plaintiff's alleged "mental health issues.'" (citations omitted)). Accordingly, given the absence of any factual allegations that meet *Garcia*'s standard, "Defendants are entitled to Eleventh Amendment immunity on Plaintiff's ADA and Rehabilitation Act claims." *Id.* (citation omitted).[6]

---

[6] Plaintiff also argues that the Supreme Court's decision in *Tennessee v. Lane* alters the analysis here because his claims relate to a right of access to the courts. (*See* SAC ¶ B.) *Lane,* however, is inapposite. In *Lane,* the Supreme Court was presented with the case of two paraplegics who were physically unable to access county courthouses because of the absence of elevators. 541 U.S. at 513–14. Declining to address the effectiveness of Title II as a whole, the Supreme Court instead conducted an "as-applied" analysis. Concluding that "Congress had the power under § 5 to enforce the constitutional right of access to the courts," the Court held that

2.  Injunctive and Declaratory Relief

Plaintiff not only seeks damages; he also requests injunctive and declaratory relief.  (SAC ¶¶ A–H.)  Here, however, the Court is precluded from considering such relief by several additional legal principles, including the so-called *Rooker-Feldman* doctrine, *see generally Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923), and the Court's abstention obligations under *Younger v. Harris*, 401 U.S. 37, 43–44 (1971) and *O'Shea v. Littleton*, 414 U.S. 488 (1974).

a.  The *Rooker-Feldman* Doctrine

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments."  *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citation omitted) (per curiam).  The *Rooker-Feldman* doctrine is, however, "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

---

Title II of the ADA successfully abrogated sovereign immunity "as it applies to the class of cases implicating the accessibility of judicial services."  *Id.* at 531 (citation and footnote omitted).  The Second Circuit, however, has made clear that *Lane* is not to be applied simply because a plaintiff asserts an infringement of his access to courts; on the contrary, *Lane* suggests that immunity is abrogated only with respect to claims that raise a genuine issue of the right of access to courts. *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 398 (2d Cir. 2008) (explaining that ADA plaintiffs failed to overcome sovereign immunity because a challenged provision "does not impede, let alone entirely foreclose, general use of the courts by would-be plaintiffs"), *cert. denied*, 556 U.S. 1104 (2009).  While Plaintiff conclusorily alleges that Defendants "ma[d]e it extra hard and more difficult [] for [him] to have meaningful access to the state courts," (SAC ¶ 84), no specific factual allegation suggests anything remotely rising to the level of a constitutional deprivation.

Additionally, the Court notes that even if Plaintiff's claims overcome sovereign immunity, this Court would still be barred from considering the merits for reasons of abstention, as discussed below. *See* Section 2, *infra*.

judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Four

requirements must be met before the *Rooker-Feldman* bar applies:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff
> must complain of injuries caused by a state-court judgment. Third, the plaintiff
> must invite district court review and rejection of that judgment. Fourth, the state-
> court judgment must have been rendered before the district court proceedings
> commenced—i.e., *Rooker-Feldman* has no application to federal-court suits
> proceeding in parallel with ongoing state-court litigation.

*Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation, alterations and quotation marks

omitted).

There is an exception to *Rooker-Feldman* in the case of "judicial review of executive

action, including determinations made by a state administrative agency." *Verizon Md. Inc. v.

Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002). This exception applies "even where the

administrative agency acted in an adjudicative capacity . . . or where the plaintiff could have

sought, but did not seek, review of the agency's determination in a state court." *Mitchell v.

Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004) (citations omitted). But this exception does not

apply—and thus the *Rooker-Feldman* bar does apply—if the agency is "appropriately

characterized as [an] arm[] of the state judiciary qua judiciary, either because [it] exercise[s]

powers that are inherent to the judiciary, or because the state has provided mechanisms for

judicial review of [its] determinations that distinguish those determinations from other types of

state administrative action." *Id.* at 166 (italics omitted).

Here, the *Rooker-Feldman* doctrine applies to at least some, though not all, of Plaintiff's

claims. Plaintiff's SAC challenges numerous rulings by Judge Schauer, Magistrate Jordan, and

other judges in the underlying state court proceedings—and at least some of these rulings appear

to be final orders. (*See, e.g.*, SAC ¶¶ 59–63 (alleging that Judge Schauer's order jailing him for

violation of a TOP violated the ADA); *id.* ¶ 156 (noting that a final Family Court order was

entered on June 13, 2018).) Insofar as Plaintiff seeks to have this Court declare these and other adverse judgments discriminatory and otherwise erroneous, or seeks to be compensated for them, (*see id.* ¶¶ A-F), Plaintiff runs afoul of *Rooker-Feldman*. This is so because he (i) "invite[s] district court review and rejection of [state court] judgments" that were (ii) rendered before this Action commenced, (iii) with respect to which he is the losing party, and (iv) complaining of injuries that resulted from such judgments. Such claims meet all the requirements of *Rooker-Feldman. See Mattingly*, 585 F.3d at 101 (listing the essential elements of *Rooker-Feldman*). Accordingly, all such claims are barred and must be dismissed. *See J.R. ex rel. Blanchard v. City of New York*, No. 11-CV-841, 2012 WL 5932816, at *8 (E.D.N.Y. Nov. 27, 2012) (dismissing a suit under *Rooker-Feldman* because the plaintiff sought that the court "essentially reject the family court's order").

Plaintiff, however, seeks more than the undoing of final state court judgments. At least some of the decisions Plaintiff challenges are preliminary or intermediary rulings in proceedings that were ongoing when this suit began. (*See* SAC ¶¶ 140–42 (discussing his struggle to appeal non-final orders).) Such orders are likely not subject to *Rooker-Feldman. See Mattingly*, 585 F.3d at 102 (explaining that the *Rooker-Feldman* doctrine bars only "state-court losers" and thus did not bar claims by a parent who temporarily lost custody of her child but who secured the reversal of that decision). Moreover, Plaintiff also challenges the entire organizational structure and allocation of decision-making power within the New York Court system. (*See* SAC ¶ B (seeking an order requiring that ADA requests "be administered by the court [ADA] liaison, not the sitting judge as is customary practice"). Naturally, such a challenge is not directed at an individual judgment, but at the general procedures of the courts.

### b. *Younger* Abstention

While such claims may not be precluded by *Rooker-Feldman*, they are precluded by the abstention principles articulated in *Younger* and *O'Shea*.

*Younger* abstention provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003), *cert. denied*, 541 U.S. 1085 (2004). The Court is mindful that "abstention is generally disfavored, and federal courts have a virtually unflagging obligation to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (citation and quotation marks omitted). And, "unlike the *Rooker-Feldman* doctrine, *Younger* abstention is a 'prudential limitation' grounded in considerations of comity rather than a 'jurisdictional bar' derived from Article III of the Constitution." *Sullivan v. N.Y. State Unified Court Sys.*, No. 15-CV-4023, 2016 WL 3406124, at *6 (S.D.N.Y. June 17, 2016) (quoting *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006)). The Supreme Court has thus "clarified that district courts should abstain from exercising jurisdiction only in three exceptional circumstances involving (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) (citation and quotation marks omitted), *cert. denied*, 136 S. Ct. 2469 (2016). Finally, "*Younger* abstention is *required* when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal

constitutional claims." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (emphasis added) (citation omitted).

Here, with respect to Plaintiff's challenges of all non-final judicial rulings, the *Younger* abstention conditions are clearly met. First, state-court proceedings regarding the appropriate child custody arrangement are ongoing in Family Court and New York State appellate courts. Indeed, Plaintiff acknowledges that they are ongoing as he explains his various difficulties obtaining appellate review in light of the ongoing nature of proceedings. (*See* SAC ¶¶ 140–42 ("A[ppellate] Division denied permission to appeal denial of ADA accommodations twice stating these were not "final orders.").)

Second, child custody disputes are a matter rightfully reserved for state courts. *See Puletti v. Patel*, No. 05-CV-2293, 2006 WL 2010809, at \*4 (E.D.N.Y. July 14, 2006) ("The United States Supreme Court . . . has long recognized that 'the whole subject of the domestic relations of . . . parent and child[] belongs to the laws of the States and not to the laws of the United States." (quoting *In re Burrus*, 136 U.S. 586, 593–94 (1890))). Indeed, the Supreme Court has long recognized a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *see also Reno v. Flores*, 507 U.S. 292, 310 (1993) (noting that states have "special proficiency in the field of domestic relations, including child custody" (citation and quotation marks omitted)); *Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts." (citations omitted)). The underlying child custody proceeding thus undoubtedly involves an "important state interest." *Diamond "D" Const. Corp.*, 282 F.3d at 198.

Third, Plaintiff would have "an adequate opportunity for judicial review of the federal constitutional claims" in state court. *Id.* After the Family Court makes its final disposition on custody and visitation (or, if it has already done so), Plaintiff may appeal that decision within the state court system and raise all federal constitutional claims there. *See Donkor v. City of N.Y. Human Res. Admin. Special Servs. for Children*, 673 F. Supp. 1221, 1226 (S.D.N.Y. 1987) ("[The Second] Circuit has often recognized the obligation and competence of state courts to decide federal constitutional questions." (citing *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (2d Cir. 1986) and *Star Distributors, Ltd. v. Marino*, 613 F.2d 4, 8 n.10 (2d Cir. 1980))). Plaintiff has "not shown any procedural barrier to [his] assertion of constitutional issues in the state court proceeding." *Id.* at 1226 (citing *Moore v. Sims*, 442 U.S. 415, 430 (1979)).

Therefore, insofar as Plaintiff seeks to procure federal judicial involvement in any non-final judicial proceedings, the *Younger* factors are met. Moreover, there is no showing that any exception to *Younger*, such as bias on the part of OCA, is present. *See Diamond "D" Const. Corp.*, 282 F.3d at 201 (noting exception to *Younger* "when the state administrative agency was incompetent by reason of bias to adjudicate the issues pending before it" (citation and quotation marks omitted)). Accordingly, "abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Id.* at 197 (citation omitted).

### c. *O'Shea*

"Although *Younger* mandates abstention only when the plaintiff seeks to enjoin ongoing state proceedings . . ., the Supreme Court has also held that even where no state proceedings are pending, federal courts must abstain where failure to do so would result in 'an ongoing federal audit of state criminal proceedings.'" *Disability Rights N.Y. v. New York*, 916 F.3d 129, 134 (2d Cir. 2019) (quoting *O'Shea*, 414 U.S. at 500). In recent years, the Second Circuit has further

explained that, while *O'Shea* discussed only criminal matters, "*O'Shea* has also been applied in certain civil contexts involving the operations of state courts." *Id.* (citation omitted). Thus, for example, the Second Circuit has dictated that federal courts must abstain from enjoining internal state court judicial assignment procedures. *See Kaufman*, 466 F.3d at 86. And just last year, the Second Circuit held that similar abstention principles prohibited federal courts from "direct[ing] the New York State Unified Court System, the Chief Judge of the State of New York, and the Chief Administrative Judge for the Courts of New York" to adopt certain procedures in its guardianship proceedings. *Disability Rights*, 916 F.3d at 136. Such relief, whether declaratory or injunctive, would "effect a continuing, impermissible 'audit' of New York Surrogate's Court proceedings, which would offend the principles of comity and federalism." *Id.* at 136.[7]

Here, Plaintiff attempts to subject the New York State court system to precisely the sort of "ongoing audit" and structural interference that *O'Shea* and *Disability Rights* prohibit. As Plaintiff makes clear throughout his SAC, insofar as he does not challenge individual judicial decisions, he seeks a federal judicial mandate to shift decision-making from Family Court judges

---

[7] In *Disability Rights,* the Second Circuit approvingly cited several similar precedents from other circuits. *See* 916 F.3d at 134–35 (citing *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1065–66 (7th Cir. 2018) (abstaining from enjoining the Clerk of the Circuit Court of Cook County to release newly filed complaints at the moment of receipt), *cert. denied,* 140 S. Ct. 384 (2019); *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 612 (8th Cir. 2018) (abstaining from enjoining allegedly unconstitutional child custody proceedings because "[t]he relief requested would interfere with the state judicial proceedings by requiring the defendants to comply with numerous procedural requirements" and "failure to comply with the district court's injunction would subject state officials to potential sanctions"); *Miles v. Wesley*, 801 F.3d 1060, 1064, 1066 (9th Cir. 2015) (abstaining from enjoining the Los Angeles Supreme Court from reducing the number of courthouses used for unlawful detainer actions); *Hall v. Valeska*, 509 F. App'x 834, 835–36 (11th Cir. 2012) (per curiam) (abstaining from enjoining allegedly discriminatory jury selection procedures); *Parker v. Turner*, 626 F.2d 1, 8 & n.18 (6th Cir. 1980) (providing that *O'Shea* establishes a rule of "near-absolute restraint . . . to situations where the relief sought would interfere with the day-to-day conduct of state trials")). The instant case falls squarely within this line of precedent.

to court bureaucrats. (*See* SAC ¶¶ B (seeking an order directing OCA to accommodate requests that have been denied by state judges); F (seeking a judgment requiring OCA, rather than state judges, to "provide all accommodation requests"). In other words, Plaintiff "would have federal courts conduct a preemptive review of state court procedure in . . . an area in which states have an especially strong interest." *Disability Rights*, 916 F.3d at 136 (citation omitted). Moreover, providing Plaintiff's requested relief would necessitate an "[o]ngoing, case-by-case oversight of state courts, . . . exactly the sort of interference *O'Shea* seeks to avoid." *Id.* (citation omitted). Indeed, Plaintiff seeks an order compelling the Family Court to hold hearings at particular times of day, to provide him with specific court records, to adopt specific procedures for transcription proceedings and to transfer certain authorities from state judges to "the court [ADA] liaison." (SAC ¶ B.) It is difficult to imagine a "more substantial invasion of state courts' domain." *Disability Rights*, 916 F.3d at 136. Accordingly, because "a federal district court has no power to intervene in the internal procedures of the state courts," Plaintiff's request that this Court compel OCA Defendants to overrule and seize authority from state judges, or to otherwise tinker with the internal operations of the state courts, is dismissed. *Kaufman*, 466 F.3d at 86 (citation and quotation marks omitted).

To summarize: *Rooker-Feldman* bars Plaintiff's claims insofar as he challenges adverse final judicial orders; *Younger* precludes the Court from interfering in Plaintiff's ongoing state court proceedings; and *O'Shea* demands that the Court refrain from overhauling the internal procedures of the state courts. Accordingly, the Court declines to exercise jurisdiction over all of Plaintiff's claims for injunctive or declaratory relief.[8]

---

[8] The Court's decision to abstain is further "supported by the 'availability of other avenues of relief,'" as Plaintiff is free to "avail [him]self of the state courts to challenge the

24

### 3. Leave to Amend and Dismissal with Prejudice

This Opinion & Order dismisses all of Plaintiff's claims and terminates all the Defendants from this case. Because Plaintiff has already amended his Complaint twice (not to mention twice argued, and been denied, preliminary injunctions), and because Plaintiff's claims are barred as a matter of law by immunity or lack of jurisdiction, dismissal is with prejudice. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (noting that although a "pro se complaint should not be dismissed without the [c]ourt granting leave to amend at least once[,] . . . leave to amend a complaint may be denied when amendment would be futile" (citations and quotation marks omitted)). Even the special solicitude afforded to pro se litigants does not entitle Plaintiff to file additional amended pleadings when the pleading "contains substantive problems such that an amended pleading would be futile." *Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan 3, 2012).

### III. Conclusion

For the reasons stated above, both Motions To Dismiss are granted, and all of Plaintiff's claims are dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 67, 70), to mail a copy of this Opinion & Order to Plaintiff, and to close this case.

SO ORDERED.

Dated: March ⟋, 2020
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

legality of the state court procedures. *Disability Rights*, 916 F.3d at 137 (citation omitted) (quoting *O'Shea*, 414 U.S. at 504).